UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| Ana Faria, Philipe Faria, Marta Faria, Catarina Travasso as successors in interest and heirs at law of Apolonia Morais | ) ) ) ) ) | |
| Plaintiffs | ) ) | |
| v. | ) ) | Case No.: 1:19-cv-00427 |
| Citizens Bank, N.A, Citizens Bank, N.A. d/b/a Citizens One Home Loans Otoro, LLC | ) ) ) ) | |
| Defendants | ) ) ) ) | |

## **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Plaintiffs, individually, as the heirs at law of Apolonia Morais, filed a complaint in the seeking to enforce certain provisions of a mortgage contract, invalidate an otherwise valid foreclosure sale and claim relief for alleged violations of the Real Estate Settlement Procedures Act ("RESPA"). Defendants, Citizens Bank, N.A. and Citizens Bank, N.A. d/b/a Citizens One Home Loans, filed a motion to dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that the Complaint fails to state a claim upon which relief can be granted.

1

**STANDARD**

This Court must determine whether the Complaint states any claim upon which relief may be granted.  Fed.R.Civ.P. 12(b)(6).  Plaintiffs' claims must allege plausible entitlement to relief.  Cook v. Gates, 528 F.3d 42, 48 (1st Cir. 2008).  To meet that burden, the Complaint must contain sufficient factual matters, which support a claim that is plausible on its face.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell A. Corp. v. Twombly, 550 US. 544, 570 (2007)).  While the Court must accept as true the factual assertions set forth in the Complaint, there must be more than "mere conclusory statements" to survive a motion to dismiss.  Twombly at 555.  Threadbare recitals of the elements of a cause of action or mere conclusory statements are not sufficient to satisfy the pleading requirements.  Ashcroft at 678.  Therefore, bald assertions and conclusory allegations must be discarded by the Court.  Morales v. Chadbourne, 996 F.Supp.2d 19, 26 (DCRI 2014).

The standard is more than probability of success, but rather whether the claim is plausible.  Twombly at 570.   "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief."  Mayale-Eke v. Merrill Lynch, 754 F.Supp.2d 372, 375 (DCRI 2010) (citing Twombly at 557).

Allegations that are linked and dependent upon documents, such documents may be considered by the Court in reviewing a motion to dismiss.  Diva's Inc. v City of Bangor, 411 F.3d 30, 38 (1st Cir. 2005).  This would include a review of the documents annexed to the Complaint.

2

## ARGUMENT

### I.  Plaintiffs lack standing to raise the claims set forth in the Complaint

The federal court is bound to act within its statutory grant of subject matter jurisdiction. Therefore, since standing is jurisdictional, the court must ensure that it has proper subject matter jurisdiction before proceeding to adjudicate the claims set forth in a complaint.  Smith v. GTE Corp, 236 F.3d 1292, 1299 (11th Cir. 2011); Osediacz v. Cranston, 414 F.3d 136, 139 (1st Cir. 2005) (standing is an indispensable component of the federal court jurisdiction).  Prior to considering the merits of a case, a litigant must have standing.  Rogers v. Mulholland, 858 F.Supp.2d 213, 221 (DRI 2012).  A plaintiff is required to demonstrate that his or her claim is based on their own rights and not on the rights of any third party.  Cosajay v. Mortgage Electronic Registration Systems, Inc., 980 F.Supp.2d 238, 241 (DRI 2013).  The burden is on the plaintiff to establish standing to bring an action.  Correa v. BAC Home Loans Servicing, LP, 853 F.Supp.2d 1203, 1206 (SD Fla 2012).  To meet this burden, the plaintiff must show that (1) he or she suffered an injury in fact; (2) there is a causal connection between the injury and the defendant's alleged conduct; and (3) it is likely (more than speculative) that the injury can be redressed by the Court.  Lujan v. Defenders of Wildlife, 504 US 555, 561 (1992).

Plaintiffs cannot meet their burden demonstrating standing to bring the claims in any of the five Counts set forth in their Complaint.  None of the Plaintiffs, in their individual capacity have standing to pursue claims made on behalf of Apolonia Morais.  Taking the facts within the four corners of the Complaint as true, Apolonia Morais executed a note and mortgage to Citizens Bank of Rhode Island on April 13, 2004.  See paragraph 3 of Plaintiffs' Complaint.

There is no allegation that any of the Plaintiffs were a signatory to the note or mortgage or were otherwise in privity of contract with the Defendant, Citizens Bank of Rhode Island.   While the Plaintiffs aver that they are heirs off Apolonia Morais, the complaint fails to state a claim that Plaintiffs are legally entitled to relief at law.

      **a.   There is no breach of contract**

In order for the Plaintiff to state a claim upon which relief may be granted, he must establish that there was a binding and enforceable contact.  The elements for a breach of contract claim in Rhode Island are: (1) that an agreement existed between the parties, (2) that there was a breach of the agreement and (3) there was a causal connection between the breach injury claimed and (4) the breach caused damages.  Barkan v. Dunkin' Donuts, Inc., 627 F.3d 34, 39 (1st Cir. 2010).  The allegations must contain sufficient facts to establish that there was an express or implied contractual agreement between Citizens Bank of Rhode Island and Plaintiffs.  Pickett v. Ditech Financial, LLC, 322 F.Supp.3d 287, 293 (DCRI 2018).  As previously stated, the only parties to the note and mortgage contracts were Citizens Bank of Rhode Island and Apolonia Morais.

Pursuant to the terms of the mortgage, the lender was contractually obligated to send a notice of default to the Borrower, namely Apolonia Morais.  However, she was deceased as of June 10, 2014.  See paragraph 1 of the Complaint.  Notwithstanding, Plaintiffs concede that a default notice dated December 27, 2017 was sent to the Estate of Apolonia M. Morais.  See paragraph 14 of the Complaint.  According to the terms of the Mortgage, the only party entitled to a notice of default was the Mortgage, which was Apolonia Morais.  See paragraph 16 of the

Mortgage.  Plaintiffs fail to establish that the terms of the Mortgage entitled them to a notice to cure.  The lack of privity of contract and breach of any provision of the Mortgage contract are significant grounds to deny any relief based on contract.

While the Complaint does not allege a cause of action on behalf of Apolonia Morais, the allegation that the notice to cure was deficient must also fail.  Although Plaintiffs referred to the December 27, 2017 default notice in the Complaint, it was not annexed as an Exhibit.  This notice appears to be an integral part of the Plaintiffs' case and should be available to the Court.  Allegations that are linked and dependent upon documents, such documents may be considered by the Court in reviewing a motion to dismiss. Diva's Inc. v City of Bangor, 411 F. 3d 30, 38 (1st Cir. 2005).  As such, the default notice is annexed as Exhibit A and should be considered by the Court in reviewing Defendants' motion to dismiss. See Jorge v. Rumsfeld, 404 F.3d 556, 559 (1st Cir. 2005).

Pursuant to the terms of the mortgage, the notice to cure shall specify:

1) The breach or default

2) The action required to cure the breach or default;

3) A date, not less than 10 days from the date of the notice, by which the breach or default must be cured;

4) A statement that the failure to cure the breach or default within the time proscribed may result in an acceleration of the debt and sale of the property;

5) The right to reinstate after acceleration; and

6) The right to bring court action to assert the non-existence of default or any other defense to acceleration or sale.

5

The notice to cure in this matter complies with all requirements. The default notice advised the Estate of Apolonia Morais that (1) the loan was in default; (2) the amount due to cure the default was $19,510.78; (3) the default could be cured on or before the cure date of January 26, 2018; (4) if the default is not cured by the cure date, the balance of the Note may be deemed accelerated without demand; (5) notwithstanding acceleration, there is a right to reinstate the loan by paying the sums due and owing as if no acceleration had occurred and (6) there is a right to bring a court action to  assert the non-existence of a default or any other defense to acceleration and sale.  Thus, the default notice complies with the terms of the mortgage and fails to support any of the claims of a breach of contract claimed by the Plaintiffs. See Viera v. Bank of N.Y. Mellon, 2018 U.S.Dist. LEXIS 176276 (2018).

In Viera, Plaintiffs' attorney[1] raised substantially all the same objections to the default notice in a breach of contract claim.  The complaint filed in Viera included a Count substantially similar to Count I.  The Vieras alleged that there was a breach of contract for failure of the foreclosing entity to send a default notice as well as a notice of acceleration prior to commencing foreclosure proceedings.  Id. at *2.  Upon review by the US Court, the Plaintiff's arguments related to paragraph 22[2] of the mortgage were rejected.  The Viera Court determined that the default notice complied with the terms of paragraph 22, based on the same analysis provided above.

---

[1] Coincidently is the same attorney representing the Plaintiff herein.
[2] This would relate to paragraph 16 of the Mortgage signed by Apolonia M. Morais.

6

### b. Rhode Island does not recognize the claim of Breach of Duty of Good Fair and Fair Dealing

The Complaint also alleges that Defendants breached a duty of good faith and fair dealing. This claim is not recognized as a cause of action in the State of Rhode Island. While parties to a contact have an implied obligation to deal fairly with one another, there is no independent cause of action for a breach of an implied covenant of fair dealing. AAA Pool Services and Supply, Inc. v. Aetna Cas. & Sur. Co, 395 A.2d 724, 725 (RI 1978). Although not framed as such, Plaintiffs' claims appear to derive from contract. In order for the Plaintiff to prevail on a breach of contract, there must be an offer, acceptance and consideration for a binding contract. Only then the burden is on Plaintiff to prove that there was a breach of that agreement and damages suffered. In this instance, there was no valid contract and thus no ensuing breach thereof. See Culley v. Bank of Am., N.A., 2019 U.S. Dist. LEXIS 53709 *33.

### c. No acceleration of the loan is necessary

Plaintiffs also allege a breach of contract for failure to send a notice of acceleration. While Defendant contends that the loan was accelerated, that notice is outside of the pleadings and may not be considered by this Court. However, it is not necessary for the Court to consider whether or not such acceleration was sent as it is not a condition precedent to the foreclosure. Paragraph 16 does not require the lender to give notice of acceleration prior to such acceleration. Viera at *5. No separate notice is required. Id. at *4. Therefore, Plaintiff's claim that there was a breach of contract for failure to send a notice of acceleration to the Plaintiff is flawed.

## II.    The RESPA claims in Counts III-Count V are limited to Borrowers

Plaintiffs are seeking claims for RESPA violations as heirs at law of Apolonia Morais. RESPA is a consumer statute for the protection of borrowers.  A defendant's liability is limited to borrowers.  12 U.S.C. § 2605(f).  See Correa v. BAC Home Loans Servicing, LP, 853 F.Supp.2d 1203, 1207 (M.D. Fla. 2012).  Plaintiffs are not the borrowers, only Apolonia Morais expected the Note and Mortgage and was otherwise in privity of contract with the lender.  Thus, "a nonparty to the loan cannot bring an action for violations of TILA or RESPA. Id. at 1208 (citing Henry v. Guaranteed Rates,Inc., 415 Fed.Appx 985, 985086 (11th Cir 2011)); Mashburn v. Wells Fargo Bank, N.A., 2011 WL 2940363 *3 (W.D.WA 2011); Wilson v. Bank of America, N.A., 48 F.Supp.3d 787, 796 (E.D.PA. 2014); Stolz v. OneWest Bank, 2012 WL 135424 *4 (D.OR 2012); Aldana v. Bank of America, N.A., 2014 WL 12577145 *2 (C.D.CA. 2014).  For this reason, Courts have dismissed RESPA allegations brought by nonborrowers. Green v. Central Mortgage Company, 2015 WL 5157479 *5 (N.D.CA. 2015) (heirs claim that she inherited the property and became a borrower was rejected by the Court).

Although the Plaintiffs claim an interest in the property through inheritance and may have an interest in the property, such interest does not provide them with standing to raise RESPA claims as they are not borrowers.  Bascom v. JPMorgan Chase Bank National Association, 2018 WL 1804347 *4 (Report and Recommendation N.D.GA. 2018)  (Affirmed by Court 2018 WL 1804386 (N.D.GA. 2018)).  See Covino v. Wells Fargo Bank, 2018 WL 4616071 *5 (D.NJ. 2018) (only a borrower could send a QWR or NOE).  For these reasons, Counts III-Count V should be dismissed as they all raise RESPA claims by nonborrowers.

**III.     Conclusion**

For the reasons set forth herein, Counts I, II, II, IV and V must be dismissed for failure to state a claim upon which relief can be granted.

Respectfully Submitted


/s/  *Michael R. Hagopian*

Michael R. Hagopian, Esq (3448)
Brock & Scott, PLLC
1080 Main Street, Suite 200
Pawtucket, Rhode Island 02860
(401) 217-8701 x2453
michael.hagopian@brockandscott.com


CERTIFICATE OF SERVICE

I hereby certify that, on the __11____ day of ___December_____ ____, 2019 I filed and served this document through the electronic filing system and electronically served John Ennis.  The document electronically filed and served is available for viewing and/or downloading from the Court's ECF Filing System.

/s/  *Michael R. Hagopian*

Michael R. Hagopian

No *Shepard's* Signal™
As of: October 15, 2018 3:25 PM Z

# *Viera V.pas Bank of N.Y. Mellon*

United States District Court for the District of Rhode Island

October 12, 2018, Decided

C.A. No. 17-0523-WES

**Reporter**
2018 U.S. Dist. LEXIS 176276 *

JAMES VIERA, Plaintiff, v.-PAS BANK OF NEW YORK MELLON, as Trustee for the Certificate Holders of CWALT, Inc., Alternative Loan Trust 2005-86CB *Mortgage* Pass-Through Certificates, Series 2005-86B; and BAYVIEW LOAN SERVICING, LLC, Defendants.

**Notice:** Decision text below is the first available text from the court; it has not been editorially reviewed by LexisNexis. Publisher's editorial review, including Headnotes, Case Summary, Shepard's analysis or any amendments will be added in accordance with LexisNexis editorial guidelines.

## Core Terms

notice, default, *mortgage*, acceleration, *mortgage* agreement, concrete, monthly, cure, notice of default, *mortgage* loan, costs, injunctive relief, Dissolve, *foreclosure* proceeding, motion to dismiss, *foreclosure sale*, attorney's fees, fair dealing, good faith, modification, documents, covenant, statute of limitations, injury-in-fact, *foreclosure*, injunction, quotations, violations, scheduled, contends

## Opinion

### [*1] MEMORANDUM AND ORDER

WILLIAM E. SMITH, Chief Judge.

Before the Court is Defendants' Motion to Dismiss and

Dissolve that entered on November 13, 2017 ("Defendants' Motion")

(ECF No. 8), pursuant to Rules 12(b)(1) and *12(b)(6)* of the Federal

Rules of Civil Procedure. After carefully reviewing the written

submissions of the parties, the Court grants Defendants' Motion in

toto.

I. Background

This dispute arises out of *foreclosure* proceedings that

Defendants commenced against Plaintiff in the fall of 2017. Plaintiff executed a *mortgage* agreement for his home in December of 2005; Defendant Bank of New York Mellon ("BNYM") is the current 1

mortgagee and assignee of the Note associated with that *mortgage*;

Defendant Bayview Loan Servicing, LLC ("Bayview") is the current loan servicer. In 2010, Plaintiff filed for bankruptcy and stopped making regular payments on the *mortgage* loan. (Compl. Ex. B at 1, ECF No. 1-4.)

Seven years later, on August 3, 2017, Defendant Bayview sent

Plaintiff a letter entitled "Notice of Default and Intent to Accelerate" indicating that his *mortgage* loan was in default and that the loan would be accelerated on September 7, 2017 if he failed to pay the total amount due of $148,858.78. (See *id.*) Plaintiff **[*2]** does not claim to have cured the default or to have made any effort to cure the default after receiving that notice.

After Plaintiff failed to cure his default by September 7, 2017, Bayview invoked its statutory power of *sale* and scheduled a *foreclosure sale* of the property to take place on November 13. (See Mot. for TRO ¶ 6, ECF No. 2.) On November 12, Plaintiff filed a Complaint and an Emergency Motion for a Temporary Restraining Order to enjoin the scheduled *foreclosure sale*. (Compl. ECF No. 1; Mot. for TRO, ECF No. 2.) That motion was granted by text order following a telephonic hearing on November 13, at which all parties were represented.

MICHAEL HAGOPIAN

On April 24, 2018, Defendants moved to dissolve the TRO and to dismiss Plaintiff's Complaint pursuant to *Rules 4(m)*, 12(b)(1), and *12(b)(6) of the Federal Rules of Civil Procedure*.

2

II. Discussion

A. Motion to Dismiss Plaintiff's Complaint

The Complaint states five counts: (1) breach of contract; (2)

violation of the covenant of good faith and fair dealing;

(3) injunctive relief; (4) violation of the Rhode Island Fair Debt Collection Practices Act, *R.I. Gen. Laws § 19-14.9-1 et seq.*,

("RIFDCPA"); and (5) violation of the *Truth in Lending Act*, 15

*U.S.C. § 1601 et seq.* ("TILA").1

In essence, Plaintiff claims that Defendants did not have authority to invoke their statutory power of *sale* because [*3] they never sent him a notice of default or a notice of acceleration, both of which Plaintiff contends were required by paragraph 22 of the *mortgage* agreement. Plaintiff alternatively contends that the notice of default he received on August 3, 2017 was substantively deficient. On these bases, Plaintiff claims that Defendants breached the terms of the *mortgage* agreement as well as the covenant of good faith and fair dealing, and contends that this breach of contract entitles him to injunctive relief permanently enjoining a

*foreclosure sale* of his home. (Compl. ¶¶ 48, 55, 64, ECF No. 1.)

Plaintiff also alleges that Bayview's attempt to foreclose on the property violated RIFDCPA because Bayview "falsely stated the amount claimed to be due in past due interest and charges, in every

1   Although the Complaint mistakenly includes two Count IV's,

this order will refer to Plaintiff's TILA claim as "Count V" for clarity.

3

statement" sent to Plaintiff. (Id. at ¶ 71(c).) Lastly, Plaintiff claims that both Defendants violated TILA when

they failed to send Plaintiff monthly *mortgage* statements and charged his *mortgage* loan account for costs and fees associated with their *foreclosure* attempts. (Id. at ¶ 93, 95.)

i. Dismissal [*4] for Failure to Effect Service in Accordance with *Rule 4(m)*

As a threshold matter, Plaintiff failed to properly serve Defendant Bank of New York under *Rule 4 of the Federal Rules of Civil Procedure* and, as such, the Court cannot exercise personal jurisdiction over that Defendant. Accordingly, the Court dismisses without prejudice all of Plaintiff's claims as they pertain to Bank of New York. See *Fed. R. Civ. P. 4(m)*. Plaintiff's claims on the merits brought against both Defendants, however, survive only as to Bayview.2

ii. Count I - Breach of Contract

The crux of Plaintiff's breach-of-contract claim is that paragraph 22 of the *mortgage* agreement required Defendants to send Plaintiff a default notice as well as a notice of acceleration prior to commencing *foreclosure* proceedings. Plaintiff alleges that Defendants never sent him either notice and, therefore, did not satisfy the conditions necessary to invoke his statutory power of

2   That said, the Court notes that its analysis and conclusions

would have applied equally to Bank of New York, had Plaintiff properly effected service upon it.

4

*sale*. (Compl. ¶¶ 7, 12, ECF No. 1.) Plaintiff alternatively contends

that the notice he received on August 3, 2017 did not constitute a

default notice as required under [*5] the *mortgage* agreement because it

"did not state a specific amount due" to cure default. (Id. at ¶

15.) Plaintiff's interpretation of the contract is flawed.

First, paragraph 22 did not require Defendants to send

Plaintiff a notice of acceleration in addition to the notice of

default that he received on August 3, 2017. paragraph

2018 U.S. Dist. LEXIS 176276, *5

22 provides

that "Lender shall give notice to Borrower prior to acceleration"

and identifies the specific list of information that the notice

must include. (Id. at 11.) It then states:

If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF **SALE** and any other remedies permitted by Applicable Law.

(Id. (emphasis added).) The emphasized language suggests that no

secondary notice of acceleration is required before Defendants could

properly accelerate the loan and commence **foreclosure** proceedings,

because such additional notice would effectively be "further

demand."

Second, the notice of default sent on August 3, 2017 complied

with all of the substantive requirements set forth in paragraph 22,

including **[*6]** the requirement to state the specific amount due to cure

5

default.3 The August 3 letter stated that "[t]his letter is formal

notice . . . that you are in default . . . . [T]he total amount

required to cure the default is $148,858.78 . . . . The default

above can be cured by payment of the total amount . . . by

09/07/2017." (Compl. Ex. B at 2, ECF No. 1-4.) Despite Plaintiff's

contention to the contrary, the notice of default clearly

stated

the "specific amount due" to cure default. (See Compl. ¶ 15.)

Additionally, the notice of default complied with all of the other

substantive requirements set forth in paragraph 22.

In ruling on a motion to dismiss, the Court must "accept as

true all well-pleaded facts in the complaint and draw all reasonable

inferences in favor of the plaintiff[]." Gargano v. Liberty Int'l

_Underwriters, 572 F.3d 45, 48 (1st Cir. 2009)_. A motion to dismiss

will be granted "only if, when viewed in this manner, the pleading

shows no set of facts which could entitle plaintiff to relief."

_Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988)_.

Taking all of the facts alleged in the light most favorable to

Plaintiff, it is clear that he has not stated a viable breach-of-

contract claim. paragraph 22 entitled Plaintiff to receive a default

3    In reaching its decision, the Court properly **[*7]** reviewed the

**_mortgage_** agreement and the notice of default, both of which were attached to the Complaint and are incorporated by reference therein. See _Jorge v. Rumsfeld, 404 F.3d 556, 559 (1st Cir. 2005)_(holding that, in ruling on a motion to dismiss, the court may "augment those facts [in the Complaint] with facts extractable from documentation annexed to or incorporated by reference in the complaint and matters susceptible to judicial notice.").

6

notice that included specific information outlined in

MICHAEL HAGOPIAN

paragraph 22, which he received. Additionally, that paragraph plainly does not require Defendants to send Plaintiff a separate "notice of acceleration." As such, Plaintiff's claim is dismissed pursuant to *Rule 12(b)(6)*.

### i. Count II - Breach of the Covenant of Good Faith and Fair Dealing

Plaintiff's claim for breach of the covenant of good faith and fair dealing cannot stand in the absence of a viable breach of an underlying contract. See *McNulty v. Chip, 116 A.3d 173, 185* (R.I.

2015) ("[A] claim for breach of the implied covenant of good faith and fair dealing does not create an independent cause of action separate and apart from a claim for breach of contract."). Because

Plaintiff's breach-of-contract claim fails, the Court dismisses

Plaintiff's claim for a breach of the covenant of **[*8]** good faith and fair dealing pursuant to *Rule 12(b)(6)*.

### ii. Count III - Injunctive Relief

Plaintiff requests both a preliminary and a permanent injunction to enjoin Defendants from foreclosing on his home. Presumably, the preliminary injunction related to the ***foreclosure*** proceedings that were scheduled for November 13, 2017. Plaintiff successfully obtained a TRO enjoining that ***foreclosure sale*** and there is no further relief the Court can grant as to that claim. Accordingly, Plaintiff's claim for preliminary injunctive relief is

7

dismissed as moot. See *Chafin v. Chafin, 568 U.S. 165, 172 (2013)*

("[A] case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.")

(quotations omitted).

Plaintiff's claim for permanent injunctive relief is likewise dismissed because, as discussed throughout this Memorandum, Plaintiff will not succeed on the merits of his claims. See *Largessv. Supreme Judicial Court for State of Massachusetts, 373 F.3d 219, 224 (1st Cir. 2004)* (stating that the standard for granting a permanent injunction is "virtually identical [to the standard for granting preliminary] injunctive relief,

except that the movant must show actual success on the merits of the claim, rather than a mere likelihood of such success.") (quotations omitted).

### iii. Count IV - Violations of the **[*9]** Rhode Island Fair Debt Collection Practices Act

Count IV asserts the RIFDCPA claim against Bayview only, alleging that the monthly ***mortgage*** statements sent to Plaintiff were inaccurate because his ***mortgage*** loan account was "charged improper fees and costs relating to ***foreclosure*** attempts on his property." (Compl. ¶ 93.) Defendants argue that Count IV should be dismissed because the alleged violations of RIFDCPA either fall outside of the applicable statute of limitations or fail to articulate a concrete and particularized injury as required to establish standing.

8

RIFDCPA's statute of limitations provides that "[a]n action to enforce any liability created by the provisions of this article may be brought in any court of competent jurisdiction within one year from the date on which the violation occurs." *R.I. Gen. Laws § 19-14.9-13(5)* (emphasis added). Because Plaintiff filed his Complaint on November 12, 2017, he may only bring a RIFDCPA action for violations that occurred within one year of that date - i.e., violations that occurred on or after November 12, 2016.

The only charge Plaintiff points to that falls within the statute of limitations is a $300.00 charge allegedly incurred on

November 15, 2016 for "legal fees **[*10]** for ***foreclosures*** without a default letter sent pursuant to the terms of the ***mortgage*** and without ever having sent an acceleration letter." (Compl. ¶ 96.) The RIFDCPA claim as it relates to the November 15 fees must likewise be dismissed in accordance with *Spokeo, Inc. v. Robins, 136 S.Ct. 1540, 1549 (2016)*, because Plaintiff has alleged only a "bare procedural violation" and therefore has failed to allege an injury that is sufficiently concrete to confer Article III standing.

In Spokeo, the plaintiff claimed that the defendant violated the *Fair Credit Reporting Act, 15 U.S.C. § 1681* ("FCRA"), by creating an online profile about him which contained inaccurate personal information. *Id. at 1544*. The Supreme Court observed that, while the injury that the plaintiff had alleged was sufficiently

"particularized" (i.e., personal to that plaintiff) he had

2018 U.S. Dist. LEXIS 176276, *10

failed

9

to establish that the injury was "concrete." *Id. at 1548-49*. The

Court explained that "[a] 'concrete' injury must be 'de facto'; that is, it must actually exist. When we have used the adjective

'concrete,' we have meant to convey the usual meaning of the term-

'real,' and not 'abstract.'" *Id. at 1548* (citations omitted). The

Supreme Court held that "not all inaccuracies cause harm or present any material risk of harm" and, therefore, a complaint based upon **[*11]** only a technical violation of a statutory right, without any explanation of how the violation actually harmed the plaintiff, failed to establish standing. *Id. at 1548, 1550*.

Like the plaintiff in Spokeo, here, Plaintiff has not explained how the inclusion of the allegedly improper fees and expenses charged to his account on November 15, 2016 caused him actual harm. There is no allegation in the Complaint that Plaintiff ever paid any of the allegedly improper charges and Plaintiff has not stated whether the November 15, 2016 charge currently appears on his ***mortgage*** loan account, or why the appearance of that charge would be wrongful. Moreover, Plaintiff seeks damages only for the costs he has incurred in prosecuting the RIFDCPA claim and attorney's fees. While these damages would be recoverable if Plaintiff had successfully established a RIFDCPA violation, see *R.I. Gen. Laws § 19-14.9-13(2)(d)*, they are not a substitute for the injury-in-fact requirement developed in Spokeo. See Pemental v. Bank of NewYork Mellon for Holders of Certificates , First Horizon ***Mortg.*** Pass-

10

Through Certificates Series FHAMS 2004-AA5, No. CV 16-483S, 2017 WL 3279015 (D.R.I. May 10, 2017), report and recommendation adopted sub nom. *Pemental v. Bank of New York Mellon, No. CV 16-483 S, 2017 WL 3278872 *8 (D.R.I. Aug. 1, 2017)* (finding that attorneys' fees and costs incurred in asserting a TILA action **[*12]** were not a substitute for the injury-in-fact requirement because "apart from *pro se* claims, every TILA complaint requires the expenditure of

attorneys' fees" and to hold otherwise would allow a claim for attorneys' fees to "subsume the injury-in-fact requirement.").

As Plaintiff has failed to allege an injury that is sufficiently concrete to confer standing, his RIFDCPA claims are dismissed pursuant to Rule 12(b)(1).

iv. Count V - Violations of the *Truth in Lending Act* Plaintiff alleges that Defendants violated TILA by (1) failing

to send him required monthly ***mortgage*** statements and (2) by charging improper fees to his ***mortgage*** loan account for property inspections and ***foreclosure*** costs. The Court addresses each alleged violation in turn.

1. Failure to Send Monthly ***Mortgage*** Statements Defendants contend that they were not required to send monthly

***mortgage*** statements to Plaintiff because Plaintiff's personal liability on the underlying ***mortgage*** loan was discharged in an October 2010 bankruptcy proceeding pursuant *11 U.S.C. § 727* and

Defendant BNYM's predecessor in interest, Shamrock Corporation, was

11

named as a creditor in that proceeding.4 (See Mem. in Supp. of

Defs.' Mot. to Dismiss 12, ECF No. 8-1.) Alternatively, Defendants

argue that, **[*13]** even if they had a duty to send Plaintiff monthly

statements, Plaintiff has pleaded only a technical violation of

TILA and has failed to allege a concrete injury caused by

Defendants' purported failure to send statements. (Id.)

Plaintiff does not contest that his personal liability on the

***mortgage*** was discharged in bankruptcy, but contends that an

amendment to Regulation Z "changed the legal landscape" and imposed

MICHAEL HAGOPIAN

a duty upon Defendants to send Plaintiff monthly statements, despite

his bankruptcy discharge. However, the amendment on which Plaintiff

hangs his hat went into effect on April 29, 2018 - i.e., five months

after Plaintiff filed his Complaint. As such, that amendment is not

germane to this case.

12 C.F.R. § 1026.41, titled "Periodic statements for

residential *mortgage* loans," discusses the formal and substantive

requirements applicable to the monthly statements that *mortgage*

4    The Court considers the filings in Plaintiff's bankruptcy

proceeding to be matters of public record and, as such, the Court may consider those documents in ruling on the instant motion without converting it into a motion for summary judgment. See *Alt. Energy,Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33* (1st Cir.

2001)("Ordinarily, a court may not consider any documents that are outside of the **[*14]** complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment. There is, however, a narrow exception for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint.") (quotations omitted).

12

lenders are required to send to borrowers. However, subsection (e)(5) provides that a lender is not required to send periodic statements if the loan was discharged in bankruptcy *and* one of four conditions is met. See *12 C.F.R. § 1026.41(e)(5)(i)(B)(1)-(4)*. While Defendants have established that Plaintiff's personal liability was discharged in bankruptcy, they have not submitted any evidence that Plaintiff meets any of the other four conditions. Accordingly, Defendants were not exempt from the duty to send Plaintiff periodic statements and they allegedly violated TILA by not sending those statements.

However, Plaintiff has not alleged how Defendants' failure to send monthly *mortgage* statements has caused him any injury other than attorneys' fees and the costs of prosecuting his TILA claim.

As with his RIFDCPA claim, these damages would be recoverable if the alleged **[*15]** TILA violation had caused actual harm, "they are not a substitute for the injury-in-fact required by Spokeo." Pementel, at *8. See *Spokeo, 136 S.Ct. at 1550*; see also *Davidson v. PNC Bank,N.A., CAUSE No. 1:16-cv-569-WTL-MPB, 2016 WL 7179371, *2-4 (S.D. Ind. Dec. 9, 2016)* (dismissing TILA claim despite potentially inaccurate *mortgage* payoff statement because no actual injury in light of prior letter with accurate information).

13

2. Charge of Improper Fees and Expenses to

Plaintiff's **_Mortgage_** Account

Plaintiff also alleges that Defendants violated TILA by charging improper fees and expenses to his *mortgage* loan account. Pointing to the same fees and expenses he identified in Count IV, Plaintiff claims these improper charges caused the following damages: (1) costs for prosecuting the claim; (2) attorneys' fees; and (3) an increased cost for "any possible loan modification."

(Compl. ¶ 101(c).)

None of these damages allege an injury sufficient to confer standing. TILA, like RIFDCPA, imposes a one-year statute of limitations. See *15 U.S.C.A. § 1640(e)* ("any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation . . . ."). As such, only the alleged $300.00 charge from November 15, 2016 survives the statute **[*16]** of limitations.

Plaintiff has alleged that the November 15 charge will "raise the cost of any possible loan modification." (Compl. ¶ 101(c).) Arguably, this sufficiently alleges a concrete injury. However, even if this injury is sufficiently concrete, it is nonetheless too speculative to ultimately confer standing. See *Lujan v. Defendersof Wildlife, 504 U.S. 555, 560 (1992)* (holding that, to establish that he has standing, a plaintiff must demonstrate "an injury in fact . . . [that is] actual or imminent, not conjectural or

14

hypothetical") (citations and quotations omitted); see

also *Reddy v. Foster, 845 F.3d 493, 500 (1st Cir. 2017)* (holding that "a future injury is too speculative for Article III purposes [if] no prosecution is even close to impending") (quotations omitted).

Although the Complaint twice references Plaintiff's attempt to start the loan modification process (see Compl. ¶¶ 32, 97), Plaintiff has not alleged that his loan modification process is

"imminent" nor has he alleged how or why the presence of the fees/expenses would increase his future loan modification costs. Moreover, Plaintiff himself characterizes the prospect of his loan modification as only "possible," not "probable," and certainly not "imminent" as required to confer standing. (*Id. at ¶ 101(c)*.) As such, Plaintiff's TILA **[*17]** claim does not allege a sufficiently imminent injury-in-fact and is therefore dismissed for lack of standing pursuant to Rule 12(b)(1).

A. Motion to Dissolve the TRO

Plaintiff filed his motion for TRO on Sunday, November 12, 2017, hoping to stop a ***foreclosure sale*** that was scheduled to take place the following afternoon. The hearing on that motion took place on Monday morning, mere hours before the ***foreclosure sale*** was scheduled to occur. (See Tr. of TRO Hr'g 13, ECF No. 12.) After acknowledging that its "review of the material [was] very cursory," given the extremely short amount of time it had to review those materials, the Court granted the TRO based on its understanding

15

that paragraph 19 of the ***mortgage*** agreement entitled Plaintiff to receive a "notice of acceleration" in addition to the Default notice, which Plaintiff admitted to receiving on August 3, 2017. (Id.)

Having had an opportunity to more closely review the ***mortgage*** agreement, the Court finds that its earlier reasoning was flawed and that the TRO must be dissolved. paragraph 19 is not the correct source for assessing what notice was required under the ***mortgage*** agreement prior to initiating a ***foreclosure*** because that paragraph merely **[*18]** outlines a borrower's right to reinstate *after* ***foreclosure*** proceedings have already commenced. (See Compl. Ex. A at 11, ECF No. 1-3.) Rather, as discussed in Section II.A.i *supra, paragraph 22* lays out the notice reuirements necessary to commence ***foreclosure*** proceedings and plainly does not require Defendants to

send a separate "notice of acceleration."

Temporary restraining orders, "through lapse of time, become preliminary injunctions." *Prof'l Plan Examiners of N.J., Inc. v.Lefante, 750 F.2d 282, 288 (3d Cir. 1984)* (citing *Maine v. Fri, 486 F.2d 713, 715 (1st Cir. 1973)*). As such, in order to defeat a motion to dissolve the TRO, the party who obtained the TRO must prove the same elements he would be required to prove in order to obtain a preliminary injunction, namely: "(1) a likelihood of success on the merits, (2) a likelihood of irreparable harm absent interim relief,

(3) a balance of equities in the plaintiff's favor, and (4) service

16

of the public interest." *Arborjet, Inc. v. Rainbow Treecare Sci.Advancements, Inc., 794 F.3d 168, 171 (1st Cir. 2015)*.

As discussed throughout this Memorandum, Plaintiff cannot succeed on the merits. Accordingly, Plaintiff is not entitled to injunctive relief and the TRO must be dissolved.

III. Conclusion

For all of the above-stated reasons, all of Plaintiff's claims

against Defendant Bank of New York are dismissed without prejudice

and Defendant Bayview's Motion to Dismiss and Dissolve **[*19]** (ECF No. 8)

is GRANTED.

IT IS SO ORDERED.

William E. Smith

Chief Judge

Date: October 12, 2018

17

End of Document

No *Shepard's* Signal™
As of: March 30, 2019 1:13 PM Z

# *Culley v. Bank of Am., N.A.*

United States District Court for the District of Massachusetts

March 29, 2019, Decided; March 29, 2019, Filed

CIVIL ACTION NO. 18-cv-40099-DHH

**Reporter**

2019 U.S. Dist. LEXIS 53709 *

KATHRYN K. CULLEY and CHRISTIAN P. CULLEY, Plaintiffs, v. BANK OF AMERICA, N.A., FIRST AMERICAN TITLE INSURANCE COMPANY, WELLS FARGO BANK, N.A., and HARMON LAW OFFICES, P.C., Defendants.

## Core Terms

*Mortgage*, *foreclosure*, notice, endorsement, *foreclosure* sale, mortgagee, servicer, Deeds, motion to dismiss, law law law, allegations, foreclose, requires, unfair, *foreclosure* proceeding, blank, recorded, reasons, assignment of a *mortgage*, proclamation, promise, certification, certificate of occupancy, Registry, mailed, initiated, assigned, damages, adjournment, violations

**Counsel:** **[\*1]** For Pro se Party Kathryn K. Culley, Christian P. Culley, Plaintiffs: Todd S. Dion, Law Office of Todd S. Dion, Quincy, MA.

For Bank of America, N.A., Wells Fargo Bank, N.A., Defendants: Sean R. Higgins, LEAD ATTORNEY, K & L Gates LLP - MA, Boston, MA.

For First American Title Insurance Company, Defendant: Alison M. Kinchla, James B. Fox, LEAD ATTORNEYS, Bernkopf Goodman LLP, Boston, MA.

For Harmon Law Offices, P.C., Defendant: Andrea V Lasker, Kurt R. McHugh, Robert M. Mendillo, LEAD ATTORNEYS, Scott C. Owens, Harmon Law Offices, P.C., Newton, MA.

**Judges:** David H. Hennessy, UNITED STATES MAGISTRATE JUDGE.

**Opinion by:** David H. Hennessy

## Opinion

<u>ORDER</u>

Hennessy, M.J.

Plaintiffs Kathryn K. Culley and Christian P. Culley (together, "Plaintiffs") brought this action against Bank of America, N.A. ("Bank of America"), Wells Fargo Bank, N.A. ("Wells Fargo"), First American Title Insurance Company ("First American"), and Harmon Law Offices, P.C. ("Harmon," and together with Bank of America, Wells Fargo, and First American, the "Defendants") seeking relief in relation to the *foreclosure* of Plaintiffs' home. With their verified complaint, Plaintiffs filed an emergency motion for a preliminary injunction barring the current *eviction* **[\*2]** proceedings against them in Central *Housing* Court. See dkt. no. 4 (motion for preliminary injunction); see also Bank of Am., N.A. v. Culley, 18H85SP002517 (Mass. Hous. Ct. June 12, 2018). Bank of America and Wells Fargo (together, the "Bank Defendants") opposed the preliminary injunction motion. Dkt. no. 25. All Defendants have filed motions to dismiss Plaintiffs' verified complaint. See dkt. no. 12 (Harmon motion); dkt. no. 19 (First American motion); dkt. no. 22 (Bank Defendants motion). Plaintiffs have opposed First American's and the Bank Defendants' motions to dismiss. See dkt. nos. 32, 40. Harmon's motion to dismiss is unopposed.

The Court heard the parties on Plaintiffs' motion for a preliminary injunction and Defendants' dismissal motions on July 26, August 24, and September 25, 2018. Dkt. nos. 33, 37, 43. At the Court's direction, the Bank Defendants and Plaintiffs submitted further briefing. See dkt. nos. 44, 45. Having reviewed the parties' submissions and for the reasons that follow, Harmon's motion to dismiss (dkt. no. 12) is GRANTED; First American's motion to dismiss (dkt. no. 19) is GRANTED; Bank Defendants' motion to dismiss (dkt. no. 22) is GRANTED; and Plaintiffs' **[\*3]** motion for a preliminary injunction (dkt. no. 4) is DENIED.

I. BACKGROUND

A. <u>The Note and *Mortgage*</u>

MICHAEL HAGOPIAN

On September 30, 2005, Plaintiffs acquired the property known as 22A Lovers Lane in Southborough, Massachusetts (the "Property") by quitclaim deed. Dkt. no. 3 ("Complaint"), at p. 19 ¶ 25;[1] dkt. no. 3-2, at pp. 2-3 (copy of deed). The purchase price was $978,500. Dkt. no. 3-2, at pp. 2-3.

To purchase the Property, Plaintiffs obtained a loan in the amount of $550,000 from non-party Gateway Funding Diversified *Mortgage* Services, L.P. ("Gateway"). Complaint, at p. 22 ¶ 39. The loan was evidenced by a promissory note (the "Note"), dated September 30, 2005 in favor of Gateway. See id.; see also dkt. no. 3-4, at pp. 23-25 (copy of Note). As security for the Note, Plaintiffs executed a *mortgage* on the Property in the principal amount of $550,000 (the "*Mortgage*"). Complaint at p. 21, ¶ 33; dkt. no. 3-4, at p. 27 (copy of *Mortgage*). The *Mortgage* identified Gateway as the lender and named *Mortgage* Electronic Registration Systems, Inc. ("MERS"), as nominee for Gateway, as the mortgagee of record. Dkt. no. 3-4, at p. 27. The *Mortgage* was recorded in the Worcester South Registry of Deeds (the "Registry **[*4]** of Deeds") on September 30, 2005. Id.

At some point in time, Gateway endorsed the Note in blank. Dkt. no. 3-5, at p. 15. At a later time, Gateway endorsed the Note to Wells Fargo. Dkt. no. 3-2, at p. 17. Wells Fargo thereafter endorsed the Note in blank. See dkt. no. 3-4, at p. 25. On April 2, 2011, MERS, as nominee for Gateway, assigned the *Mortgage* to Bank of America (the "Assignment of *Mortgage*"). Dkt. no. 23-2, at p. 2. The Assignment of *Mortgage* was recorded in the Registry of Deeds on August 1, 2011. Id.

B. Property Defects and Other Litigation

Shortly after Plaintiffs acquired the Property, they learned that it lacked both regulatory septic system approval and a certificate of occupancy. Significant structural defects and other issues surfaced as well.[2] In response, Plaintiffs filed various grievances. For example, Plaintiffs lodged complaints against the

builder/vendor involved in the Property's construction, as well as the engineer. Both had their licenses revoked. See dkt. no. 18-1, at p. 20 n.3; dkt. no. 3-2, at pp. 50-54. In 2009, Plaintiffs also filed a claim with their title insurer, First American. See dkt. no. 3-2 , at pp. 32-33. First American denied Plaintiffs' claim **[*5]** because the Property's structural and regulatory issues were unrelated to its title. See dkt. no. 3-5, at pp. 80-82 ("The refusal of a third party to purchase your Property due to other reasons, such as code violations, structural defects, or other physical aspects of your Property is not an unmarketability of title matter that would be covered under your Policy.").

Plaintiffs also took legal action separate from the instant case. In 2006, they sued the sellers and contractors of the Property. See *Culley, 2016 WL 6235754, at *1*. That litigation spanned ten years and two trials. See id. First, in 2010 a jury awarded Plaintiffs $1,093,487 in damages. Id. at *2. However, the trial judge deemed the verdict excessive and ordered a new trial unless Plaintiffs accepted a remittitur to $140,518. Id. Plaintiffs did not accept, and during the second trial declined to offer evidence of the damages they had won at the first trial.[3] Id. The case proceeded as a bench trial, and the judge ultimately awarded Plaintiffs $25 in nominal damages, and about $259,000 in attorneys' fees and costs. Id. at *3. The judgment was affirmed on appeal. Id. at *6.

C. Default, *Foreclosure*, **[*6]** and Subsequent Conduct

In April 2010, Wells Fargo advised Plaintiffs that their loan was in default after they had stopped making payments in February 2010. See dkt. no. 3-4 at 15 (letter to Plaintiffs from Harmon). Plaintiffs apparently informed Wells Fargo that they were in litigation against the seller and builder; in a letter dated August 13, 2010, Wells Fargo agreed to suspend debt collection and *foreclosure* activities through December 31, 2010, "to allow time for a ruling to be made on the current ongoing litigation regarding [the Property]." Dkt. no. 3-3, at p. 5. In a subsequent letter dated March 8, 2011, Wells Fargo again agreed to suspend *foreclosure*

---

[1] Plaintiffs' complaint assigns the same number to multiple paragraphs. For clarity's sake, this Order refers to both page and paragraph numbers of the complaint.

[2] For a detailed background on Plaintiffs' experiences respecting the Property, see Culley v. Authentic Traditions, LLC, 15-*P-1020, 2016 WL 6235754, at *1 (Mass. App. Ct. Oct. 25, 2016)*, further app. rev. denied, **65 N.E.3d 663** (tbl.), **476 Mass. 1107 (Dec. 22, 2016)**; see also generally *Culley v. Cato, 953 N.E.2d 184 (Mass. 2011)*.

---

[3] The judge precluded Plaintiffs' expert from expanding at the second trial on the damages to which the expert had testified at the first trial. Id. Plaintiffs took the position that the expert could not ethically testify that their damages were limited in this way. Id. Apparently for this reason, the Plaintiffs chose not to call the expert at all, did not find another expert to testify, and offered no expert testimony on damages at the second trial. Id.

activities, writing: "At this time, [Wells Fargo] does not anticipate any further *foreclosure* action until the litigation issues involving this property have been resolved." Dkt. no. 3-3, at p. 20. The letter further noted that a Wells Fargo employee would "continue to monitor [the] *mortgage* loan and provide [Plaintiffs] with periodic status updates." Id.

In May 2012, Wells Fargo filed a Service members Civil Relief Act ("SCRA") complaint against Plaintiffs in Massachusetts Land Court. See id. at 24. In August 2012, the Land Court entered **[*7]** a judgment, concluding that Plaintiffs were not entitled to the benefits of the SCRA. Id. at 27. On August 31, 2016, Wells Fargo mailed Plaintiffs a letter notifying them that they had ninety days to cure their default on the loan. Id. at 58. Wells Fargo retained Harmon to handle *foreclosure* proceedings. See id. at 68. After fairly extensive correspondence among Plaintiffs, Wells Fargo, and Harmon, *foreclosure* proceedings were initiated. See id. at 88.

A *foreclosure* sale was scheduled for October 18, 2017. See dkt. no. 3-5, at 24. The sale ultimately was postponed to January 3, 2018. Id. at 29. On January 3, 2018, Bank of America purchased the Property at the *foreclosure* sale for $522,000 after two other bidders failed to perform. Id. at 62. Bank of America is the current owner of record. Id. at 46; see also id. at 59-61 (*foreclosure* deed).

On May 23, 2018, Harmon, on behalf of Bank of America, initiated *eviction* proceedings by mailing Plaintiffs a "72 hour notice to quit and vacate premises." Id. at 69-70. On June 1, 2018, a *summary process eviction* proceeding was initiated in Central *Housing* Court. See id. at 72. Facing *eviction*, Plaintiffs filed the instant action on June 11, 2018, alleging that the *foreclosure* sale was void and moving to enjoin the *eviction* proceedings. See **[*8]** dkt. nos. 1, 3, 4.

On July 26, 2018, the Court granted Bank of America's oral motion to continue the preliminary injunction hearing in order resolve all pending motions at the same time, based on Bank of America's representation that it would not act on the Central *Housing* Court *eviction* proceeding until the motions were resolved. Dkt. no. 34.

## II. LEGAL STANDARD

To survive a motion to dismiss under *Federal Rule of Civil Procedure 12(b)(6)*, a plaintiff must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)*. That is, "[f]actual

allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id. at 555* (internal citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)* (quoting *Twombly, 550 U.S. at 556*). Indeed, plausible "means something more than merely possible, and gauging a pleaded situation's plausibility is a 'context-specific' job that compels [the Court] 'to draw on [its] judicial experience and common sense.'" *Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012)* (quoting *Iqbal, 556 U.S. at 679*).

Despite this generous standard, "*Rule 12(b)(6)* is not entirely a toothless tiger . . . . The threshold **[*9]** for stating a claim may be low, but it is real." *Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 16 (1st Cir. 1989)* (quotation omitted). The complaint must therefore "allege a factual predicate concrete enough to warrant further proceedings." *DM Research, Inc. v. Coll. of Am. Pathologists, 170 F.3d 53, 55 (1st Cir. 1999)* (emphasis in original). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal, 556 U.S. at 678* (quoting *Twombly, 550 U.S. at 555*). Dismissal is appropriate if a plaintiff's well-pleaded facts do not "possess enough heft to show that [the] plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 84 (1st Cir. 2008)* (quotations and original alterations omitted).

The court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007)* (citing *Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999))*. "Under *Rule 12(b)(6)*, the district court may properly consider only facts and documents that are part of or incorporated into the complaint; if matters outside the pleadings are considered, the motion must be decided under the more stringent standards applicable to a *Rule 56* motion for summary judgment." *Rivera v. Centro Médicode Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009)* (quoting *Trans-SpecTruck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008))*. There lies an exception to this rule "for documents the authenticity of which [is] not disputed by the parties; for official public records; for documents central to [a plaintiff's] claim; or for documents sufficiently referred **[*10]** to in the complaint." *Rivera, 575 F.3d at 15* (quoting *Alt. Energy,*

*Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001))*.

Notwithstanding the above, the Court must apply a liberal standard where, as here, the Plaintiffs' complaint was filed pro se. *Sergentakis v. Channell, 272 F. Supp. 3d 221, 224 (D. Mass. 2017)* (citing *Gibbs v. SLM Corp., 336 F. Supp. 2d 1, 5 (D. Mass. 2004))*. A liberal construction of prose pleadings is necessary "to avoid inappropriately stringent rules and unnecessary dismissals." *Sergentakis, 272 F. Supp. 3d at 224* (citation omitted).

### III. ANALYSIS RESPECTING MOTIONS TO DISMISS

This analysis presents the Court's attempt to delineate Plaintiffs' causes of action and complained-of conduct.

### A. ***Foreclosure*** Notice and Process

The best reading of Plaintiffs' complaint reveals several allegations that the Bank Defendants and Harmon unlawfully and improperly commenced and completed ***foreclosure*** proceedings. Specifically, the complaint alleges that: (i) the published notice of ***foreclosure*** was deficient; (ii) the Assignment of ***Mortgage*** to Bank of America was legally ineffective; (iii) Bank of America lacked authority to enforce the Note and foreclose; (iv) the Bank Defendants failed to make a public proclamation continuing the ***foreclosure*** sale, and thus the sale was not properly noticed; and (v) the Bank Defendants failed to comply with pre-***foreclosure*** notice requirements. I address each contention in turn.

### 1. Deficient [*11] Notice of ***Foreclosure***

"Under Massachusetts choice of law principles, claims arising in connection with ***foreclosures*** of real property are . . . governed by the law of the state in which the land is located." *Pearson v. United States, 905 F. Supp. 2d 400, 403 (D. Mass. 2012)* (citing United Guar. Residential Ins. Co. v. O'Neil, No. 933004D, 1994 WL 879614, at *1 (Mass. Super. Ct. June 27, 1994) (stating "[t]he mechanics of ***foreclosure***, including what notice ha[s] to be given," are determined by the law of the situs)). In Massachusetts, "[a] ***foreclosure*** sale conducted pursuant to a power of sale in a ***mortgage*** must comply with all applicable statutory provisions, including in particular . . . [Massachusetts General Laws ch.] 244, *§ 14*." *Eaton v. Fed. Nat'l* **Mortg.** *Ass'n, 969 N.E.2d 1118, 1121 (Mass. 2012)*. *Section 14* prescribes the form and method of publication of notice of a ***foreclosure*** sale. Prior to ***foreclosure*** under a power of sale, the statute requires a mortgagee to publish notice of the sale in a local newspaper "once in each of three

successive weeks, the first publication to be not less than twenty-one days before the day of sale," and that the notice be sent by registered mail to the owner of record. *Mass. Gen. Laws ch. 244, § 14*. Registered mail, for purposes of sending notice, includes certified mail. *Mass. Gen. Laws ch. 4, § 7*. *Section 14* further provides that when a mortgagee holds a ***mortgage*** pursuant to an assignment, the notice of ***foreclosure*** [*12] is valid only if:

> (i) at the time such notice is mailed, an assignment, or a chain of assignments, evidencing the assignment of the ***mortgage*** to the foreclosing mortgagee has been duly recorded in the registry of deeds for the county or district where the land lies and (ii) the recording information for all recorded assignments is referenced in the notice of sale required in this section.

*Mass. Gen. Laws ch. 244, § 14*.

Here, Plaintiffs' last monthly loan payment was received in February 2010. See dkt. no. 3-3 , at p. 5 ("As of the date of this letter your loan is showing due for the March 2010 payment."); *id. at 58* (containing 90-day cure letter and noting Plaintiffs did not make the monthly payment due March 2010 or any other payment due thereafter). On August 31, 2016, Wells Fargo, as the loan servicer, issued a 90-day right to cure letter to Plaintiffs. Id. at 58-64. Harmon, on behalf of mortgagee Bank of America and servicer Wells Fargo, caused a notice of sale for October 18, 2017 to be published in the Worcester Telegram & Gazette, once a week for three successive weeks, beginning September 22, 2017. See dkt. no. 3-5, at pp. 62-64 (containing copy of Affidavit of compliance with sale procedures and copy of sale notice). The sale [*13] notice was sent to Plaintiffs via certified mail on September 19, 2017. *Id. at 6*. At the time the notice was mailed and published, the Assignment of ***Mortgage*** to Bank of America had been recorded in the Registry of Deeds. Dkt. no. 23-2, at p. 2.[4] Recording information was referenced in the notice of sale. Dkt. no. 3-5, at p. 7. Plaintiff's conclusory allegations fail to controvert the record evidence of compliance with *Mass. Gen. Laws ch. 244, § 14*, or to make Plaintiffs' claim plausible on its face.

---

[4] While the Assignment of ***Mortgage*** is not appended to Plaintiffs' complaint in full, documents referred to in the complaint and central to a plaintiff's claim may be considered on a motion to dismiss. *Rivera, 575 F.3d at 15*; *Alt. Energy, Inc., 267 F.3d at 33*.

2. Assignment of **_Mortgage_** to Bank of America

Plaintiffs next allege that the Assignment of **_Mortgage_** from MERS to Bank of America is invalid because Wells Fargo was the real owner of the **_Mortgage_** at the time MERS assigned the **_Mortgage_** to Bank of America. This claim simply lacks plausibility. The predicate for Plaintiffs' claim is a thin reed: the original loan number associated with the **_mortgage_** loan bears a reference to Wells Fargo. See, e.g., dkt. no. 3-2, at p. 5. In other words, the original **_mortgage_** loan given to Plaintiffs by Gateway contained an identification number for a Wells Fargo loan. This isolated reference does not remotely evidence an ownership interest of Wells Fargo in the **_mortgage_** loan. Rather, the record establishes [*14] ownership interests in Gateway and Bank of America only. Indeed, the Registry of Deeds provides the full chain of title: the **_Mortgage_** identifying Gateway as lender and MERS as nominee was recorded in the Registry of Deeds on September 30, 2005. Dkt. no. 3-4, at p. 27. MERS, on behalf of Gateway, assigned the **_Mortgage_** to Bank of America on April 2, 2011. Dkt. no. 23-2, at p. 2. The Assignment of **_Mortgage_** was recorded in the Registry of Deeds on August 1, 2011 and is the only recorded assignment respecting the **_Mortgage_**. Id. Bank of America therefore was the mortgagee of record when nonjudicial **_foreclosure_** proceedings commenced. In addition, Plaintiffs' claim overlooks the fact that mortgagees may predetermine securitization and servicing information for **_mortgage_** loans prior to lending. As such, Plaintiffs' allegation is not plausible. _Twombly, 550 U.S. at 570_.

3. Authority to Enforce the Note

Plaintiffs further allege that Bank of America was not entitled to foreclose because it did not have the authority to enforce the Note at the time **_foreclosure_** proceedings were commenced. This allegation is unsupportable and fails. To be valid, "a **_foreclosure_** effected through the statutory power of sale, as governed by and [*15] set forth in [Mass. Gen. Laws ch.] 183, § 21, and [ch.] 244, §§ 11-17C, requires the mortgagee to hold the note or to act on behalf of the note holder." _Galiastro v. **Mortg.** Elec. Registration Sys., Inc., 4 N.E.3d 270, 276 (Mass. 2014)_ (citing _Eaton, 969 N.E.2d at 1131_). Massachusetts law permits one who, although not the noteholder himself, acts as the agent of the noteholder and stands "in the shoes" of the mortgagee to effectuate a **_foreclosure_**. _Eaton, 969 N.E.2d at 1131_. Massachusetts law thus requires that an affidavit pursuant to _Mass. Gen. Laws ch. 183, § 54B_ be recorded in the Registry of Deeds, whereby the affiant attests that it either holds the **_mortgage_** and note or is acting on behalf of the party entitled to foreclose. _Id. at 1133 n.28_ ("[The law] allows for the filing of an affidavit that is 'relevant to the title to certain land and will be of benefit and assistance in clarifying the chain of title.' Such an affidavit may state that the mortgagee either held the note or acted on behalf of the note holder at the time of the **_foreclosure_** sale." (quoting _Mass. Gen. Laws ch. 183, § 5B_)).

Here, **_foreclosure_** proceedings commenced in September 2017 when the notice of sale was first published. Dkt. no. 3-5, at pp. 62-64. The February 1, 2018 affidavit of Kishia Givens of Wells Fargo attests that Bank of America was "the holder of the promissory note" when nonjudicial **_foreclosure_** proceedings commenced. [*16] _Id. at 67_. This affidavit was recorded in the Registry of Deeds pursuant to _§ 54B. Id. at 66._ It serves as sufficient proof that Bank of America held the Note at the time the notice of sale was published, and through the **_foreclosure_** sale. Id.

A review of the record reveals three copies of the Note. One copy shows the Note endorsed by Gateway in blank. A second copy shows "Wells Fargo Bank, N.A." stamped into the blank endorsee field of the previous endorsement, which reflects a transfer from Gateway to Wells Fargo. Third, the last (and most recent) copy of the Note reflects a third endorsement, from Wells Fargo in blank.[5] The effect of an endorsement in blank is that a note is enforceable by proof of possession alone. See _U.C.C. § 3-205(b)_ (AM. LAW INST. & UNIF. LAW COMM'N 1977) ("If an indorsement is made by the holder of an instrument and it is not a special indorsement, it is a 'blank indorsement.' When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed."); Id. _§ 3-301_ (stating that the party entitled to enforce an instrument means "(i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, [*17] or (iii) a person not in possession of the instrument who is entitled to enforce the instrument" under other sections of the Code); see also _Courtney v. U.S. Bank, N.A., 922 F. Supp. 2d 171, 174 (D. Mass. 2013)_. Because the Note is endorsed in blank, its holder is entitled to enforce it. In this case, that is Bank of America.

---

[5] Plaintiffs received this copy of the Note as part of Harmon's April 11, 2017 response to Plaintiffs' 93A demand letter, months before the notice of sale was published. See dkt. 3-4, at pp. 23-25.

For these reasons, Plaintiffs' conclusory and unsupported claim that Bank of America lacked authority to enforce the Note at the time the **_foreclosure_** was noticed is subject to dismissal. See _Ruiz Rivera, 521 F.3d at 84_.

4. Sale Adjournment and Public Proclamation

Plaintiffs allege that they did not receive notice that the **_foreclosure_** sale, originally scheduled for October 18, 2017, was adjourned to December 20, 2017 and then again to January 3, 2018. Complaint, p. 8 ¶ 13. This allegation is squarely undermined by several documents attached to the complaint: First, a letter from Harmon dated October 18, 2017, informed Plaintiffs that the **_foreclosure_** sale scheduled for that day had been postponed to December 20, 2017. Dkt. no. 3-5, at p. 24. Second, a letter from Harmon dated October 23, 2017, informed Plaintiffs that the sale scheduled for December 20, 2017 "has been postponed until January 3, 2018 at 11:00 a.m." _Id. at 29_ (emphasis in original). These letters belie **[*18]** Plaintiffs' failure to notice allegation.

Plaintiffs further allege that the sale on January 3, 2018 was improper because public proclamations were not made on October 18, 2017 or December 20, 2017. Complaint, at p. 16 ¶ 30. To support their allegation of no proclamation on October 18, 2017, Plaintiffs rely on a video they recorded at the Property on that date. Dkt. no. 40, at p. 7. However, as Plaintiffs conceded at the September 25, 2018 hearing, the video does not capture all of the auctioneer's conduct, as it cuts off before the auctioneer left. Hence, the Court is left with Plaintiffs' bald allegation of no public proclamation on October 18, 2017. Plaintiffs' allegation of no proclamation on December 20, 2017 is similarly unsupported.

Both allegations are contradicted by the Affidavit of Sale of Drew Champigny, dated April 10, 2018 and filed in the Registry of Deeds ("Affidavit of Sale"). Dkt. no. 3-5, at pp. 62-63. It recounts that the sale was postponed to December 20, 2017 by public proclamation on October 18, 2017. Id. On December 20, 2017, the sale was again postponed by public proclamation to January 3, 2018. Id. Two bidders participated in the January 3, 2018 sale, Reem Property, **[*19]** LLC and John Avella. When either failed to perform under the terms of the sale memorandum, Bank of America purchased the Property with a bid equal to that of the second-highest bidder. Id. Since these bidders participated in the auction, the logical, if not only inference, is that a public proclamation was made on December 20, 2017. These bidders had notice of, and competitively bid at, the January 3, 2018 sale.

Apart from the record, there is no "hard and fast rule" for noticing adjournments of a **_foreclosure_** sale by public proclamation. _Fitzgerald v. First Nat'l Bank of Boston, 703 N.E.2d 1192, 1194-95 (Mass. App. Ct. 1999)_. Indeed, the procedure utilized for **_foreclosure_** sale postponements falls under the good faith and commercial reasonableness obligations of a mortgagee. Id. ("Apart from the statutory requisites, to which the mortgagee must strictly adhere, questions regarding notice of **_foreclosure_** proceedings will continue to be viewed according to the criteria set forth in our cases, rather than under any hard and fast rule, in light of the mortgagee's general obligations of good faith, diligence, and fairness in the disposition of the **_mortgaged_** property." (citations omitted)). For example, while normally a sufficient means to notice a postponement, a public proclamation **[*20]** may not be sufficient where (i) no one besides the auctioneer and mortgagee is present to hear the proclamation and (ii) the mortgagee did not take measures to apprise the borrower of the adjournment. See _Clark v. Simmons, 23 N.E. 108, 108-109 (Mass. 1890)_. Under Massachusetts law, the mortgagor has the burden of proving commercial unreasonableness. Burke v. Sun Am., Inc., No. CV984842, _2000 WL 1273412, at *7 (Mass. Super. Ct. Apr. 25, 2000)_ (citing _Chartrand v. Newton Tr. Co., 5 N.E.2d 421, 423 (Mass. 1936))_.

Here, given that Harmon mailed notices of the adjournments to Plaintiffs, that the record includes a sworn and uncontroverted statement that both dates were continued by public proclamation, and that two private parties participated in the **_foreclosure_** sale on the date to which the **_foreclosure_** was ultimately continued, Plaintiffs' allegation that no public proclamations were made is entirely conclusory. Moreover, even if public proclamations were not made, Plaintiffs can prevail only if they offer some factual evidence of commercial unreasonableness. They have failed to do so, and the claim is therefore dismissed.[6]

5. Compliance with _Mass. Gen. Laws ch. 244, §§ 35A_ and _35B_

Finally, Plaintiffs allege that the Bank Defendants failed to comply with _Mass. Gen. Laws ch. 244, §§ 35A_ and

---

[6] To the extent Plaintiffs' allegation that Bank of America failed to pay fair market value for the Property supports a claim of commercial unreasonableness, the allegation is addressed in § III.B.4.

*35B* prior to **foreclosure**. This allegation is not plausible. *Section 35A* requires a mortgagee to notify the mortgagor of the right to cure a default. **[*21]** *MASS. GEN. LAWS ch. 244, § 35A*. Plaintiffs were mailed a 90-day right to cure letter in compliance with *§ 35A*. But even still, any violation of *§ 35A* would have had to render the **foreclosure** so "fundamentally unfair" so as to warrant the setting aside of the **foreclosure** sale "for reasons other than failure to comply strictly with the power of sale provided in the **mortgage**." *U.S. Bank Nat'l Ass'n v. Schumacher, 5 N.E.3d 882, 891 (Mass. 2014)* (Gants, J., concurring) (quoting *Bank of Am., N.A. v. Rosa, 999 N.E.2d 1080, 1088 (Mass. 2013))*. There is nothing deceptive or unfair about the 90-day right to cure notice. Plaintiffs had been in default for over six years prior to service of the notice. The notice complied with Massachusetts pre-**foreclosure** notice requirements, is not part of the **foreclosure** process itself, *Schumacher, 5 N.E.3d at 890 (Spina, J.)*, and thus Plaintiffs' claim respecting *§ 35A* must fail.

*Section 35B* requires a mortgagee to take reasonable steps in good faith to avoid **foreclosure**, which may include noticing a right of a mortgagor to pursue a modified **mortgage**. Neither the **Mortgage** nor the Note requires the Bank Defendants to modify Plaintiffs' loan, and there is no independent legal requirement to do so. See MacKenzie v. Flagstar Bank, FSB, 738 F. d 486, 493 (1st Cir. 2013) (noting lender does not have a legal duty in the absence of a contractual promise to consider loan modification prior **[*22]** to **foreclosure**); Peterson v. GMAC **Mortg.**, LLC, 11-cv-11115-*RWZ, 2011 WL 5075613, at *6 (D. Mass. Oct. 25, 2011)* ("Under Massachusetts case law, absent an explicit provision in the **mortgage** contract, there is no duty to negotiate for loan modification once a mortgagor defaults.") (citation omitted). Plaintiffs recognize as much. See Complaint, at p. 38 ¶ 83 n.20 ("If the investor would be better off if the servicer forecloses on the loan, rather than modifies the loan . . . then the servicer doesn't have to modify the loan."). Moreover, beyond the legal fact that there was no obligation to modify, the record reflects patience on part of the Bank Defendants, as they accepted Plaintiffs' request to stay **foreclosure** for years while the Plaintiffs pursued litigation against the Property contractors. As of December 2016, Plaintiffs owed $511,189.95 in principal and $312,041.82 in interest and other charges for a total of $823,231.77. See dkt. no. 3-3, at p. 68 (letter to Plaintiffs from Harmon). Thus, to the extent Plaintiffs seek relief for failure to modify or act in good faith, the claim lacks merit and is subject to dismissal.

B. Chapter 93A

"Chapter 93A 'proscribes unfair methods of competition and unfair or deceptive acts or practices **[*23]** in the conduct of any trade or commerce.'" HMC Assets, LLC v. Conley, 14-cv-10321-MBB, 2016 WL 4443152, at *31 (D. Mass. Aug. 22, 2016) (quoting *Juárez v. Select Portfolio Servicing, Inc., 708 F.3d 269, 280 (1st Cir. 2013)*; *Mass. Gen. Laws ch. 93A, § 2*). A practice is deemed unfair if it falls "within the penumbra of some common-law, statutory, or other established concept of unfairness; is immoral, unethical, oppressive, or unscrupulous; and causes substantial injury." *Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 240 (1st Cir. 2013)* (quoting *Linkage Corp. v. Trs. of Boston Univ., 679 N.E.2d 191, 209 (Mass. 1997))*. Factors critical in determining fairness under Chapter 93A are (i) "the nature of [the] challenged conduct" and (ii) the "purpose and effect of that conduct." *Mass. Emps. Ins. Exch. v. Propac-Mass, Inc., 648 N.E.2d 435, 438 (Mass. 1995)*. "A practice is deceptive 'if it could reasonably be found to have caused a person to act differently from the way he or she otherwise would have acted.'" Conley, 2016 WL 4443152, at *31 (quoting *Aspinall v. Philip Morris Cos., 813 N.E.2d 476, 486 (Mass. 2004))*. Moreover, in order to demonstrate a 93A violation, a plaintiff must show that a defendant engaged in "extreme or egregious" conduct. *Baker v. Goldman, Sachs & Co., 771 F.3d 37, 51 (1st Cir. 2014)*.

Plaintiffs' Chapter 93A claim alleges that the Bank Defendants and Harmon conducted fraudulent and deceptive **foreclosure** proceedings in that: (i) Bank of America's Assignment of **Mortgage** was ineffective because the chain of assignments never included Wells Fargo; (ii) the original Note was never produced to Plaintiffs; (iii) the Bank Defendants and Harmon failed to strictly comply with the notice and publication **[*24]** requirements respecting nonjudicial **foreclosure** sales, including the failure attach a true copy of the Note to the 209 C.M.R. 18.21A certification; and (iv) the Bank Defendants and Harmon did not obtain an appropriate price for the Property at the **foreclosure** sale given its fair market value.[7] I address each in turn.

1. Assignment of **Mortgage**

Plaintiffs first allege that the Assignment of **Mortgage** from MERS to Bank of America is void and fraudulent because it does not account for Wells Fargo's alleged

---

[7] To the extent Plaintiffs' Chapter 93A claims also include allegations respecting the lack of a certificate of occupancy at closing or the so-called Obsolete **Mortgage** Statute, those issues are addressed below. See infra §§ III.F and III.G.

2019 U.S. Dist. LEXIS 53709, *24

interest in the **_Mortgage_**. This claim fails for the reasons discussed above respecting Plaintiffs' notice allegations.[8] Moreover, Plaintiff cannot demonstrate extreme or egregious conduct, let alone negligence, respecting the Assignment of **_Mortgage_**. See *Baker, 771 F.3d at 51*.

### 2. Failure to Produce Original Note

Plaintiffs allege that the Bank Defendants failed to produce the original Note as proof that Bank of America was entitled to foreclose. Complaint, at p. 39 ¶ 85. Nothing in *Mass. Gen. Laws ch. 244, § 14* requires a mortgagee to produce the original Note to conduct a nonjudicial **_foreclosure_**. Nor is there any such requirement under 209 C.M.R. 18.21A. Instead, as discussed above, Massachusetts law requires that a third-party loan servicer provide **[\*25]** a "certification of the chain of title and ownership of the note and **_mortgage_** from the date of the recording of the **_mortgage_** being foreclosed upon" and "a copy of the note with all required endorsements." 209 C.M.R. 18.21A(2)(c). Because the law does not require the original Note to be produced to the mortgagor to effectuate a valid **_foreclosure_**, this allegation fails to state a plausible claim.[9] *Twombly, 550 U.S. at 570*.

### 3. Failure to Strictly Comply with Regulatory Obligations

Next the Plaintiffs allege that the Bank Defendants failed to strictly comply with 209 C.M.R. 18.21A, in violation of ch. 93A. Specifically, Plaintiffs allege that the failure to include with the 209 C.M.R. 18.21A(2)(c) certification a copy of the correct version of the Note—that is, one with all endorsements—violates ch. 93A and case law requiring strict compliance with the nonjudicial **_foreclosure_** statutes in order to effectuate a valid sale.

A violation of 209 C.M.R. 18.21A "shall be considered an unfair or deceptive act or practice under *M.G.L. c. 93A, § 2*" and subject to the penalties contained in M.G.L. c. 93A. See 209 C.M.R. 18.22(1); see also Johnson v. Wilmington Tr., N.A., 16-cv-10422-*IT, 2016 WL 5109510, at \*5 (D. Mass. Sept. 20, 2016)*. The regulation provides additional requirements that must be met by a loan servicer, such as Wells Fargo, to initiate a **_foreclosure_** **[\*26]** proceeding:

A third party loan servicer shall certify in writing the basis for asserting that the foreclosing party has the right to foreclose, including, but not limited to, certification of the chain of title and ownership of the note and **_mortgage_** from the date of the recording of the **_mortgage_** being foreclosed upon. The third party loan servicer shall provide such certification to the borrower with the notice of **_foreclosure_**, provided pursuant to *M.G.L. c. 244 § 14* and shall also include a copy of the note with all required endorsements.

*209 Mass. Code Regs. § 18.21*A(2)(c). On March 23, 2017, Wells Fargo sent Plaintiffs a certification pursuant to the above regulation, which stated: "A copy of the Note and any endorsements and/or allonges, if any, is attached hereto and incorporated herein." Complaint: Exhibit PP (209 C.M.R. 18.21A(2)(c) certification). However, the copy of the Note included therewith failed to show all of its endorsements; it contained only one undated endorsement, in blank, from Gateway. Dkt. no. 3-5, at p. 15. The record reveals that at least two other endorsements exist: one with the blank Gateway endorsement filled in to reflect a transfer to Wells Fargo (dkt. no. 3-2, at p. 17), and another with a subsequent endorsement from Wells Fargo in **[\*27]** blank (dkt. no. 3-4, at p. 25).

In the Court's view, given the plain text of the regulation, dismissal is warranted. Pursuant to common principles of statutory interpretation,[10] "'[e]very word in a statute should be given meaning,' and no word is considered superfluous." *Commonwealth v. Matos, 941 N.E.2d 645, 651 (Mass. App. Ct. 2011)* (quoting *Commonwealth v. Disler, 884 N.E.2d 500, 510 (Mass. 2008))*. In addition, statutory interpretation requires that words be accorded their ordinary meaning and approved usage. *Commonwealth v. Anderson, 651 N.E.2d 1237, 1240 (Mass. App. Ct. 1995)* (citing *Hashimi v. Kalil, 446 N.E.2d 1387, 1389 (Mass. 1983))*. Here, the regulation requires a servicer to provide the borrower "a copy of the note with all required endorsements." *209 Mass. Code Regs. § 18.21*A(2)(c) (emphasis added). Plaintiffs argue the regulation requires the servicer to provide a copy of the Note containing all endorsements. This interpretation ignores the legislature's chosen words.

---

[8] See supra § III.A.2 (discussing valid assignment to Bank of America).

[9] While not germane to the issue, the Court acknowledges that the Bank Defendants made the original Note available for inspection at the September 25, 2018 hearing.

---

[10] It is settled that a properly promulgated regulation carries with it the same force of law and deference to which statutes are entitled. **_Mass. Fed'n of Teachers, AFT, AFL-CIO v. Bd. of Educ., 767 N.E.2d 549, 557 (Mass. 2002)_**.

That the adjective "all" is followed by a second adjective, "required," connotes the legislature's intent to use both words for their respective meanings. Had the legislature wished to require a loan servicer to provide <u>all</u> endorsements or allonges, then the word "required" would be superfluous. "Required," therefore, must have been chosen to convey its ordinary meaning.[11] The regulation thus obligates a servicer to provide a copy of the Note with any endorsement "required" to **[*28]** establish the foreclosing party's right to foreclose. Such was done here. The 18.21A(2)(c) certification stated Bank of America owned the Note and included a copy of the Note with a blank endorsement from Gateway. Dkt. no. 3-5, at p. 15. This endorsement is sufficient to prove ownership and enforceability. <u>Urbon v. JP Morgan Chase Bank, N.A.</u>, 17-cv-11302-DJC, 2017 WL 6379555, at *2 (D. Mass. Nov. 30, 2017). A blank endorsement entitles the bearer to enforce the instrument. *Courtney, 922 F. Supp. 2d at 174*; see also *U.C.C. § 3-205(b)*.

This conclusion is consistent with <u>Urbon v. JP Morgan Chase Bank, N.A.</u> There, a plaintiff mortgagor alleged that the notice of sale he received was invalid because the servicer, Wells Fargo, failed to include "all endorsements and/or allonges" with the note pursuant to 209 C.M.R. 18.21A(2)(c). <u>Urbon</u>, 2017 WL 6379555, at *1. Wells Fargo had produced a copy of the note endorsed in blank, but the plaintiff alleged that a copy of the note with additional endorsements or allonges was not provided. <u>*Id.*</u> at *2. The plaintiff argued that such failure rendered the sale invalid. <u>Id.</u> The Court concluded that Wells Fargo had sufficiently shown itself to be the bearer of the Note, as it produced a copy of the note endorsed in blank and an affidavit **[*29]** proving possession. <u>Id.</u>

For the above reasons, Plaintiffs' pleaded facts do not possess enough heft to show they are entitled to relief. See *Ruiz Rivera, 521 F.3d at 84*. Moreover, the factual allegations do not demonstrate any extreme or egregious conduct respecting the 18.21A(2)(c) certification.[12]

### 4. *__Foreclosure__* Sale Price and Fair Market Value

Lastly, Plaintiffs allege that the Bank Defendants and Harmon violated chapter 93A when Bank of America purchased the Property at *__foreclosure__* sale for $522,000, an amount roughly $400,000 less than the fair market value of the Property. Complaint, at p. 11 ¶ 19; *id. at p. 38* ¶ 83. This allegation lacks factual support sufficient to maintain a 93A claim.

A party exercising a power of sale pursuant to a *__mortgage__* "is bound to exercise good faith and put forth reasonable diligence." *Sher v. S. Shore Nat'l Bank, 274 N.E.2d 792, 794 (Mass. 1971)* (citing *Chartrand, 5 N.E.2d at 423*). This is especially true where the mortgagee-seller becomes the buyer of the property at the *__foreclosure__* sale. Oyegbola v. DeSimone, No. 9346, 1996 WL 210689, at *3 (Mass. App. Div. Apr. 12, 1996) (citing *Union Mkt. Nat'l Bank of Watertown v. Derderian, 62 N.E.2d 661, 663 (Mass. 1945))*. Disparity between a *__foreclosure__* sale price and fair market value alone is not sufficient to invalidate a *__foreclosure__*. *Edry v. R.I. Hosp. Tr. Nat'l Bank (In re Edry)*, 201 B.R. 604, 606 (D. Mass. Bankr. 1996) (collecting cases); see also *Sher, 274 N.E.2d at 794* (stating that "mere inadequacy of price alone does not necessarily show bad faith or lack of due diligence"). Indeed, "[a] low **[*30]** price for the collateral does not by itself indicate bad faith or lack of diligence in disposition of *__mortgaged__* real estate." *Burke, 2000 WL 1273412, at *7* (quoting *Pemstein v. Stimpson, 630 N.E.2d 608, 611 (Mass. App. Ct. 1994))*. And while "disparity in price may be considered in connection with other allegations to support a finding of fraud or bad faith," *Sher, 274 N.E.2d at 794*, the circumstances here do not support Plaintiffs' allegation.

The complaint's attachments evidence reasonable care on the part of the Bank Defendants and Harmon in

---

[11] "Required" ordinary means "stipulated as necessary to be done, made, or provided." <u>Required</u>, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/required?utm_campaign=sd&utm_medium=serp&utm_source=jsonld (last visited Mar. 25, 2019). In other words, "requisite, necessary." <u>Required</u>, Oxford English Dictionary, http://www.oed.com/view/Entry/163259?rskey=1R5ThB&result=2&isAdvanced=false#eid (last visited Mar. 25, 2019).

---

[12] To the extent Plaintiffs allege that the actual 18.21A(2)(c) certification is misleading and deceptive because it states "[a] copy of the Note and any endorsements and/or allonges, if any, is attached hereto and incorporated herein," the claim still fails. See dkt. no. 40, at p. 8 (Pls.' opp. to motion to dismiss); dkt. no. 3-5, at p. 11 (18.21A(2)(c) cert.). The Bank Defendants concede that the copy of the Note provided with the certification contained only the Gateway endorsement in blank. However, the record reveals that the quoted misstatement was not unfair, egregious, or intended to deceive. For even if the most-recent version of the Note were provided with the certification (i.e., containing an endorsement in blank from Wells Fargo), Bank of America, as holder of the Note, would still be entitled to enforce the Note and foreclose.

noticing and conducting the ***foreclosure*** sale. First, as discussed earlier, the sale was properly noticed pursuant to *Mass. Gen. Laws ch. 244, § 14* by publishing a sale notice, in the form required by the statute, for the required duration. Second, despite Plaintiffs' allegations to the contrary, the Affidavit of Sale establishes that public proclamations adjourned the sale two times. Third, despite Plaintiffs' claims of no notice of adjournment, Harmon sent two letters to Plaintiffs to notify them of each sale adjournment. See dkt. no. 3-5, at p. 24 (Oct. 18, 2017 letter adjourning sale to Dec. 20, 2017); *id. at 29* (Oct. 23, 2017 letter adjourning sale to Jan. 3, 2018). Fourth, the sale was competitive, as other parties bid at the January 3, 2018 sale. Indeed, two other parties bid $525,000 and **[*31]** $522,000 respectively, but each failed to perform. *Id. at 62.* Thereafter, the Property was sold to Bank of America with its own bid of $522,000. Id. These facts undermine the allegation that the Bank Defendants and Harmon failed to use good faith and reasonable diligence in noticing and conducting the ***foreclosure*** sale. To the contrary, they demonstrate the opposite.

Plaintiffs' allegation that the fair market value of the Property is well above the total debt owed (i.e. over $800,000), based upon "comparables"—other listings and recent sales within the Southborough area[13]—is entirely unhelpful and largely irrelevant. It ignores the undisputed evidence of the condition of the Property: It is unfit for human habitation. Dkt. no. 3-3, at pp. 13, 44, 47. It requires hundreds of thousands of dollars in remedial work to meet structural and regulatory requirements. *Id. at 43-44, 46*; dkt. no. 3-5, at pp. 74-75, 77. It lacks a certificate of occupancy. Dkt. no. 3-3, at p. 44, 47; dkt. no. 3-4, at pp. 18-19; dkt. no. 3-5, at p. 74. And because ***foreclosure*** sales result in non-warranty purchases of properties "as is," it is no wonder why the Property did not sell for an amount Plaintiffs wished it had, and even assuming **[*32]** its market value was anywhere near the value of Plaintiffs' "comparables." *Seppala & Aho Constr. Co. v. Petersen, 367 N.E.2d 613, 620 (Mass. 1977)* ("It is a notorious fact that, when land is sold, by auction, under a power contained in a ***mortgage***, it seldom, if ever, brings a price which reaches its real value. If this is a hardship upon a mortgagor . . . it is owing to the contract which he has made, and which the mortgagee has a right to have carried out." (quoting *Austin v. Hatch, 34 N.E. 95, 95 (Mass. 1983)))*; *Tarvezian v. Debral Realty, No. 921437,*

*1996 WL 1249891, at *6 (Mass. Super. Ct. Sept. 27, 1996)* ("In a forced sale context there is, however, no obligation or expectation to obtain the fair market value of the ***foreclosure*** property." (citation omitted)); see also *Resolution Tr. Corp. v. Carr, 13 F.3d 425, 430 (1st Cir. 1993)* ("Absent evidence of bad faith or improper conduct, a mortgagee is permitted to buy the collateral at a ***foreclosure*** sale as 'cheaply' as it can . . . ." (quoting *Cambridge Sav. Bank v. Cronin, 194 N.E. 289, 290 (Mass. 1935)))*. Given this reality and the condition of the Property, there is no supported allegation of self-dealing, or unfair or deceptive conduct, for this claim to survive dismissal. The record "is devoid of any indication beyond [Plaintiffs'] sheer speculation that there was any prospective purchaser who would have bid more than the price paid by [Bank of America]." Oyegbola, 1996 WL 210689, at *4. For these reasons, the claim is dismissed.

C. Forbearance and Promissory Estoppel

Wells Fargo sent Plaintiffs **[*33]** a letter dated March 8, 2011 (the "March 8 Letter") stating: "At this time, [Wells Fargo] does not anticipate any further ***foreclosure*** action until the litigation issues involving this property have been resolved." Dkt. no. 3-3, at p. 20. Plaintiffs allege that the Bank Defendants breached this promise when they took legal actions related to ***foreclosure*** in May 2012 and August 2016. Assuming, as Plaintiffs argue, that the litigation was not resolved until December 2016 with the conclusion of appellate review, Plaintiffs nonetheless fail to state a claim for which relief may be granted.

Under Massachusetts law, a valid contract requires the following essential elements: (i) an offer; (ii) acceptance; and (iii) consideration. *Conte v. Bank of Am., N.A., 52 F. Supp. 3d 265, 268 (D. Mass. 2014)*. In order to prevail on a breach of contract theory, a plaintiff must demonstrate that: (i) the parties entered into a valid and binding agreement; (ii) the defendant breached the terms of the parties' binding agreement; and (iii) the plaintiff suffered damages as a result of the defendant's breach. *Brooks v. AIG SunAmerica Life Assur. Co., 480 F.3d 579, 586 (1st Cir. 2007)*; Shri Gayatri, LLC v. Days Inns Worldwide, Inc., 15-cv-40104-*TSH, 2018 WL 1542376, at *4 (D. Mass. Mar. 28, 2018)*. As Plaintiffs acknowledged at the August 24, 2018 hearing, they cannot maintain a breach of contract claim **[*34]** against the Bank Defendants on the basis of March 8 Letter, assuming the March 8 Letter contains a promise to forbear. I find the promise is not supported by consideration.

---

[13] Plaintiffs provided this explanation at the August 24, 2018 hearing.

The theory of promissory estoppel "permits recovery if (1) a promisor makes a promise which he should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, (2) the promise does induce such action or forbearance, and (3) injustice can be avoided only by enforcement of the promise. *Loranger Constr. Corp. v. E.F. Hauserman Co., 374 N.E.2d 306, 308 (Mass. App. Ct. 1978),* aff'd, *384 N.E.2d 176 (Mass. 1978).* To succeed on a promissory estoppel claim, a plaintiff must have reasonably relied to his detriment on an alleged promise. *Cullen v. E.H. Friedrich Co., 910 F. Supp. 815, 825 (D. Mass. 1995).* Because any reliance must be detrimental, damage must be shown. Id.

Plaintiffs contend the Bank Defendants first violated the promises made in the March 8 Letter when the Bank Defendants initiated ***foreclosure*** proceedings in May 2012. This allegation falls short. Wells Fargo filed an SCRA complaint against Plaintiffs in Massachusetts Land Court in May 2012, which resulted in a judgment concluding that Plaintiffs were not entitled to the benefits of the SCRA. Actions taken to comply with the SCRA are not in themselves part of the ***foreclosure*** process. [*35] *Beaton v. Land Court, 326 N.E.2d 302, 305 (Mass. 1975);* see also Cazales v. HSBC Bank, NA, 12-cv-10263-*RGS, 2012 WL 1969320, at *1 n.9 (D. Mass. June 1, 2012).* They "occur independently of the actual ***foreclosure*** itself and of any judicial proceedings determinative of the general validity of the ***foreclosure***." *HSBC Bank USA, N.A. v. Matt, 981 N.E.2d 710, 715 (Mass. 2013)* (quoting *Beaton, 326 N.E.2d at 305*).

Plaintiffs contend Bank Defendants next breached the promise contained in the March 8 letter when on August 31, 2016 Wells Fargo sent Plaintiffs a 90-day right to cure notice. This claim falls short as well. "A homeowner's right to cure a default is a preforeclosure undertaking that, when satisfied, eliminates the default and wholly precludes the initiation of ***foreclosure*** proceedings in the first instance . . . ." *Schumacher,* 5. N.E.3d at 890. Because the 90-day notice is not part of the ***foreclosure*** process, its delivery did not breach any alleged promise to refrain from initiating ***foreclosure*** proceedings.

Yet even assuming arguendo that nonjudicial ***foreclosure*** was initiated in August 2016 and that the promise to forbear was breached, Plaintiffs do not allege facts sufficient to demonstrate that the commencement of ***foreclosure***, just months prior to the resolution of their state court litigation, produced any actionable damages as a result of some detrimental reliance. [*36]

In fact, Plaintiffs averred at the September 25 hearing that they suffered no damages because of the August 2016 90-day notice. And while they also stated at the hearing that they would not have dedicated years' worth of costs and expenses to the state litigation and appeals process had they known that the Bank Defendants would pursue ***foreclosure*** at some future time, a belief that a bank would agree to never foreclose is unreasonable, and the Bank Defendants never promised to never foreclose.[14] Finally, Plaintiffs incurred these litigation costs well before August 2016; indeed, just four months later the appeals process was concluded. For these reasons, Plaintiffs' allegations of reasonable reliance on the March 8 Letter are conclusory, and fail to state a plausible claim under contract or quasi-contract principles. See *Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 570*.

### D. ***Foreclosure*** Deed and Limited Power of Attorney

Plaintiffs allege that the ***foreclosure*** deed is void because the Limited Power of Attorney ("POA") referenced therein does not authorize Wells Fargo to execute documents related to the ***Mortgage***. This argument does not accurately reflect the record. While the POA states that the document is "intended to cover Actions, [*37] as such term is defined herein, taken in the name of Bank of America, N.A., is [sic] the successor by merger to BAC Home Loans Servicing, LP, formerly known as Countrywide Home Loans Servicing LP,"[15] this language appears in a footnote and clearly is intended to indicate that the POA includes additional ***mortgages*** upon which Wells Fargo is authorized to act. In context, these two lines of text footnote the body of the POA, which is over three pages long, authorizes ten comprehensive "Actions"—including the institution of ***foreclosure*** proceedings and

---

[14] Moreover, the agreement to forbear is prefaced with the qualifying phrase "at this time." Dkt. no. 3-3, at p. 20 ("At this time, [Wells Fargo] does not anticipate any further ***foreclosure*** action until the litigation issues involving this property have been resolved."). As the Bank Defendants correctly note, even if the agreement constituted a promise, it was not an unqualified commitment, and the better reading of the letter indicates that Wells Fargo would reassess ***foreclosure*** options as litigation unfolded.

[15] The Limited Power of Attorney was recorded in the Registry of Deeds on April 6, 2017, as document number 34312, in Book 56943, page 349 et seq. While not appended to the complaint, it is an official public document that may be considered on a motion to dismiss. *Rivera, 575 F.3d at 15* (quoting *Alt. Energy, Inc., 267 F.3d at 33*).

issuance of **_foreclosure_** deeds (Actions 1 and 8, respectively)—and specifically authorizes Wells Fargo to service and take other legal action respecting Bank of America-owned **_mortgages_**. Plaintiffs' claim that the POA failed to authorize Wells Fargo to execute a **_foreclosure_** deed on behalf of Bank of America ignores the very text of the POA, and is without merit.

Yet even if the POA restricted Wells Fargo's authority, Plaintiffs lack standing to challenge the validity of the POA or the **_foreclosure_** deed.[16] Under Massachusetts law, mortgagors have 'standing only to challenge a **_mortgage_** assignment as invalid, ineffective, or void' and not 'to [*38] challenge shortcomings in an assignment that render it merely voidable at the election of one party.'" Maxwell v. MTGLQ Inv'rs, L.P., 18-cv-11885-_FDS, 2019 WL 438343, at *4 (D. Mass. Feb. 4, 2019)_ (quoting _Wilson v. HSBC Mortg. Servs., Inc., 744 F.3d 1, 9 (1st Cir. 2014))_. Here, Plaintiffs' claim respecting the POA is not predicated on an argument that Bank of America had no ownership interest in the **_Mortgage_**. See _Maxwell, 2019 WL 438343, at *4_ ("Here there are no plausible allegations that the assignors in question did not properly hold the **_mortgage_** . . . ."). The alleged defect in the POA, assuming <u>arguendo</u> there is one, amounts, at best, to a "procedural infirmity[y]" that "could only make the [POA] voidable, rather than void." <u>Id.</u> Under Massachusetts law, Plaintiffs therefore lack standing to challenge the POA and, as a result, the validity of the **_foreclosure_** deed. <u>See id.</u> (concluding mortgagor lacked standing to challenge a power of attorney that failed to reference the **_mortgaged_** property because the defect amounted to a voidable issue only).

E. <u>Violation of Chapter 176 Dasto First American</u>

The complaint includes a cause of action titled "MGL 176D as to First American Title." It alleges that First American "wrongfully denied [Plaintiffs'] title claim" and that "[t]he evidence . . . will show that [First American] did not [*39] offer any settlement when [its] liability under [Plaintiffs'] policy became clear." Complaint, at p. 26 ¶ 52; <u>see also</u> _id. at p. 27_ ¶ 57 (discussing lack of settlement offer). The Court will treat Plaintiffs' claim as alleging "unfair or deceptive acts or practices" with respect to First American's "claim settlement practices." See _Mass. Gen. Laws ch. 176D, § 3(9)_.

In its motion to dismiss, First American contends that

---

[16] Standing is a jurisdictional issue and may considered by the Court on its own initiative. _Spenlinhauer v. O'Donnell, 261 F.3d 113, 118 (1st Cir. 2001)_.

Plaintiffs lack standing to bring a claim pursuant to 176D because the statute does not contain a private right of action. Dkt. no. 21, at pp. 7-8. As an initial matter, it is true that an insured claimant's assertions under chapter 176D do not create a private cause of action. _Mass. Gen. Laws ch. 176D, §§ 6, 7_ (affording Commissioner of Insurance exclusive authority to enforce the chapter); _Ryan v. Fallon Cmty. Health Plan, Inc., 921 F. Supp. 34, 38 (D. Mass. 1996)_. However, the law is settled that an individual claiming an injury by virtue of an unfair claim settlement practice prohibited by chapter 176D is entitled to bring suit for such violation pursuant to the private right of action afforded to individuals in chapter 93A. _Mass. Gen. Laws ch. 93A, § 9_; _Hopkins. v. Liberty Mut. Ins. Co., 750 N.E.2d 943, 949-50 (Mass. 2001)_; _Silva v. Steadfast Ins. Co., 35 N.E.3d 401, 406 (Mass. App. Ct. 2015)_, <u>appeal denied</u>, _40 N.E.3d 553_ (tbl.) (Mass. Oct. 2, 2015) (stating 28 chapter 93A, _§ 9_ "has been amended to allow consumers to bring [] 93A claims alleging violations of [] 176D without regard to whether [*40] those violations constitute an unfair business practice under [] 93A, _§ 2_"); _Bolden v. O'Connor Café of Worcester, Inc., 734 N.E.2d 726, 730 n.8 (Mass. App. Ct. 2000)_. This is because chapter 93A _§ 2_ "incorporates [chapter 176D]," and an insurer that has violated a provision of the latter "has [also] violated the prohibition in [93A _§ 2_] against the commission of unfair or deceptive acts or practices." _Hopkins, 750 N.E.2d at 950_.[17]

---

[17] First American relies on _M. De Matteo Construction Co. v. Century Indemnity Co., 182 F. Supp. 2d 146 (D. Mass. 2011)_ in support of its proposition that Plaintiffs lack standing to sue for an alleged violation of chapter 176D. _Section 9(1)_ of chapter 93A expressly allows a _§ 9_ claimant to bring an action against an insurer for a violation with respect to unfair or deceptive acts or practices with respect to claim settlement practices under _§ 3(9)_ of chapter 176D. _Id. at 160_; see also _Caira v. Zurich Am. Ins. Co., 76 N.E.3d 1002, 1009 (Mass. App. Ct. 2017)_ ("Any person whose rights have been affected by an insurance practice that violates [chapter] 176D, _§ 3(9)_, may sue under [chapter] 93A."). In DeMatteo, Plaintiff was not an individual claimant, but a business engaged in commerce. <u>Id.</u> In that case, this Court articulated the differences between individual and business claimants:

> _Sections 9_ and _11_ of chapter 93A provide private causes of action for violations of Massachusetts General Laws chapter 93A, _section 2_, but for different classes of plaintiffs. A plaintiff under _section 9_ is defined as "[a]ny person, other than a person entitled to bring action under section eleven of this chapter." _Mass. Gen. Laws ch. 93A, § 9(1)_. A plaintiff under _section 11_ is defined as "[a]ny person who engages in the conduct of any trade or

Notwithstanding the above, Plaintiffs' claim against First American fails for a number of reasons. First, chapter 93A *§ 9(3)* directs a complainant to mail "a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury [**41]** suffered" at least thirty days prior to the filing of any action for relief under chapter 93A. *Mass. Gen. L. ch. 93A, § 9(3).* Plaintiffs fail to allege or otherwise show that they mailed to First American a 93A demand letter thirty days prior to bringing suit. "Such a failure is fatal on a motion to dismiss." *McMahon v. Dig. Equip. Corp., 944 F. Supp. 70, 77 (D. Mass. 1996)* (citing *City of Boston v. Aetna Life Ins. Co., 506 N.E.2d 106, 109 (Mass. 1987)).*

Second, putting aside the failure to satisfy *Mass. Gen. Laws ch. 93A, § 9*, Plaintiffs do not allege how First American's treatment of their December 2009 claim submission was unfair or deceptive in any respect. The record reveals that in December 2009, Plaintiffs submitted a claim to First American alleging that "title is unmarketable; a mechanics' lien exists against the Property; the **_house_** is not built to code; there is no Certificate of Occupancy; there was a falsified land survey; zoning violations, Order of Conditions violations, and wetland violations." Dkt. no. 3-5, at p. 80; dkt. no. 21-1 (Plaintiffs' claim submission).[18] Appended to the complaint is First American's February 2010 response to

---

commerce." Id. *§ 11*. All that is required for a plaintiff to fall within the ambit of *section 11* is some transaction in a business context. *Int'l Fid. Ins. Co. v. Wilson, 387 Mass. 841, 852, 443 N.E.2d 1308 (1983)*. [Plaintiff] is therefore a *section 11* plaintiff, not a *section 9* plaintiff.

*DeMatteo, 182 F. Supp. 2d at 160 n.9.* Because the plaintiff in DeMatteo was not a *§ 9* claimant, it was thus not able to take advantage of the private right of action for individual claimants provided in chapter 93A *§ 9*. See id. Here, Plaintiffs are individuals "other than [people] entitled to bring action under section eleven of [chapter 93A] . . . whose rights are affected by another person [allegedly] violating the provisions of clause (9) of section three of chapter one hundred and seventy-six D" and thus may be considered *§ 9* individual claimants. *Mass. Gen. Laws ch. 93A, § 9(1)*. Plaintiffs therefore may avail themselves of the private right of action afforded to *§ 9* plaintiffs to bring private claims for unfair or deceptive acts or practices in the business of insurance in violation of chapter 176D *§ 3*.

[18] While Plaintiffs' December 9, 2009 insurance claim submission is not appended in full to Plaintiffs' complaint, documents referred to in the complaint and central to a plaintiff's claim may be considered on a motion to dismiss. *Rivera, 575 F.3d at 15; Alt. Energy, Inc., 267 F.3d at 33*.

Plaintiffs' claim submission, which does not demonstrate any unfair or deceptive act on the part of First American. Dkt. no. 3-5, at pp. 80-84 (containing letter response dated February 9, 2010). The response explains over the course [**42]** of three pages how the claim submission does not allege an actual issue respecting title to the Property, nor any actionable claim for which the title policy provides coverage. *Id. at pp. 80-82*. In short, Plaintiffs' claim against First American is conclusory, lacks facts sufficient to render the claim plausible, and is subject to dismissal. *Iqbal, 556 U.S. at 678* ("A pleading that offers 'labels and conclusions' . . . will not do." (quoting *Twombly, 550 U.S. at 555*)).

Third, to the extent the claim arises under chapter 176D—and even if the Court considers the claim as one under chapter 93A—such claim is time-barred.[19] "Actions arising on account of violations of any law intended for the protection of consumers, including . . . chapter ninety-three A [and] . . . chapter one hundred and seventy-six D . . . whether for damages, penalties or other relief . . . shall be commenced only within four years next after the cause of action accrues." *Mass. Gen. Laws ch. 260, § 5A* (setting forth statute of limitations for consumer protection actions). Here, the best reading of Plaintiffs' allegations against First American shows that the complained-of conduct took place in February 2010, over eight years ago, when First American responded to and resolved Plaintiffs' December 2009 claim [**43]** submission. See Complaint, at p. 26 ¶ 52; *id. at p. 27* ¶ 57; see also dkt. no. 3-5 at pp. 80-82 (February 9, 2010 letter to Plaintiffs in response to claim submission); dkt. no. 21-1 (Plaintiffs' claim submission). As such, any cause of action relating to the February 2010 denial of Plaintiffs' claim submission is barred by the applicable statute of limitations. *Mass. Gen. Laws ch. 260, § 5A*. Such claim would also be time-barred to the extent it arises under common law tort or contract principles. See *Mass. Gen. Laws ch. 260, §§ 2, 2A*.

---

[19] It is established that "[g]ranting a motion to dismiss based on a limitations defense is entirely appropriate when the pleader's allegations leave no doubt that an asserted claim is time-barred." *LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 509 (1st Cir. 1998); see also Aldahonda-Rivera v. Parke Davis & Co., 882 F.2d 590, 592 (1st Cir. 1989)* (stating "when a defendant raises an affirmative defense that is obvious on the face of plaintiff's pleadings, and the court makes its ruling based only on those pleadings, the motion is treated as a *Rule 12(b)(6)* motion to dismiss.").

For the reasons set forth above, Plaintiffs' claims against First American are dismissed. Even if Plaintiffs were able to plead a plausible claim against First American, they would have had to do so years ago. See *Mass. Gen. Laws ch. 260, §§ 2, 5A*.

F. Violation of Truth in Lending Act

The Truth in Lending Act ("TILA"), originally Title I of the Consumer Credit Protection Act, was enacted by Congress to "safeguard the consumer in connection with the utilization of credit by requiring full disclosure of the terms and conditions of finance charges in credit transactions or in offers to extend credit." Truth in Lending Act of 1968, *Pub. L. No. 90-321, 82 Stat. 146* (codified as amended in scattered sections of 15 U.S.C.). "In general, TILA requires creditors to make certain disclosures **[*44]** to borrowers in connection with the provision of credit." Lariviere v. Bank of N.Y. as Tr., 9-cv-515, *2010 WL 2399583, at *5 (D. Me. May 7, 2010)* (citing *Sullivan v. Greenwood Credit Union, 520 F.3d 70, 73 (1st Cir. 2008))*. Here, Plaintiffs allege that the Bank Defendants' *foreclosure* conduct violated TILA. The complaint is not well-pleaded on this issue. The following presents the Court's best efforts to glean Plaintiffs' allegations respecting TILA.

First, Plaintiffs claim they were not given notice that MERS assigned the *Mortgage* to Bank of America. TILA provides that "no later than 30 days after the date on which a *mortgage* loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer." *15 U.S.C. § 1641(g)*. Yet TILA further requires that any action against an assignee for violation of this provision, and any other action for damages, must be brought "within one year from the date of the occurrence of the violation." *15 U.S.C. § 1640(e)*; see also *Sykes v. RBS Citizens, N.A., 2 F. Supp. 3d 128, 142 (D.N.H. 2014)*; *Rodrigues v. Members Mortg. Co., 323 F. Supp. 2d 202, 209-10 (D. Mass. 2004)*. In the alternative, any action for rescission based on improper material disclosure must be brought within three years of the date of the transaction at issue. *15 U.S.C. § 1635(f)*; *Rodrigues, 323 F. Supp. 2d at 209-10*. Here, the *Mortgage* was assigned to Bank of America on April 2, 2011, and the assignment was recorded **[*45]** on August 1, 2011. Dkt. no. 23-2, at p. 2. The statute of limitations thus precludes recovery on this allegation.[20]

Second, the Plaintiffs claim that Bank of America misrepresented that they were the proper owners of the *Mortgage* at the time *foreclosure* proceedings were initiated. They contend that Wells Fargo owned the *mortgage* loan and therefore that Bank of America did not have authority to proceed with *foreclosure*. There is no reason to belabor the analysis respecting Bank of America's lawful Assignment of *Mortgage*. It initiated *foreclosure* proceedings against the Property five years after it had acquired the *Mortgage* from MERS, the nominee of Gateway. Although the statute of limitations also bars this claim, the record demonstrates that is it implausible. Simply, the complaint does not contain a "factual predicate concrete enough to warrant further proceedings." *DM Research, Inc., 170 F.3d at 55*.

Third, Plaintiffs allege that the Bank Defendants failed in their responsibility to mitigate losses. While unclear how this allegation embodies an actionable claim under TILA, the analysis herein[21] demonstrates that the price Bank of America paid for the Property through *foreclosure* does not evince bad faith, lack **[*46]** of reasonable care, or a failure on part of the Bank Defendants or Harmon to mitigate loss. As such, this allegation is also implausible.

Fourth, Plaintiffs allege they were owed a duty to be notified that their *mortgage* loan closed without a certificate of occupancy.[22] Complaint, at pp. 4-5 5. To support this allegation Plaintiffs offer a document they received as part of their loan origination package, which states that a certificate of occupancy was required at loan closing. Dkt. no. 3-2, at p. 19. However, the actual *language* protects the *mortgage* lender, giving it the option to decline to fund if a certificate of occupancy was not produced. For instance, the document states that the conditions of closing "must be met to our satisfaction": "our" refers to the lender. Id. It further provides: "If [pre-closing] conditions are not received

---

[20] Here, the pleadings leave no doubt that the allegations are time-barred. See supra note 19 and accompanying text (citing

*Aldahonda-Rivera, 882 F.2d at 592*; *LaChapelle, 142 F.3d at 509*).

[21] See supra § III.A.4.

[22] The record is unclear as to whether Plaintiffs' *mortgage* loan actually closed without a certificate of occupancy. Attached to the complaint is an unsigned letter dated March 24, 2009 and seemingly written by Plaintiffs' prior counsel. Dkt. no. 3-5, at p. 74. Within this letter Plaintiffs' attorney states that the loan closed with a "temporary certificate of occupancy." Id. Nevertheless, whether or not the loan closed without a certificate of occupancy does not, in the Court's view, give rise to a plausible claim for relief for the reasons herein.

within the specified time frame, or if the conditions do not meet our underwriting guidelines[,] we reserve the right to postpone or cancel settlement," and that the "[f]ailure to supply satisfactory information/documentation required [at closing] may result in the cancellation of your loan settlement." Id. Such "information/documentation" [*47] included a certificate of occupancy. Id. Contrary to Plaintiffs' assertions, this language does not preclude the lender from closing a loan absent a certificate of occupancy, nor does it create a duty on the part of the lender to determine whether or not there was a certificate of occupancy at closing and to so notify Plaintiffs.

For these reasons, Plaintiffs' TILA claims, as this Court understands them, do not present "a factual predicate concrete enough to warrant further proceedings," and thus are subject to dismissal. DM Research, Inc., 170 F.3d at 55 (emphasis in original).

### G. Violation of the Fair Debt Collection Practices Act

Plaintiffs claim the Bank Defendants and Harmon violated the Fair Debt Collection Practices Act ("FDCPA") in several instances. Specifically, they allege that Bank of America was not entitled to commence and maintain the May 2012 SCRA action against Plaintiffs because Wells Fargo held the **_Mortgage_** and Note (and also serviced the loan). They claim the Assignment of **_Mortgage_** from MERS to Bank of America was "bogus," that Wells Fargo was missing from the chain of title/assignments, and that for these reasons the Bank Defendants' **_foreclosure_** proceedings violated the FDCPA.

To make out a plausible [*48] violation of the FDCPA, Plaintiffs must allege that the Defendants attempted to collect a debt using harassing or abusive means. 15 U.S.C. § 1692(d). Here, Plaintiffs' claims are largely unsupported and are subject to dismissal. For reasons addressed earlier, Plaintiffs have failed to state a plausible claim with respect to Bank of America's authority to foreclose, the Assignment of **_Mortgage_** from MERS to Bank of America, and Wells Fargo's participation as loan servicer.[23] Additionally, "[i]t is not an unfair practice under the FDCPA to take or threaten to take nonjudicial action to effect dispossession in connection with the enforcement of a valid security interest." Lippincott v. JP Morgan Chase Bank, N.A., 14-

cv-14400-GAO, 2015 WL 4380584, at *1 (D. Mass. July 16, 2015) (citing 15 U.S.C. § 1692f(6); Speleos v. BAC Home Loans Servicing, L.P., 824 F. Supp. 2d 226, 232-33 (D. Mass. 2011); Beadle v. Haughey, 04-cv-272-SM, 2005 WL 300060, at *3 (D.N.H. Feb. 9, 2005) ("Nearly every court that has addressed the question has held that foreclosing on a **_mortgage_** is not debt collection activity for purposes of the FDCPA.")). Moreover, while Plaintiffs' allege that the Bank Defendants committed fraud by unlawfully attempting to enforce the **_Mortgage_** and Note, this allegation is conclusory, implausible for the reasons stated herein, and fails to "state with particularity the circumstances constituting fraud." See Fed. R. Civ. P. 9(b) [*49] . For these reasons, Plaintiffs' first allegation fails.

Second, Plaintiffs allege that a statute of limitations barred the Bank Defendants' **_foreclosure_** proceedings, and therefore the Bank Defendants' efforts to foreclose violated the FDCPA. They argue that under Massachusetts law the statute of limitations for a **_foreclosure_** remedy begins to run once a loan is accelerated and payable in full. Complaint, at pp. 34-35; see also dkt. no. 3-3, at p. 125 (Plaintiffs' February 25, 2017 letter to Harmon). In other words, Plaintiffs claim that the **_Mortgage_** "is obsolete and [the] **_foreclosure_** is void." Dkt. no. 3-3, at p. 125. The so-called Obsolete **_Mortgage_** Statute provides in relevant part:

> A power of sale in any **_mortgage_** of real estate shall not be exercised and an entry shall not be made nor possession taken nor proceeding begun for **_foreclosure_** of any such **_mortgage_** after the expiration of, in the case of a **_mortgage_** in which no term of the **_mortgage_** is stated, 35 years from the recording of the **_mortgage_** or, in the case of a **_mortgage_** in which the term or maturity date of the **_mortgage_** is stated, 5 years from the expiration of the term or from the maturity date, unless an extension of the [*50] **_mortgage_**, or an acknowledgment or affidavit that the question of **_mortgage_** is not satisfied, is recorded before the expiration of such period.

Mass. Gen. Laws ch. 260, § 33. The First Circuit has recently held that § 33 in no way suggests that the acceleration of a note impacts the limitations period for a mortgagee's right to foreclose. Harry v. Countrywide Home Loans, Inc., 902 F.3d 16, 19 (1st Cir. 2018); see also Junior v. Wells Fargo Bank, N.A., 17-cv-10460-RGS, 2017 WL 1199768, at *1 (D. Mass. Mar. 30, 2017) (noting that plaintiff's argument that acceleration of the note also accelerated the maturity date of a **_mortgage_**

---

[23] See supra § III.A.2 (discussing valid assignment to Bank of America and Wells Fargo's lack of ownership interest in the **_Mortgage_**).

had been "squarely rejected" by three other judges of this Court, and holding the same). This Court is bound by the First Circuit's decision in <u>Countrywide</u>, and finds that the acceleration of the Note did not render the ***Mortgage*** obsolete. *Countrywide, 902 F.3d at 19*. For these reasons, Plaintiffs' claim is not plausible and thus is subject to dismissal. *Twombly, 550 U.S. at 570*.

IV. MOTION FOR PRELIMINARY INJUNCTION

On a motion for a preliminary injunction, the burden rests with the movant to prove that he "is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)* (Roberts, C.J.); see also *Fryzel v. **Mortg.** Elec. Registration Sys., Inc., 719 F.3d 40, 44 (1st Cir. 2013)*. "The sine qua non of this four-party **[*51]** inquiry is likelihood of success on the merits; if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." *NewComm Wireless Servs., Inc. v. Sprint Com, Inc., 287 F.3d 1, 9 (1st Cir. 2002)* (citing *Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993))*. For the reasons stated herein, Plaintiffs' complaint is subject to dismissal. As a result, Plaintiffs cannot demonstrate a likelihood of success on the merits of their claims and therefore are not entitled to injunctive relief. <u>See Hicks v. Ryan</u>, No. 13-cv-10709-*RGS, 2013 WL 1992679, at *15 (D. Mass. May 9, 2013)* (denying request for injunctive relief where movant failed to demonstrate a likelihood of success on the merits because his claims were subject to dismissal). Their motion (dkt. no. 4) thus is denied.

**<u>CONCLUSION</u>**

For the foregoing reasons, First American's motion to dismiss (dkt. no. 19) is GRANTED; Harmon's motion to dismiss (dkt. no. 12) is GRANTED; and the Bank Defendants' motion to dismiss (dkt. no. 22) is GRANTED. Having determined that Plaintiffs' complaint is subject to dismissal in its entirety, their motion for injunctive relief (dkt. no. 4) is DENIED.

So concludes this matter.

/s/ David H. Hennessy

David H. Hennessy

UNITED STATES MAGISTRATE JUDGE

End of Document

MICHAEL HAGOPIAN

2014 WL 12577145
Only the Westlaw citation is currently available.
United States District Court, C.D. California.

Lidia ALDANA

v.

BANK OF AMERICA, N.A., et al.

Case No. CV 14-1646-GHK (FFMx)
|
Filed 05/02/2014

**Attorneys and Law Firms**

Randal A. Whitecotton, Community Law Center, Santa Ana, CA, for Lidia Aldana.

David C. Powell, Molly A. Zapala, Stella Yoona Kim, Sara Janett Quinto, Shaudee Navid, Reed Smith LLP, San Francisco, CA, for Bank of America, N.A., et al.

**Proceedings: (In Chambers) Order re:** (1) Defendant Everbank's Motion to Dismiss (Dkt. 9); (2) Defendant Bank of America's Motion to Dismiss (Dkt. 11)

GEORGE H. KING, CHIEF U.S. DISTRICT JUDGE

**\*1** This matter is before us on Defendants Everbank's and Bank of America, N.A.'s Motions to Dismiss. We have considered the papers filed in support of and in opposition to the Motions and deem them appropriate for resolution without oral argument. L.R. 7-15. As the Parties are familiar with the facts, we will repeat them only as necessary. Accordingly, we rule as follows:

**I. Background**

On or about October 16, 2009, Lilian Dominguez ("Dominguez") obtained a $225,091 loan secured by a Deed of Trust ("DOT") on real property located at 15515 Hornell Street, Whittier, California 90604 (the "Property"). (Compl. ¶ 17.) The DOT named Dominguez as the borrower, Home Savings America as the lender, Western Resources Title as the trustee, and Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary. (*Id.* Ex. B.) On or about March 15, 2012, Dominguez transferred title to the Property to Lidia Aldana ("Plaintiff") through a grant deed. (*Id.* ¶ 16, Ex. A.) On March 20, 2012, MERS executed an Assignment of Deed of Trust transferring all beneficial interest under the DOT to

Bank of America, N.A. ("BANA"), which was recorded on April 5, 2012. (*Id.* ¶ 33, Ex. F.) On June 12, 2012, Plaintiff's grant deed was recorded. (*Id.* Ex. A.) On April 24, 2013, BANA executed an Assignment of Deed of Trust transferring all beneficial interest under the DOT to Everbank, which was recorded on May 23, 2013. (*Id.* ¶ 35, Ex. H.)

Plaintiff alleges that she made payments on Dominguez's loan until February 2013, when BANA informed her that her loan was transferred to another servicer, Everhome. [1] (*Id.* ¶ 20.) Plaintiff alleges she was "confused" about the transfer because she never received notice from BANA. (*Id.* ¶ 21.) Nonetheless, she alleges that she began making payments to Everbank but that, two months later, Everbank returned the first payment back to her stating that the loan was in default and that it would not accept any payments from her unless the loan was paid in full. (*Id.*) Plaintiff contacted Everbank to request information about a loan modification. (*Id.* ¶ 23.) In June 2013, Plaintiff submitted loan modification documents to Everbank. (*Id.* ¶ 24.)

On June 25, 2013, Everbank executed a Substitution of Trustee, substituting Sage Point Lender Services, LLC ("Sage Point") as trustee under the DOT. (*Id.* Ex. J.) On July 1, 2013, Sage Point recorded a Notice of Default ("NOD"), which stated that Dominguez was in default on her loan in the amount of $12,760.23. (*Id.* Ex. C.) Plaintiff alleges that she called Everbank that day to ask why it was foreclosing on her home when she was in the process of applying for a loan modification. (*Id.* ¶ 25.) Everbank advised her that it would offer her a reinstatement agreement and that she should fax over a new loan modification package. (*Id.*) Plaintiff submitted the completed package and continued to send Everbank all pertinent documents until she received a Notice of Trustee Sale on November 8, 2013. (*Id.* ¶ 26.) On November 8, 2013, Sage Point recorded a Notice of Trustee's Sale, noticing a foreclosure sale of the Property for December 16, 2013. (*Id.* ¶ 26, Ex. D.) Plaintiff again contacted Everbank. (*Id.* ¶ 27.) She alleges that an Everbank agent told her that the sale would be postponed, and it would give her the phone number to a foreclosure attorney. (*Id.*) On December 12, 2013, Everbank sent Dominguez a letter stating that her loan modification application was complete and explained the loan modification review process. (*Id.* Ex. E.) On January 23, 2014, the Property was sold at public auction to a third-party purchaser. (*Id.* ¶ 28.)

**\*2** Plaintiff does not dispute that the aforementioned documents were recorded. Instead, she alleges that the

foreclosure is void because Defendants did not actually own Dominguez's loan and therefore had no right to foreclose. In particular, Plaintiff alleges that Defendants did not have an interest in the loan because Home Savings of America attempted to securitize Dominguez's loan, but failed to do so properly. (*Id.* ¶¶ 31-33.) Plaintiff alleges that the subsequent assignments to BANA and Everbank were ineffective because the trust could not have accepted the DOT after the closing date of a pooling and servicing agreement ("PSA"). (*Id.* ¶¶ 33-35.) Plaintiff also alleges that the transfer to Everbank, a Florida corporation, was void because Everbank did not have authority to conduct business in California. (*Id.*¶¶ 35, 42.)

On February 4, 2014, Plaintiff filed this action in California Superior Court against Defendants BANA, Everbank, Ginnie Mae, and Sage Point. [2] Plaintiff dismissed Ginnie Mae without prejudice on February 6, 2014. (NOR ¶ 5, Ex. B.) On March 6, 2014, Defendants removed this action to this Court. Based on the foregoing allegations, Plaintiff's Complaint asserts the following claims: (1) violation of RESPA, 12 U.S.C. § 2605; (2) failure to provide adequate notice of loan transfer in violation of California Civil Code § 2937; (3) violation of Homeowners Bill of Rights ("HOBR"); (4) intentional misrepresentation; (5) quiet title; (6) wrongful foreclosure; (7) cancellation of instruments; (8) declaratory relief; and (9) violation of California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.* Defendants BANA and Everbank now move to dismiss Plaintiff's Complaint in its entirety.

## II. Legal Standard

In order to survive a motion to dismiss, a complaint must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It must contain factual allegations sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570. In considering a motion to dismiss, we must accept the allegations of the complaint as true and construe them in the light most favorable to the plaintiff. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). We need not accept as true, however, legal conclusions "cast in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). [3]

## III. Discussion

### A. Claim One: RESPA Violation

Plaintiff asserts that Defendants violated RESPA § 2605(b) by failing to provide her with written notice of the transfer of the servicing of her loan. (Compl. ¶ 48.) Defendants argue that Plaintiff's RESPA claim should be dismissed because she was not the borrower, and thus lacks standing to assert a RESPA claim. Section 2605(b) provides that "[e]ach servicer of any federally related mortgage loan shall notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other person." 12 U.S.C. § 2605(b)(1). "[A] defendant's liability in a civil action under RESPA is limited to borrowers." *Correa v. BAC Home Loan Servicing, LP*, 853 F. Supp. 3d 1203, 1207 (M.D. Fla. 2012). Here, Dominguez was the borrower, not Plaintiff, and Plaintiff did not assume Dominguez's obligations under the loan. The only interest Plaintiff acquired through her grant deed was legal title to the property. Her argument that she was a third-party beneficiary to the loan is without merit. Plaintiff has not alleged facts to establish that she was an intended third-party beneficiary of the DOT, nor could she given that she only appeared in the picture over three years after the DOT was executed. Accordingly, Plaintiff lacks standing to bring a RESPA claim because she was not entitled to notice pursuant to RESPA. *See id.* at 2307 (holding that non-borrower plaintiff who neither signed the note or the mortgage lacked standing to bring a RESPA claim); *Stolz v. OneWest Bank*, 2012 WL 135424, at *5 (D. Or. Jan. 13, 2012) (same); *Mashburn v. Wells Fargo Bank, N.A.*, 2011 WL 2940363, at *1-2 (W.D. Wash. July 19, 2011) (same). Plaintiff's RESPA claim is **DISMISSED**. Because there is no evidence that Plaintiff made a strategic decision to sue in her own name or acted in bad faith in doing so, we **GRANT leave to amend** to allow Dominguez, the real party in interest, to be substituted in the current action. *See* Fed. Rule Civ. P. 17(a)(3) ("The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action."); *Goodman v. United States*, 298 F.3d 1048, 1053 (9th Cir. 2002) ("This sentence in Rule 17(a) 'is designed to avoid forfeiture and injustice when an understandable mistake has been made in selecting the party in whose name the action should be brought.' ") (quoting 6A Wright, Miller & Kane, Federal Practice and Procedure: § 1555, at 412 (2d ed. 1990)).

**B. Claim Two: Violation of California Civil Code § 2937**

**\*3** Plaintiff alleges that Defendants violated California Civil Code section 2937 by failing to give her written notice of the transfer of the servicing of her loan. California Civil Code section 2397 provides, in relevant part, that "[a]ny person transferring the servicing of indebtedness ... to a different servicing agent and any person assuming from another responsibility for servicing the instrument evidencing indebtedness, shall give written notice to the borrower or subsequent obligor before the borrower or subsequent obligor becomes obligated to make payments to a new servicing agent." Cal. Civ. Code § 2937(b). This provision specifically applies to "borrowers" and "subsequent obligors." Here, Plaintiff is not a borrower. Nor is she a subsequent obligor because she did not formally assume Dominguez's obligations under the DOT. Thus, as with her RESPA claim, Plaintiff lacks standing to assert a claim under section 2937. Accordingly, Plaintiff's section 2937 claim is **DISMISSED with leave to amend** to allow Dominguez, the real party in interest, to be substituted in the current action.

**C. Claim Three: Violation of HOBR**

Plaintiff alleges that Defendants violated the HOBR by: (1) "failing to provide Plaintiff with other foreclosure prevention alternatives," (2) "failing to provide Plaintiff with a single point of contact," (3) "failing to provide Plaintiff with a NPV," (3) "failing to provide Plaintiff with verification of accurate and complete documents regarding Defendants['] purported ownership, transfers, or assignments of subject property," (4) "failing to provide Plaintiff with proper and sufficient legal notice for [the] same," and (5) engaging in "dual tracking." (Compl. ¶¶ 59-60.)

BANA asserts that Plaintiff's HOBR claim was improperly asserted against it because Everbank, and not BANA, was the servicer of Plaintiff's loan when she allegedly submitted a loan modification application. In her Opposition, Plaintiff does not dispute that BANA was not involved in the loan modification process. Accordingly, Plaintiff's HOBR claim is **DISMISSED with prejudice** as to BANA.

Everbank argues that Plaintiff's HOBR claim should be dismissed because: (1) she lacks standing to assert a claim under the HOBR because she was not a "borrower," and (2) her HOBR claim is insufficiently pleaded because she does not specify which sections of the HOBR Everbank allegedly violated. In her Opposition, Plaintiff contends that Everbank violated California Civil Code section 2923.7(a), which codifies the "single point of contact" rule, and section 2923.6(c), which codifies the "dual tracking" rule. Both of these provisions apply only to "borrowers." *See* Cal. Civ. Code § 2923.7(a) ("Upon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact."); Cal. Civ. Code § 2923.6(c) ("If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending...."). This is consistent with the purpose of the HOBR, "to ensure that ... borrowers are considered for, and have a meaningful opportunity to obtain, available loss mitigation options, if any, offered by or through the borrower's mortgage servicer, such as loan modifications or other alternatives to foreclosure." Cal. Civ. Code § 2923.4(a). Accordingly, because Plaintiff was not the borrower under the DOT, her HOBR claim against Everbank is **DISMISSED**. Plaintiff is **GRANTED leave to amend** to substitute Dominguez and to plausibly plead a specific violation of the HOBR against Everbank.

**D. Claim Four: Intentional Misrepresentation**

**\*4** To state a claim for intentional misrepresentation, Plaintiff must plead "(1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage." *Alliance Mortg. Co. v. Rothwell*, 10 Cal. 4th 1226, 1239 (1995). Because it is a fraud-based claim, it is subject to Rule 9(b)'s heightened pleading requirement. *See Neilson v. Union Bank of Cal.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003). Rule 9(b) requires Plaintiff to state with particularity "specific facts setting forth the circumstances which constitute the fraud." *Whalen v. BDR Termea*, 2011 WL 6182329, at \*9 (N.D. Cal. Dec. 13, 2011). This means the Plaintiff must allege the "who, what, when, where and how" supporting her intentional misrepresentation claim. *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

In her Complaint, Plaintiff alleges that: (1) Everbank misrepresented "that it was the owner and Holder of the Note ... because it knew its corporate status in the State of California was surrendered and was no longer doing business

in California as of October 31, 1977," and (2) Everbank "concealed the trust and also suppressed material facts of who the true owner and Holder of the Note was." (Compl. ¶¶ 63-65.) In Plaintiff's Opposition, she fails to oppose dismissal of her claim based on these allegations. Accordingly, to the extent Plaintiff's intentional misrepresentation claim is based on these allegations, it is **DISMISSED with prejudice**.

In her Opposition, however, Plaintiff argues, for the first time, that the basis of her misrepresentation claim is that Dominguez actually had two properties that were financed by BANA, and "BANA misrepresented the fact that they were applying the payments to the wrong account." (Opp'n 4, 20.) This allegation cannot state a claim for intentional misrepresentation because it was improperly alleged in her Opposition and is not based on any facts contained in the Complaint. In any event, even in the Opposition, Plaintiff fails to state that BANA acted intentionally, that Plaintiff detrimentally relied on BANA's alleged misrepresentation, or that the alleged misrepresentation caused her damages. Plaintiff's one sentence allegation is also insufficient to meet the heightened pleading requirements of Rule 9(b), given that she does not sufficiently allege what BANA did, who misapplied the funds, or when it occurred. Accordingly, to the extent Plaintiff's claim is based on this purported misrepresentation, it is **DISMISSED with leave to amend**. It is also unclear from Plaintiff's Complaint and Opposition whether BANA made the alleged misrepresentation to her or to Dominguez. To the extent the misrepresentation was actually made to Dominguez, Plaintiff is **GRANTED leave to amend** to substitute Dominguez in the action.

**E. Claim Five: Quiet Title**

To state a claim for quiet title, a plaintiff must set forth the following in a verified complaint: (1) a legal description and street address of the subject real property; (2) plaintiff's title as to which a determination is sought and the basis of the title; (3) the adverse claims to plaintiff's title against which a determination is sought; (4) the date as of which the determination is sought; and (5) a prayer for the determination of plaintiff's title against the adverse claims. *Cal. Civ. Proc. Code § 761.020*. Here, Plaintiff seeks a "declaration that the title to the subject property is vested in Plaintiff alone and that Defendants ... have no interest, sta[k]e, or title in the subject property." (Compl. ¶ 73.) The claim is inappropriately asserted against Defendants because none of them has an adverse claim to the title, as the Property was sold to a third-party purchaser at the trustee's sale. *See, e.g., Monreal v. GMAC Mortg., LLC, 948 F. Supp. 2d 1069, 1079 (S.D. Cal.*

*2013)* (dismissing quiet title claim because plaintiff failed to allege that defendants had any adverse interests to the property's title given that property was sold to a third party at a trustee sale); *West v. JPMorgan Chase Bank, N.A., 214 Cal. App. 4th 780, 802-03 (2013)* (dismissing quiet title claim against creditor because the action was brought after the trustee's sale and the creditor no longer held title to the property). Accordingly, Plaintiff's claim for quiet title is **DISMISSED with prejudice**.

**F. Claim Six: Wrongful Foreclosure**

**\*5** In her wrongful foreclosure claim, Plaintiff alleges that Defendants lacked authority to initiate foreclosure proceedings because: (1) Defendants "did not have standing to foreclose on the Subject Property" because the assignments of the DOT to BANA and Everbank were ineffective because they occurred after the closing date of the PSA; (2) Everbank lacked authority to do business in California; and (3) Marivel Castro's signature on the Assignments of Deed from BANA to Everbank was forged. (Compl. ¶¶ 76-85.)

To assert a claim for wrongful foreclosure, Plaintiff must allege that "(1) defendants caused an illegal, fraudulent, or willfully oppressive sale of the property pursuant to a power of sale in a mortgage or deed of trust; (2) plaintiff suffered prejudice or harm; and (3) plaintiff tendered the amount of the secured indebtedness or w[as] excused from tendering." *Chavez v. Indymac Mortg. Servs., 219 Cal. App. 4th 1052, 1062 (2013)*. Tender is not required where: (1) the borrower attacks the validity of the underlying debt; (2) where the person seeking to set aside the sale has a counter-claim or set-off against the beneficiary; (3) where it would be "inequitable to impose such a condition on the party challenging the sale"; and (4) where the trustee's deed is "void on its face." *Lona v. Citibank, N.A., 202 Cal. App. 4th 89, 112-13 (2011)*.

BANA asserts that this claim is improperly asserted against it because it did not initiate or participate in the foreclosure of the Property. (Mot. 17.) We agree. Nowhere in Plaintiff's Complaint does she allege that BANA was involved in the foreclosure, nor does she dispute BANA's argument in her Opposition. Further, the Assignment of Deed of Trust shows that at the time of the foreclosure Everbank was the holder of the DOT and Sage Point initiated the foreclosure and trustee's sale on Everbank's behalf. (Compl. Exs. D, H, J.) Accordingly, this claim is **DISMISSED with prejudice** as to BANA.

Case 1:19-cv-00427-MSM-LDA Document 11-1 Filed 12/11/19 Page 37 of 57 PageID #: 80

Aldana v. Bank of America, N.A., Not Reported in Fed. Supp. (2014)

Everbank argues that Plaintiff's wrongful foreclosure claim should be dismissed because Plaintiff was not a party to the DOT and therefore lacks standing to challenge the foreclosure. We agree. Although Plaintiff was granted title to the Property, she was not a party to the DOT, did not assume Dominguez's obligations under the DOT, and was not an intended third-party beneficiary of the loan. Accordingly, she does not have standing to challenge the validity of the foreclosure proceedings instituted following Dominguez's default on the loan. See *Anolik v. Bank of Am. Loans*, 2011 WL 1549291, at *3 (E.D. Cal. Apr. 21, 2011) (holding that plaintiff who was deeded title to property and made payments on borrower's loan lacked standing to assert claims challenging a pending foreclosure sale because plaintiff was not the borrower on the subject loan).

Moreover, even if we were to find that Plaintiff has standing, her wrongful foreclosure claim still fails. First, as explained above, Plaintiff's argument that improper securitization renders a lender's interest in a loan unenforceable has been resoundingly rejected. See *Bascos v. Fed. Home Loan Mortg. Corp.*, 2011 WL 3157063, at *6 (C.D. Cal. July 22, 2011) ("To the extent Plaintiff challenges the securitization of his loan because Freddie Mac failed to comply with the terms of its securitization agreement, Plaintiff has no standing to challenge the validity of the securitization of the loan as he is not an investor of the loan trust."); *Lane v. Vitek Real Estate Indus. Grp.*, 713 F. Supp. 3d 1092, 1099 (E.D. Cal. 2010) ("The argument that parties lose interests in a loan when it is assigned to a trust pool has also been rejected by numerous district courts."). "[S]ecuritization merely creates a separate contract distinct from [p]laintiffs' debt obligations under the note and does not change the relationship of the parties in anyway." *Reyes v. GMAC Mortg. LLC*, 2011 WL 1322775, at *3 (D. Nev. Apr. 5, 2011) (internal quotations omitted). Second, Plaintiff's allegation that BANA's assignment to Everbank was "ineffective" because Everbank is not authorized to do business in California also fails because Plaintiff has not alleged any facts to support this allegation.[4] Accordingly, to the extent Plaintiff's wrongful foreclosure claim is based on securitization allegations or Everbank's authority to do business in California, it is **DISMISSED with prejudice**.

**\*6** Finally, Plaintiff's conclusory allegation that Marivel Castro's signature on the Assignment of Deed of Trust was forged is not sufficient to plausibly state a claim for wrongful foreclosure. Moreover, Plaintiff's claim also fails because she has not alleged that she has tendered or could tender the amount outstanding on the defaulted loan. Although in her Opposition she argues that the tender requirement should be excused because it would be "inequitable" under the circumstances, her Complaint fails to allege an exception to the tender requirement. Accordingly, to the extent Plaintiff's claim is based on forgery, it is **DISMISSED with leave to amend** to substitute Dominguez and to plausibly plead the elements of a wrongful foreclosure claim.

### G. Claim Seven: Cancellation of Instruments

Plaintiff also brings a claim for cancellation of instruments, requesting that we cancel the notice of default, notice of trustee's sale, and assignment of deed of trusts. (Compl. ¶ 91.) "A request for cancellation of an instrument is an equitable remedy that is dependent upon a substantive basis for liability." *Mortgage Electronic Registration Sys. v. Robinson*, 2014 WL 451666, at *8 (C.D. Cal. Jan. 28, 2014); *see also Yazdanpanah v. Sacramento Valley Mortg. Grp.*, 2009 WL 4573381, at *6 (N.D. Cal. Dec. 1, 2009); *Quereshi v. Countrywide Home Loans, Inc.*, 2010 WL 841669 (N.D. Cal Mar. 10, 2010). Because Plaintiff has failed to state any other viable claim for such relief, she is not entitled to the remedy of cancellation of instruments. Accordingly, Plaintiff's claim for cancellation of instruments is **DISMISSED with prejudice**. She may reassert it as a remedy if she is able to otherwise state a valid claim which may be remedied by cancellation of the identified instruments.

### H. Claim Eight: Declaratory Relief

Under 28 U.S.C. § 2201, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Declaratory relief should be denied if it will "neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v Washington*, 759 F.2d 1353, 1356-57 (9th Cir. 1985). A claim for declaratory relief is unnecessary where an adequate remedy exists under some other cause of action. *Minnesota Life Ins. Co. v. Philpot*, 2012 WL 4486311, at *11 (S.D. Cal. Sept. 27, 2012). Here, Plaintiff requests that we declare that "Everbank has no right under the obligation of the Deed of Trust and Promissory Note." (Compl. ¶ 97.) This request for declaratory relief is duplicative of the relief sought through Plaintiff's other claims. Moreover, because Plaintiff has failed to state a viable substantive basis for declaratory relief, this claim also fails. Accordingly, Plaintiff's declaratory

Case 1:19-cv-00427-MSM-LDA   Document 11-1   Filed 12/11/19   Page 38 of 57 PageID #: 81

*Aldana v. Bank of America, N.A., Not Reported in Fed. Supp. (2014)*

relief claim is **DISMISSED without prejudice**, but **without leave to amend**.

### I. Claim Nine: Violation of UCL

Plaintiff alleges that Defendants violated the UCL by: (1) "instituting [an] improper transfer of Plaintiff's DOT and Note," (2) "executing and recording false and misleading documents," (3) "executing and recording documents without the legal authority to do so," (4) "failing to disclose the principal for which documents were being executed and recorded in violation of California Civil Code Section 1095," (5) and "acting as beneficiaries and trustees without the legal authority to do so." (Compl. ¶ 105.) Defendants argue that Plaintiff's UCL claim should be dismissed because (1) Plaintiff fails to state a viable claim under the UCL; and (2) Plaintiff lacks standing to bring this claim.

**\*7** The UCL broadly prohibits unlawful, unfair, and fraudulent business acts. *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1212 (9th Cir. 1998). Unlawful business practices are "anything that can properly be called a business practice and that at the same time is forbidden by law." *Nat'l Rural Telecomm'ns Coop. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1059, 1074 (C.D. Cal. 2003). An unfair business practice is one "that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cal-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal 4th 163, 187 (Cal. 1999). Finally, fraudulent business practices are ones where members of the public are likely to be deceived. *Comm. on Children's Television v. Gen. Foods Corp.*, 35 Cal. 3d 197, 214 (1983).

Here, Plaintiff's Complaint fails to sufficiently allege a violation of the UCL. First, Plaintiff fails to specify which prong of the UCL Defendants allegedly violated. Second, the majority of the allegations in her UCL claim are derivative of her other claims. Thus, because Plaintiff has failed to state a viable claim under the underlying violations, her UCL claim based on these alleged violations also fails. Her only asserted basis for her UCL claim that is not derivative of another claim is her allegation that Defendants violated California Civil Code section 1095 by "failing to disclose the principal for which documents were being executed." (Compl. ¶ 105.) California Civil Code section 1095 provides: "When an attorney in fact executes an instrument transferring an estate in real property, he must subscribe the name of his principal to it, and his own name as attorney in fact." Plaintiff offers no

facts to support this allegation. Accordingly, she fails to state a viable UCL claim.

Additionally, Plaintiff fails to sufficiently allege that she has standing under the UCL. To have standing under the UCL, a plaintiff must demonstrate that he or she "suffered an injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. "A plaintiff suffers an injury in fact for purposes of standing under the UCL when he or she has: (1) expended money due to the defendant's unfair competition; (2) lost money or property; or (3) been denied money to which he or she has a cognizable claim." *Hall v. Time, Inc.*, 158 Cal. App. 4th 847, 854-55 (2008). An absence of facts describing the money or property allegedly lost is fatal to a plaintiff's UCL claim. *Saldate v. Wilshire Credit Corp.*, 711 F. Supp. 2d 1126, 1138 (2010). Further, "a plaintiff fails to establish the causation requirement if he or she would have suffered the same harm whether or not a defendant complied with the law." *Jenkins v. JPMorgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 522 (2013); *see also DeLeon v. Wells Fargo Bank, N.A.*, 2011 WL 311376, at \*9 (N.D. Cal. Jan. 28, 2011) (holding that false statements regarding postponement of a foreclosure sale had not plausibly caused a plaintiff-borrower to lose her home because "in order to cure the defect and reinstate the loan, plaintiffs would have been required to pay [an amount that] they have not alleged they could have done"). Here, Plaintiff's Complaint merely alleges that she "has lost money as she had incurred attorney fees and costs to litigation." (Compl. ¶ 110.) This is not a sufficient injury-in-fact for UCL standing. *Cordon v. Wachovia Mortg.*, 776 F. Supp. 2d 1029, 1039 (N.D. Cal. 2011) (finding that attorneys' fees incurred in bringing a UCL claim was insufficient to confer standing under section 17204 because otherwise "a private plaintiff bringing a UCL claim automatically would have standing merely by filing suit"). Thus, Plaintiff has not sufficiently alleged damages caused by Defendants' purported unlawful, unfair, or fraudulent conduct.

**\*8** Accordingly, Plaintiff's UCL claim is **DISMISSED**. To the extent Plaintiff can plausibly state a violation of the UCL, we **GRANT leave to amend** to do so and to substitute Dominguez as the real party in interest, if appropriate.

### IV. Conclusion

Based on the foregoing, Plaintiff's Complaint is **DISMISSED** in its entirety. Plaintiff's quiet title and cancellation of instruments claims against BANA and Everbank, and Plaintiff's HOBR and wrongful foreclosure claims

against BANA are **DISMISSED with prejudice**. Plaintiff's intentional misrepresentation and wrongful foreclosure claims, to the extent they are based on improper securitization and Everbank's lack of authority to do business in California, are also **DISMISSED with prejudice**. Plaintiff's declaratory relief claim is **DISMISSED without prejudice**, but **without leave to amend** because it is not necessary. All other claims are **DISMISSED with leave to amend** the substantive allegations and/or to substitute Dominguez as the real party in interest under Federal Rule of Civil Procedure 17(a)(3).

Should Plaintiff elect to file a First Amended Complaint, she **SHALL** do so within **21 days hereof** in compliance with this Order. She shall not restate any claims against any Defendant as to whom we have granted dismissal with prejudice. Plaintiff is cautioned that any potential amendments must comply with Federal Rule of Civil Procedure 11(b), which provides in pertinent part:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery ....

Plaintiff's failure to file a FAC will be deemed her admission that amendment is futile, and, in that event, this action will be dismissed with prejudice in its entirety.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2014 WL 12577145

---

Footnotes

1    Everhome Mortgage is a division of Defendant Everbank.
2    Sage Point filed a declaration of non-monetary status in the state-court action on February 19, 2014. (NOR ¶ 16, Ex. D.) Plaintiff did not file an objection. Accordingly, Sage Point is a nominal defendant, and its citizenship is irrelevant for purposes of diversity jurisdiction.
3    Defendants request that we take judicial notice of various foreclosure documents. All of the documents, with the exception of the Trustee's Deed Upon Sale, were included as exhibits to Plaintiff's Complaint. Moreover, we need not reference the Trustee's Deed Upon Sale to resolve this Motion. Accordingly, Defendants' Requests for Judicial Notice are **DENIED**.
4    Plaintiff's showing, if any, was that Everbank Home Mortgage Corporation ("EMC") surrendered its license to do business in California. But EMC is not a Defendant in this action. She makes no allegations as to Everbank's ability to conduct business in California.

---

**End of Document**                                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 5157479
Only the Westlaw citation is currently available.
United States District Court,
N.D. California,
San Francisco Division.

Angelia Green, Plaintiff,
v.
Central Mortgage Company, et al., Defendants.

Case No. 14–cv–04281–LB
|
Signed September 02, 2015

**Attorneys and Law Firms**

Nelson W. Goodell, The Goodell Law Firm, San Francisco, CA, for Plaintiff.

Jonathan Douglas Fink, Joshua Ryan Hernandez, Robin Prema Wright, Wright Finlay & Zak, LLP, Newport Beach, CA, for Defendants.

## ORDER GRANTING THE DEFENDANTS' MOTION TO DISMISS

[Re: ECF No. 35]

LAUREL BEELER, United States Magistrate Judge

### INTRODUCTION

**\*1**  The plaintiff Angelia Green sued three defendants —Central Mortgage Company ("CMC"), PLM Loan Management Services, Inc. ("PLM"), and Deutsche Bank National Trust Company as Trustee for Harborview Mortgage Loan Trust 2007–2 ("Deutsche Bank")—for violating federal and California law in relation to the denial of her loan modification application and the foreclosure on her home. (First Amended Complaint ("FAC"), ECF No. 22. [1]) The court approved the parties' stipulation that PLM has non-monetary status pursuant to California Civil Code § 2924*l* and does not have to participate as a party to this action at this time. (Stipulation and Order, ECF No. 45.) CMC and Deutsche Bank, though, moved to dismiss Ms. Green's First Amended Complaint (Motion, ECF No. 35.) Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule

7– 1(b), the court finds this matter suitable for determination without oral argument. The court grants their motion. Ms. Green may file a Second Amended Complaint by September 23, 2015.

### STATEMENT

#### I. MS. GREEN'S ALLEGATIONS

In 1977, Ms. Green's parents, Robert Tregre and Rosia Tregre (the "Tregres"), purchased property at 823 Templeton Avenue, Daly City, California 94104 (the "Property"). (FAC ¶¶ 3, 11, 21, 25.) On September 15, 2006, the Tregres created the Robert J. Tregre & Rosia L. Tregre Family Revocable Living Trust (the "Trust"), and they placed the Property into it. (*Id.* ¶¶ 24, 25.) Upon the death of the Tregres, all of the Trust's assets—including the Property—were to be distributed to Ms. Green, the Trust's beneficiary. (*Id.* ¶ 26.) Ms. Green is the trustee under the Trust. (*Id.* ¶ 27.)

On January 11, 2007, the Trust entered into a refinance loan transaction (the "Loan") and secured the Loan with the Property through a deed of trust (the "Deed of Trust"). (*Id.* ¶ 28; Request for Judicial Notice ("RJN"), ECF No. 36, Ex. 1. [2]) The Trust was listed as the "borrower" on the Deed of Trust. (RJN, ECF No. 36, Ex. 1.) And Paragraph 13 of the Deed of Trust states in relevant part: "[A]ny Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument." (*Id.*)

**\*2**  Sometime thereafter, CMC became the servicer of the loan, and Deutsche Bank became the beneficiary under the Deed of Trust. (FAC ¶ 28.)

Then, in June 2013, the Tregres each died. (*Id.* ¶ 29.) As a result, pursuant to the terms of the Trust, title to the Property was conveyed to Ms. Green. (*Id.* ¶ 30.) She alleges that "[b]y virtue of her parent[s'] death [s], [she] received title to the [P]roperty and assumed the [L]oan." (*Id.* ¶ 34.) She also alleges that she "became the trustor under the Deed of Trust by virtue of her parent[s'] death[s]." (*Id.* ¶ 35.)

Ms. Green made payments on the loan from July 2013 to September 2013, but thereafter the loan fell into default after Ms. Green's daycare business closed that summer and she suffered a loss of income. (*Id.* ¶ 31.) In September 2013, Ms. Green contacted CMC. She told CMC that her parents had

died and that she had obtained title to the Property. (*Id.* ¶¶ 32, 33.) She also told CMC that she wished to inquire about a loan modification. (*Id.* ¶ 32.)

CMC never questioned Ms. Green's ability to apply for a loan modification, and it asked her to send various documents to be considered for one. (*Id.* ¶¶ 39, 40.) No one at CMC, however, discussed loss mitigation options with her, whether in person or by telephone, about how to save her home. (*Id.* ¶ 40.)

In December 2013 and early January 2014, Ms. Green sent to CMC all of the documents it requested so she could be considered for a loan modification. (*Id.* ¶ 42.) CMC acknowledged receiving the documents and that her application was under review. (*Id.* ¶ 41.) CMC subsequently denied her application on the basis that it had not received all of the documents it requested. (*Id.* ¶ 42.) Even though Ms. Green sent her bank statements in, CMC claimed that it had not received them. (*Id.*) CMC denied Ms. Green's loan modification application on this basis. (*Id.*)

In mid-March 2014, Ms. Green received a notice of default in the mail at the Property. (*Id.* ¶ 42.) She had not previously received written denial of her loan modification application on the merits. (*Id.*) Prior to the notice of default being recorded, Ms. Ms. Green also had never been able to speak with a CMC representative, whether in person or by telephone, regarding her options to avoid foreclosure. (*Id.*)

In late June 2014, CMC acknowledged that they received all necessary documents to consider Ms. Green for a loan modification. (*Id.* ¶ 44.) CMC subsequently denied her loan modification application because she had insufficient income. (*Id.* ¶ 45.) CMC's denial letter, however, made no mention of what her gross income was. (*Id.*) Ms. Green alleges that this denial was improper because she had sufficient income pursuant to federal guidelines and thus should have been approved for a loan modification. (*Id.*) Her income was approximately $3,400 per month, and her children pledged to contribute $2,300 toward the payments. (*Id.*)

Ms. Green then sent CMC documentation showing that the amount it calculated for her gross income was "significantly inaccurate." (*Id.* ¶ 46.) She also spoke with CMC's representatives regarding her income. (*Id.*) CMC then sent a letter stating that Ms. Green's appeal was denied because she had not provided it with updated income information. (*Id.* ¶ 47.) But she had in fact sent them documents showing additional income. (*Id.*)

**\*3** On September 12, 2014, Ms. Green filed a voluntary Chapter 13 bankruptcy petition. (*Id.* ¶ 48.) It turns out that the Property was scheduled to be sold at a trustee's sale that same day. (*Id.*) Ms. Green was not aware of this at the time. (*Id.*) Although she knew a sale date was coming up, she did not know that it was September 12. (*Id.*)

Several weeks later, Ms. Green received a trustee's deed upon sale in the mail and learned that Deutsche Bank had purchased her Property. (*Id.* ¶ 49; RJN, ECF No. 36, Ex. 7.)

## II. PROCEDURAL HISTORY

Ms. Green, proceeding pro se, filed her original complaint in this action on September 23, 2014. (Complaint, ECF No. 1.) After several extensions of time to serve the defendants, Ms. Green retained counsel and filed a First Amended Complaint on June 24, 2015. (FAC, ECF No. 22.) She brings the following 12 claims: (1) violation of California's Homeowners Bill of Rights ("HBOR"), Cal. Civ.Code § 2923.55; (2) violation of HBOR, Cal. Civ.Code § 2923.6; (3) violation of HBOR, Cal. Civ.Code § 2923.7; (4) violation of HBOR, Cal. Civ.Code § 2924.17; (5) violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(f); (6) violation of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691(d)(1); (7) negligent misrepresentation; (8) fraud; (9) wrongful foreclosure; (10) unfair business practices in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof.Code §§ 17200 et seq.; (11) cancellation of deed; and (12) declaratory relief. (*Id.* ¶¶ 63–130.)

PLM was declared to have nonmonetary status, and the remaining defendants CMC and Deutsche Bank filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Motion, ECF No. 35; Stipulation and Order, ECF No. 45.) Ms. Green filed an opposition, and the defendants filed a reply. (Opposition, ECF No. 43; Reply, ECF No. 48.)

## ANALYSIS

As a threshold matter, the defendants argue that Ms. Green does not have standing to assert any of her claims. (Motion, ECF No. 35 at 12–15.) Technically, the defendants–who bring a motion under Rule 12(b)(6)–must raise the standing issue under Rule 12(b)(1). See *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir.2011). The court nonetheless must

address jurisdictional issues such as standing sua sponte. *D'Lil v. Best Western,* 538 F.3d 1031, 1035 (9th Cir.2008).

A defendant may mount either a facial or a factual challenge to the court's jurisdiction. See *White v. Lee,* 227 F.3d 1214, 1242 (9th Cir.2000). "A 'facial' attack asserts that a complaint's allegations are themselves insufficient to invoke jurisdiction, while a 'factual' attack asserts that the complaint's allegations, though adequate on their face to invoke jurisdiction, are untrue." *Courthouse News Serv. v. Planet,* 750 F.3d 776, 780 n. 3 (9th Cir.2014) (citing *Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th Cir.2004)). When a defendant mounts a facial attack, the court must "accept all allegations of fact in the complaint as true and construe them in the light most favorable to the plaintiffs." *Warren v. Fox Family Worldwide, Inc.,* 328 F.3d 1136, 1139 (9th Cir.2003). In contrast, when presented with a factual challenge to subject matter jurisdiction, the court may evaluate extrinsic evidence and resolve factual disputes when necessary. See *Roberts v. Corrothers,* 812 F.2d 1173, 1177 (9th Cir.1987) (quoting *Augustine v. United States,* 704 F.2d 1074, 1077 (9th Cir.1983)). In a factual challenge, the plaintiff "bears the burden of proving by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met." *Leite v. Crane Co.,* 749 F.3d 1117, 1121 (9th Cir.2014) (citing *Harris v. Rand,* 682 F.3d 846, 850–51 (9th Cir.2012)). Dismissal of a complaint without leave to amend should be granted only where the jurisdictional defect cannot be cured by amendment. See *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir.2003).

**\*4** Ms. Green has the burden of establishing Article III standing. *Colwell v. Dep't of Health and Human Servs.,* 558 F.3d 1112, 1121 (9th Cir.2009). To meet that burden, she "must establish 'the irreducible constitutional minimum of standing,' consisting of three elements: injury in fact, causation, and a likelihood that a favorable decision will redress the plaintiff's alleged injury." *Lopez v. Candaele,* 630 F.3d 775, 785 (9th Cir.2010) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992)). To establish an injury in fact, she must show that she has suffered "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan,* 504 U.S. at 560.

From the face of the complaint, Ms. Green brings this action on her own behalf. (*See generally* FAC, ECF No. 22.) Generally, "[a] person who is not a party to a contract does not have standing either to seek its enforcement or to bring

tort claims based on the contractual relationship." *Ambers v. Wells Fargo Bank, N.A.,* No. 13–cv–03940 NC, 2014 WL 883752, at \*4 (N.D.Cal. Mar. 3, 2014) (citing *Mega Life & Health Ins. Co. v.Super. Ct.,* 172 Cal.App. 4th 1522, 1528–32 (Cal.Ct.App.2009)). Courts thus have dismissed foreclosure-based claims—like Ms. Green's negligent misrepresentation, fraud, wrongful foreclosure, UCL, cancellation of deed, and declaratory relief claims—by persons who were not parties to mortgage loans. *See also, e.g., Cabrera v. Countrywide Fin.,* No. C 11–4869 SI, 2012 WL 5372116, at \*8 (N.D.Cal. Oct. 30, 2012) (even though the plaintiff had community property rights in her home, the plaintiff lacked standing to bring civil RICO, ECOA, and UCL claims because she was not a signatory to the loan); *Thomas v. Guild Mortg. Co.,* No. CV 09–2687–PHX–MHM, 2011 WL 676902, at \*4 (D.Ariz. Feb. 23, 2011) (because it was the plaintiff's daughter—and not the plaintiff—who was a party to the loan, the plaintiff lacked standing to bring TILA, RESPA, Home Ownership and Equity Protection Act, and civil RICO claims arising from the defendant's foreclosure on property securing that loan); *Brockington v. J.P. Morgan Chase Bank, N.A.,* No. C–08–05795 RMW, 2009 WL 1916690, at \*2–3 (N.D.Cal. July 1, 2009) (even though the plaintiff alleged that she was an "equitable owner" of property, the plaintiff did not have standing to challenge the defendant's conduct in connection with that loan because the plaintiff was not a party to the loan); *Cleveland v. Deutsche Bank Nat'l Trust Co.,* No. 08cv0802 JM(NLS), 2009 WL 250017, at \*2 (S.D.Cal. Feb. 2, 2009) (because the plaintiff's wife—and not the plaintiff—was the "borrower" on the loan, the plaintiff did not have standing to assert claims for violation of TILA, injunctive relief, statutory damages, fraud, accounting, cancellation of instruments, quiet title, and declaratory relief based on the defendants' foreclosure on property securing that loan).

Similarly, only "borrowers" have standing to assert claims for violation of HBOR. See Cal. Civ.Code § 2924.12(a)(1), (b); Cal. Civ.Code § 2924.19(a)(1), (b); see also *Lindberg v. Wells Fargo Bank, N.A.,* No. C 14–2544 PJH, 2015 WL 1137634, at \*5–6 (N.D.Cal. Mar. 13, 2015) (because "only 'borrowers' have HBOR standing," the court dismissed the non-borrower plaintiff's claims for violation of California Civil Code §§ 2923.6 and 2923.7); *Van Zandt v. Select Portfolio Serv., Inc.,* No. C–15–0430 MMC, 2015 WL 574357, at \*2 (N.D.Cal. Feb. 10, 2015) ("The protections provided under § 2923.7 are available only to a 'borrower, ...'"); *Austin v. Ocwen Loan Serv., LLC,* No. 14–cv–00970 JAM–AC, 2014 WL 3845182, at \*2–3 (E.D.Cal. Aug. 1, 2014) ("because Plaintiff is not the borrower, she is not the real party in interest for her HBOR

claim" under California Civil Code § 2924.11; dismissing claim).

**\*5**  And only "borrowers" have standing to assert the RESPA claims that Ms. Green asserts here. *See* 12 U.S.C. § 2605; 12 C.F.R. § 1024.41(b)(2)(i), (f)(2). Indeed, the regulation Ms. Green cites in her First Amended Complaint states that "[a] borrower may enforce the provisions of this section pursuant to [ 12 U.S.C. § 2605(f) ]." 12 C.F.R. § 1024.41(a). For this reason, courts have dismissed RESPA claims asserted by those who are not borrowers. *See Aldana v. Bank of Am., N.A.,* No. CV 14–7489–GHK (FFMx), 2014 WL 6750276, at \*3 (C.D.Cal. Nov. 26, 2014) (dismissing RESPA claim where the plaintiff was not a borrower, did not assume obligations under the loan, and was not a third-party beneficiary under the deed of trust when the borrower signed it); *Stolz v. OneWest Bank,* No. 03:11–cv–00762–HU, 2012 WL 135424, at \*5 (D.Or. Jan. 13, 2012) (dismissing two plaintiffs' RESPA claims because, as non-borrowers, they "lack[ed] standing to bring a RESPA claim because they were not entitled to receive any disclosures or responses under RESPA); *Mashburn v. Wells Fargo Bank, NA,* No. C11–0179–JCC, 2011 WL 2940363, at \*3 (W.D.Wash. July 19, 2011) ("Plaintiff Hayakawa also does not have standing to bring the RESPA ... claims since he was not a borrower and did not apply for a loan .... and thus was not entitled to receive any disclosures or responses from Defendant under RESPA."); *see also Johnson v. Ocwen Loan Serv.,* 374 Fed.Appx. 868, 873–74 (11th Cir. Mar. 15, 2010) (affirming the district court's dismissal of, among others, the plaintiff's RESPA claim because the plaintiff "was not a borrower or otherwise obligated on the Ocwen loan and, therefore, did not suffer an injury-in-fact"; noting that 12 U.S.C. § 2605(f) provides that "[w]hoever fails to comply with any provision of this section shall be liable *to the borrower* for each such failure") (italics in original).

In her First Amended Complaint, Ms. Green alleges that "[b]y virtue of her parent[s'] death[s], [she] received title to the [P]roperty and assumed the [L]oan" and therefore became the "borrower." (FAC ¶¶ 34, 69.) This is a statement of law, not fact, and she cites no authority that supports it. Indeed, her allegation is directly at odds with Paragraph 13 of the Deed of Trust, which states that "any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument *in writing, and is approved by Lender,* shall obtain all of Borrower's rights and benefits under this Security Instrument." (RJN, ECF No. 36, Ex. 1 (emphasis added).) Other courts have found that a successor in interest does not assume a borrower's obligations simply

upon obtaining title to property when the deed of trust requires an assumption be made in writing and approved by the lender. *See Layton v. Ocwen Loan Serv., LLC,* No. EDCV 15–840–GW(Ex), 2015 WL 4512015, at \*4 (C.D.Cal. July 23, 2015); *Robertson v. GMAC Mortg. LLC,* 982 F.Supp.2d 1202, 1207 (W.D.Wash.2013); *Anolik v. Bank of Am. Loans,* No. 2:11–cv–00406–MCE–JFM, 2011 WL 1549291, at \*1, \*3 (E.D.Cal. Apr. 21, 2011); *see also Gonzalez on Behalf of Estate of Perez, v. JP Morgan Chase Bank, N.A.,* No. C–14–2558 EMC, 2014 WL 5462550, at \*3 (N.D.Cal. Oct. 28, 2014) ("The execution of the quitclaim deed by Ms. Perez in favor of Ms. Gonzalez and Ms. Gonzalez's daughter does not confer standing as to allegations concerning loan origination. Ms. Gonzalez has not shown that she had any obligation on the loan. Therefore she has failed to show a cognizable injury flowing from the loan origination.") (collecting cases). Accordingly, the court rejects Ms. Green's argument that she, as a successor in interest, is the "borrower" under the Deed of Trust.

Ms. Green also lacks standing to assert her ECOA claim. 15 U.S.C. § 1691(d)(1), the subsection she alleges the defendants violated, states: "Within thirty days (or such longer reasonable time as specified in regulations of the Bureau for any class of credit transaction) after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application." "Credit" is defined as "the right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefor." 15 U.S.C. § 1691a(d). And an "applicant" is defined as "any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit." 15 U.S.C. § 1691a(b).

**\*6**  Although Ms. Green was an applicant within the meaning of ECOA, she did not apply for a new extension of credit, and she could not have applied for a renewal or continuation of credit because the defendants had not previously extended her credit. What she applied for was a modification of the Trust's obligations under the Loan or Deed of Trust. Her application had no effect on any existing obligations she had under the Loan or Deed of Trust, because she had none. As the court explained above, she did not assume any obligations under the Deed of Trust. In this circumstance, the court does not believe that Ms. Green has shown that she, individually (as opposed to the Tregres' estate or the Trust), suffered an injury-in-fact —"an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not

conjectural or hypothetical"—that confers her with standing to assert an ECOA claim. *Lujan,* 504 U.S. at 560. And Ms. Green has not cited, and the court has not found, any court holding otherwise in such a circumstance.

## CONCLUSION

For the reasons stated above, the court concludes that Ms. Green has not established that she has standing to assert her claims on her own behalf. The court thus grants the defendants' motion and dismisses Ms. Green's First Amended Complaint without prejudice. [3] Ms. Green may file

a Second Amended Complaint by September 23, 2015. Upon amendment, if Ms. Green attempts to assert claims on behalf of the Tregres' estate or the Trust, she must allege specific facts showing her capacity to do so. *See Gonzalez,* 2014 WL 5462550, at *3; *Evans v. Wells Fargo Bank, N.A.,* No.: 13–cv–2371 JSC, 2013 WL 4049062, at *2 (N.D.Cal. Aug. 8, 2013).

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 5157479

Footnotes

1    Record citations are to documents in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the tops of the documents.

2    The defendants ask the court to take judicial notice of the following 11 documents: (1) a Deed of Trust recorded on January 22, 2007, in the San Mateo County Recorder's Office bearing instrument number 2007–009851; (2) an Assignment of Deed of Trust recorded March 4, 2014, in the San Mateo County Recorder's Office bearing instrument number 2014–017912; (3) a Substitution of Trustee recorded March 4, 2014, in the San Mateo County Recorder's Office bearing instrument number 2014–017913; (4) a Notice of Default recorded March 7, 2014, in the San Mateo County Recorder's Office bearing instrument number 2014–019210; (5) a Notice of Trustee's Sale recorded June 12, 2014, in the San Mateo County Recorder's Office bearing instrument number 2014–051353; (6) an Assignment of Deed of Trust recorded September 23, 2014, in the San Mateo County Recorder's Office bearing instrument number 2014–086030; (7) a Trustee's Deed Upon Sale recorded September 23, 2014, in the San Mateo County Recorder's Office bearing instrument number 2014–086031; (8) an Order and Notice of Dismissal for Failure to Comply entered on September 23, 2014 with the United States Bankruptcy Court bearing bankruptcy case number 14–31336–HLB 13; (9) a Verified Complaint filed on January 29, 2015, with the San Mateo County Court bearing case number CLJ210694; (10) a Judgment entered by the San Mateo County Court Clerk on March 4, 2015, bearing case number CLJ210694; and (11) an Order and Notice of Dismissal for Failure to Comply entered on March 23, 2015, with the United States Bankruptcy Court bearing bankruptcy case number 15–30294. (RJN, ECF No. 36; Errata, ECF No. 47.)

    Under Federal Rule of Evidence 201, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b). A "high degree of indisputability is the essential prerequisite" to taking judicial notice and "the tradition [of taking judicial notice] has been one of caution in requiring that the matter be beyond reasonable controversy." Fed.R.Evid. 201(a) & (b) advisory committee's notes (emphasis added). A court, then, may take judicial notice of undisputed facts contained in public records, but it may not take judicial notice of disputed ones. *See Lee v. City of Los Angeles,* 250 F.3d 668, 689–90 (9th Cir.2001); *see also Muhammad v. California,* C–10–1449–SBA, 2011 WL 873151, at *4 (N.D.Cal. Mar. 11, 2011) (denying request for judicial notice of an address contained on a complaint filed in another case because the "underlying facts relevant to Plaintiff's residence are disputed and otherwise do not meet the requirements of Rule 201"). Here, Ms. Green does not object to the court taking judicial notice of the existence of these documents, all of which are public records. Therefore, the court takes judicial notice of them. The court does not take judicial notice of the documents submitted by Ms. Green, however, as they are not necessary to the court's ruling. (*See* Plaintiff's RJN, ECF No. 42.)

3    Because standing is a jurisdictional prerequisite, the court does not reach the defendants' other arguments at this time. (*See* Motion, ECF No. 35 at 15–29.) If Ms. Green files a Second Amended Complaint and successfully establishes her standing, the defendants may raise their additional arguments at that time.

---

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 135424
Only the Westlaw citation is currently available.
United States District Court, D. Oregon.

Katherine STOLZ, an individual,
Edward Stolz, an individual, and
Terrea Stolz, and individual, Plaintiffs,

v.

ONEWEST BANK, a California Corporation,
Mortgage Electronic Registration System, Inc.,
a Delaware Corporation, Regional Trustee
Services Corporation, a Washington Corporation,
and Federal National Mortgage Association, a
government sponsored Enterprise, Defendants.

No. 03:11–cv–00762–HU.
|
Jan. 13, 2012.

**Attorneys and Law Firms**

Michael D. O'Brien, Oliveros & O'Brien PC, Clackamas, OR, for Plaintiffs.

William L. Larkins, Jr., Danielle J. Hunsaker, Cody B. Hoesly, Larkins Vacura LLP, Portland, OR, Jennifer Tait, Lisa McMahon–Myhran, Robinson Tait, P.S., Seattle, WA, for Defendants.

### FINDINGS AND RECOMMENDATION

HUBEL, United States Magistrate Judge:

### Introduction

**\*1** Pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), defendants OneWest Bank, FSB ("OneWest"), Mortgage Electronic Registration Systems, Inc. ("MERS"), Federal National Mortgage Association ("Fannie Mae"), and Regional Trustee Services Corporation ("Regional") [1] (collectively, "Defendants") move to dismiss plaintiffs Katherine Stolz, Edward Stolz, and Terrea Stolz's (hereinafter, "Plaintiffs") complaint in its entirety. For the reasons set forth below, Defendants' motion (dkt.# 10) should be GRANTED in part and DENIED in part.

### Background [2]

On or about December 4, 2007, Katherine Stolz signed a Promissory Note in favor of Premier Mortgage Group Inc. ("Premier"), whereby she borrowed $325,000 from Premier. (Compl.¶ 8.) As security for the Promissory Note, Katherine Stolz granted Premier a Deed of Trust [3] against her property located at 29202 SE Knox Road in Boring, Oregon (the "Property"). (Compl.¶¶ 6, 8.) Premier advised Katherine Stolz that it sells one hundred percent of the loans it makes, "therefore, on information and belief, Plaintiffs allege that immediately after closing of the transaction on December 4, 2007, Premier ... sold their rights in the [loan] to an unnamed third party not identified in any paperwork provided to Plaintiffs." (Compl.¶ 9.) Plaintiffs have not had any contact with Premier since the closing of the transaction. (Compl.¶ 9.)

Contemporaneous with closing of the transaction, Premier transferred servicing rights of the loan to IndyMac Bank, FSB ("IndyMac"), although that assignment was never recorded. (Compl.¶ 10.) IndyMac Federal Bank FSB ("IndyMac Federal") subsequently transferred its servicing rights to OneWest. (Compl.¶ 11; Mem. Supp. Defs.' Mot. Dismiss ("Def.'s Mem.") at 2.)

On February 10, 2009, a vice president of IndyMac Federal [4], claiming to be the present beneficiary of the Deed of Trust, purportedly appointed Regional as successor trustee. (Compl.¶ 21.) The document was recorded in Clackamas County on February 20, 2009, under recorders document number 2009–010696. (Compl.¶ 21.)

On February 11, 2009, a vice president of MERS signed an Assignment of Deed of Trust, whereby MERS purportedly assigned all beneficial interest under the Deed of Trust and loan to IndyMac Federal. (Compl.¶ 20.) The document was recorded in Clackamas County on February 20, 2009, under recorders document number 2009–010695. (Compl.¶ 20.)

On June 9, 2010, an Attorney in Fact of IndyMac Federal signed an Assignment of Deed of Trust, whereby IndyMac Federal purportedly assigned all beneficial interest under the Deed of Trust and loan to OneWest. (Compl.¶ 22.) The document was recorded in Clackamas County on December 8, 2010, under recorders document number 2010–078659. (Compl.¶ 22.)

On December 8, 2010, Regional, acting at the direction of OneWest, issued a Notice of Default and Election to Sell the Property pursuant to ORS 86.705 *et seq.*, with a public sale date of April 13, 2011. (Compl.¶ 23.) On April 8, 2011, Plaintiffs informed Regional that they disputed whether the pending foreclosure by advertisement and sale was being performed properly under Oregon law. (Compl.¶ 24.) Regional therefore agreed to postpone the April 13, 2011, sale date to May 13, 2011. (Compl.¶ 24.)

**\*2** On May 10, 2011, OneWest, acting through its authorized agent John Cockrell, notified Plaintiffs' attorney[5] that the "foreclosure sale scheduled for May 13, 2011, is currently on hold. There is no updated sale date, but the foreclosure is on hold until your inquiries have been responded to." (Compl.¶ 25.) Such inquiries included a written request related to servicing of the loan, which included the borrower's name and account, and was identified as "Qualified Written Request" ("QWR") being made pursuant to the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e). (Compl.¶ 26.) This request was sent to OneWest on May 9, 2011, however, OneWest has never acknowledged receipt, nor have they contacted Plaintiffs with any response or notice regarding a reset sale date. (Compl.¶ 26.)

On June 14, 2011, Regional, acting at the direction of OneWest, held a non-judicial public foreclosure sale of the Property. (Compl .¶ 27.) Plaintiffs believe Fannie Mae was the successful bidder at the sale and has sought or may seek to obtain a Trustee's Deed naming it as owner of the Property. (Compl.¶ 27.) Plaintiffs claim to have been injured as a result of the foreclosure sale held on June 14, 2011, and bring the following claims for relief: (1) declaratory judgment against MERS, OneWest, and Regional; (2) rescission of wrongful foreclosure against MERS, OneWest, Regional, and Fannie Mae; (3) temporary injunction against MERS, OneWest, and Regional; and (4) violation of the Real Estate Settlement Procedure Act ("RESPA"), 12 U.S.C. § 2605 *et seq.*, against OneWest. (Compl.¶¶ 29–47.)

## Legal Standard

Rule 12(b)(6) allows a court to dismiss a complaint for failure to state a claim upon which relief can be granted. In considering a Rule 12(b)(6) motion to dismiss, the court must accept all of the claimant's material factual allegations as true and view all facts in the light most favorable to the claimant. *Reynolds v. Giusto,* No. 08–CV–6261, 2009 WL 2523727, at

\*1 (D.Or. Aug. 18, 2009). The Supreme Court addressed the proper pleading standard under Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). *Twombly* established the need to include facts sufficient in the pleadings to give proper notice of the claim and its basis:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

*Id.* at 555 (brackets omitted).

Since *Twombly,* the Supreme Court has clarified that the pleading standard announced therein is generally applicable to cases governed by the Rules, not only to those cases involving antitrust allegations. *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). The *Iqbal* court explained that *Twombly* was guided by two specific principles. First, although the court must accept as true all facts asserted in a pleading, it need not accept as true any legal conclusion set forth in a pleading. *Id.* Second, the complaint must set forth facts supporting a plausible claim for relief and not merely a possible claim for relief. *Id.* The court instructed that "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 129 S.Ct. at 1949–50 (*citing Iqbal v. Hasty,* 490 F.3d 143, 157–58 (2nd Cir.2007)). The court concluded: "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

**\*3** The Ninth Circuit further explained the *Twombly–Iqbal* standard in *Moss v. U.S. Secret Service,* 572 F.3d 962 (9th Cir.2009). The *Moss* court reaffirmed the *Iqbal* holding that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Moss,* 572 F.3d at 969 (quoting *Iqbal,* 129 S.Ct. at 1949). The court in *Moss* concluded by stating: "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inference from that content must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss,* 572 F.3d at 969.


### Discussion

#### I. *Request for Judicial Notice*

Defendants ask the court to take judicial notice of five documents: (1) Katherine Stolz's ("Stolz") promissory note; (2) an Assignment of Stolz's Deed of Trust; (3) an Appointment of Successor Trustee; (4) another Assignment of Stolz's Deed of Trust; and (5) a Notice of Default and Election to Sell. (Request for Judicial Notice ("RJN") Ex. A–E.)

*Federal Rule of Evidence 201,* which governs judicial notice of adjudicative facts, provides that:

> A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

*FED.R.EVID. 201(b).* The court must take judicial notice if "requested by a party and supplied with the necessary information." *FED.R.EVID. 201(d).*

Taking judicial notice of documents that are matters of public record does not convert a motion to dismiss into a motion for summary judgment. *See Zucco Partners, LLC v. Digimarc Corp.,* 552 F.3d 981, 991 (9th Cir.2009) (court may consider judicially noticed documents on Rule 12(b) (6) motion); *MGIC Indem. Corp. v. Weisman,* 803 F.2d 500, 504 (9th Cir.1986) (district court, when determining whether complaint fails to state a claim, may take "judicial notice of matters of public record outside the pleadings[ .]"). Moreover, in ruling on a Rule 12(b)(6) motion to dismiss, the court is permitted to consider "other sources ... in particular, documents incorporated into the complaint by reference, and

matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007).

All of the documents submitted by Defendants are appropriate for judicial notice because Plaintiffs expressly refer to all of the aforementioned documents in their complaint. (Compl.¶¶ 8, 20–23.) Plaintiffs have offered no opposition to Defendants' request that the court take judicial notice of the relevant documents. Accordingly, Defendants' request for judicial notice (dkt. # 13) should be GRANTED.


#### II. *Rule 12(b)(6) Motion to Dismiss*

**\*4** Defendants' positions can be summarized as follows: (1) all of Plaintiffs' claims fail as a matter of law and, notably, Plaintiffs' RESPA claim fails because, on its face, the complaint demonstrates OneWest acknowledged receipt of Plaintiffs' QWR; (2) this court lacks diversity jurisdiction and should decline exercising supplemental jurisdiction over Plaintiffs' state law claims; and (3) if the court exercises supplemental jurisidcition, Plaintiffs' state law claims should be dismissed with prejudice because they are preempted and/ or meritless as a matter of law. (Defs.' Mem. at 3–4.)


##### A. Subject Matter Jurisdiction

The complaint alleges that federal question jurisdiction pursuant to 28 U.S.C. § 1331, by virtue of the RESPA claim and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. (Compl.¶¶ 2, 3.) The complaint also alleges diversity jurisdiction pursuant to 28 U.S.C. § 1332, based on the parties being of diverse citizenship and the Property having "a value to be proven at trial but which exceeds $75,000." (Compl.¶¶ 2, 6.)

"The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treatises of the United States." 28 U.S.C. § 1331 (2007). It is well settled that federal question jurisdiction exists over a RESPA claim. *See Amaral v. Wachovia Mortg. Corp.,* 692 F.Supp.2d 1226, 1228 (E.D.Cal.2010) (noting the same). I will therefore begin my analysis by addressing Defendants' motion to dismiss Plaintiffs' RESPA claim, because survival of the RESPA claim would render Plaintiffs' diversity jurisdiction arguments moot.


##### B. RESPA Claim

The complaint indicates that Plaintiffs' QWR was made pursuant to RESPA, 12 U.S.C. § 2605(e), which provides, in pertinent part, that:

> If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

12 U.S.C. § 2605(e)(1)(A) (2007). The QWR was sent to OneWest on May 9, 2011, and Plaintiffs allege that OneWest "did not acknowledge receipt of the [QWR] within twenty days and in fact has not, to date, contacted Plaintiffs with any procedural or substantive response nor [did they] provide[ ] any notice regarding a reset sale date. (Compl.¶ 26.)[6]

**1. Edward and Terrea Stolz's Standing**

Initially, Defendants point out that only Katherine Stolz has standing to bring a RESPA claim because she is the only borrower under the loan. (Defs.' Mem. at 5.) Plaintiffs have provided no response to this issue.

In *Mashburn v. Wells Fargo Bank, NA,* No. 11–179, WL 2940363 (W.D.Wash. July 19, 2011), the district court resolved a similar argument regarding standing under RESPA. There, the plaintiff-father signed a quitclaim deed, conveying his interest in the subject property to his daughter. *Id.* at *1. The plaintiff-daughter subsequently obtained a refinance loan and signed a deed of trust granting the bank a first position lien against the property to secure the loan. *Id.* After defaulting on her loan, the plaintiff-daughter requested information in the form of a QWR under RESPA. *Id.* Defendants argued that the plaintiff-father lacked standing because he was not a borrower under RESPA. *Id.* at *2. The *Mashburn* court agreed, noting "RESPA requires creditors to make certain disclosures and respond to certain inquiries by borrowers, including responding to qualified written requests by borrowers." *Id.* at *3. However, the plaintiff-daughter

was the only borrower on the loan, which meant that the plaintiff-father "was not entitled to receive any disclosures or responses from Defendant under RESPA." *Id.*

**\*5** Here, as in *Mashburn,* there is only one borrower under the loan at issue, Katherine Stolz. (RJN Ex. A at 3; Compl. 8.) I therefore agree with Defendants that Edward and Terrea Stolz[7] lack standing to bring a RESPA claim because they were not entitled to receive any disclosures or responses under RESPA. Accordingly, Edward and Terrea Stolz's RESPA claims should be dismissed.

**2. Katherine Stolz's RESPA Claim**

As to Katherine Stolz's RESPA claim, Defendants argue that the complaint "shows OneWest did, in fact, acknowledge receipt of her QWR in writing within the 20–day period." (Defs.' Mem. at 5.) Defendants are correct that on May 10, 2011, the day after Plaintiffs' mailed their QWR, OneWest's agent responded to Plaintiff's attorney via email, indicating, "the foreclosure sale scheduled for May 13, 2011 is currently on hold. There is no updated sale date, but the foreclosure is on hold until your inquiries have been responded to." (Compl.Ex.4.) Plaintiffs acknowledge that the inquiries OneWest's agent referred to in the May 10 email included their QWR. (Compl.¶ 26.) Defendants contend that email qualified as a written response under § 2605(e), thereby demonstrating their compliance with RESPA. (Defs.' Mem. at 6.) In turn, Defendants claim that, "[b]ecause plaintiffs' own Complaint shows that there is no basis for their RE[SP]A claim, this Court should dismiss that claim with prejudice." (Defs.' Mem. at 6.)

Relying on § 2605(e)(2), Plaintiffs counter by claiming that "the servicer must respond substantively within sixty days" to a QWR. (Pl.'s Resp. Opp'n Defs.' Mot. Dismiss ("Pl.'s Resp.") at 2.) Section 2605(e)(2) provides, in pertinent part, that:

> Not later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall—
>
> (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);

(B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—

(i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—

(i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

**\*6** (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

12 U.S.C. § 2605(e)(2) (2007). According to Plaintiffs, "Defendants failed to comply with the requirements of this section when they proceeded to foreclosure of the subject property without investigating or responding substantively to the [QWR]." (Pl.'s Resp. at 3.)

Here, viewing the facts in the light most favorable to the claimant, I find that Katherine Stolz's complaint states a plausible claim for relief under RESPA. The complaint focuses primarily on OneWest's failure to *acknowledge* receipt of the QWR within twenty days, which, given the record before me, seems unlikely. However, the complaint also unequivocally states that OneWest "has not, to date, contacted Plaintiffs with any procedural or substantive response [to their QWR,] nor [has OneWest] provided any notice regarding a reset sale date." (Compl.¶ 26.) Such an allegation directly implicates the duties imposed on loan servicers under § 2605(e)(2).

Defendants do not debate the merits of any alleged § 2605(e)(2) violation based, in part, on Plaintiffs' statement that "[s]hould the Court find merit in the arguments of Defendant regarding acknowledgment of the [QWR], the court should consider" Rule 15(a)(2) and grant leave to amend the complaint to clarify the RESPA allegation. (Pl.'s Resp. at 3.) Specifically, Defendants state, "[w]ithout debating the merits of Ms. Stolz's proposed new claim (which [is] dubious in light of the timely filed substantive response which is

attached hereto as Exhbit F), it is clear that her current claim cannot stand." (Reply Supp. Mot. Dismiss ("Defs.' Reply") at 2.)

First, I do not necessarily agree that Exhibit F is dispositive on this matter. Exhibit F is a copy of a letter dated May 13, 2011, from One West to Plaintiffs' attorney, Michael O'Brien, which clearly indicates it "is sent in response to the letter dated April 8, 2011, addressed to ... Regional." (Decl. Charles Boyle Ex. F at 1.) Mentioning a letter purporting to respond to an April 8th letter to the successor trustee is difficult, if not impossible, to interpret as a response to a May 9 QWR. Perhaps the greatest difficulty the court has in ascertaining whether Exhibit F properly responded to Plaintiffs' QWR is that the QWR is not in the record and nothing in the record gives the substance of Plaintiffs' QWR for comparison purposes. Although I view the facts in the light most favorable to Plaintiffs and deem dismissal inappropriate, I do express concern over the validity of their RESPA claim because, during oral argument, Plaintiffs claimed they were not provided the accounting they requested. However, Exhibit F appears to address such matters. (*See* Decl. Charles Boyle Ex. F at 1–2.) In any event, a motion to dismiss on this record is not the appropriate manner to address these issues.

**\*7** Secondly, based on the allegations in paragraph 26 of the complaint, I do not believe any clarification of Plaintiffs' RESPA claim is necessary, although I do note that leave would surely be granted in this instance when the ability to cure an alleged deficiency is so readily apparent.

In sum, Katherine Stolz has pled a plausible RESPA claim and Defendants' motion to dismiss should be denied on this ground. Federal question jurisdiction therefore exists in this matter and I need not address Defendants' arguments regarding the existence, or non-existence, of diversity jurisdiction and/or whether this court should exercise supplemental jurisdiction over Plaintiffs' state law claims.

### C. Preemption

Next, Defendants argue that Plaintiffs' state law claims are preempted by federal law, specifically, the Home Owners' Loan Act ("HOLA") of 1933, 12 U.S.C. §§ 1461–1468. (Defs.' Mem. at 8.) Defendants claim "[t]his Court has already reached the same conclusion regarding identical claims" in *Copeland–Turner v. Wells Fargo Bank,* No. CV–11–37–HZ, 2011 WL 2650853 (D.Or. July 6, 2011). (Defs.' Mem. at 8–9.)

#### 1. HOIA Generally

A preemption analysis generally begins "with the assumption that the historic police powers of the States were not to be superceded by the Federal Act under less that was the clear and manifest purpose of Congress." *City of Columbus v. Ours Garage & Wrecking Serv., Inc.,* 536 U.S. 424, 438, 122 S.Ct. 2226, 153 L.Ed.2d 430 (2002). However, this assumption is "not triggered when the State regulates in an area where there has been a history of significant federal presence." *United States v. Locke,* 529 U.S. 89, 108, 120 S.Ct. 1135, 146 L.Ed.2d 69 (2000). For example, "because there has been a history of significant federal presence in national banking, the presumption against preemption of state law is inapplicable." *Bank of Am. v. City and County of S.F.,* 309 F.3d 551, 559 (9th Cir.2008) (internal quotation marks omitted).

It is well settled that Congress enacted HOLA "to charter savings associations under a federal law, at a time when record numbers of home loans were in default and a staggering number of state-chartered savings associations were insolvent." *Silvas v. E*Trade Mortg. Corp.,* 514 F.3d 1001, 1004 (9th Cir.2008) The Ninth Circuit has described HOLA and its following agency regulations as a "radical and comprehensive response to the inadequacies of the existing state system, and so pervasive as to leave no room for state regulatory control." *Id.* (citation and internal quotation marks omitted).

HOLA was the vehicle through which "Congress gave the Office of Thrift Supervision ("OTS") broad authority to issue regulations governing thrifts. As the principal regulator for federal savings associations, OTS promulgated a preemption regulation in 12 C.F.R. § 560.2. That the preemption is expressed in OTS's regulation, instead of HOLA, makes no difference because federal regulations have no less preemptive effect than federal statutes." *Id.* at 1005 (internal citation and quotation marks omitted). Section 560.2(a) provides, in pertinent part, that:

> **\*8** OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal

> savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section....

*Id.* (quoting 12 C.F.R. § 560.2(a)). The types of state law preempted include, "without limitation," state law purporting to impose requirements regarding:

> \* \* \* \*

> (4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;

> \* \* \* \*

> (7) Security property, including leaseholds;

> \* \* \* \*

> (9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants;

> \* \* \* \*

> (10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages[.]

12 C.F.R. § 560.2(b)(4), (7), (9) and (10).

As recognized in *Silvas,* courts should follow the following analysis provided by OTS in evaluating whether a state law is preempted under the regulation:

> [T]he first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is

preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

*Id.* (citing OTS, Final Rule, 61 Fed.Reg. 50951, 50966–67 (Sept. 30, 1996)).

### 2. *Copeland–Turner*

As previously referenced, Defendants argue that Plaintiffs' state law claims are preempted, relying solely upon the decision rendered in *Copeland–Turner.* There, the plaintiff-borrower brought a foreclosure action against Wells Fargo Bank, N.A. ("Wells Fargo"), Gorilla Capital, Inc., and Nancy Cary ("Cary"), setting forth a single claim for conversion, based on three theories. *Copeland–Turner,* 2011 WL 2650853, at *1. Plaintiffs first theory in support of his conversion claim was based on an alleged failure of World Savings Bank, F.S.B ("WSB"), to record an assignment of its beneficial interest to Wells Fargo. *Id.* Or, as Judge Hernandez understood plaintiff's position, that ORS 86 .735(1) was violated because WSB was "the beneficiary of the Deed of Trust and to the extent Wells Fargo acted as the beneficiary in the foreclosure process, its actions were invalid because any assignment of the beneficiary interest by WSB to Wells Fargo was required to be recorded and it was not." *Id.* at *11 n. 1. This claim was deemed preempted because, "[u]nder the OTS regulation, state laws purporting to impose requirements regarding security property, regarding disclosures made in credit-related statements, and regarding processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages are preempted." *Id.* at *8 (citing 12 C.F.R. §§ 560.2(b)(7), (9), and (10)).

**\*9** Plaintiff's next theory in support of his conversion claim was based on Cary "having no authority to sign the notice of default as successor trustee because the notice of appointment of successor trustee was not recorded when the notice of

default was issued." *Id.* at *8. Judge Hernandez held that, "HOLA also precludes this claim because state laws regarding processing and servicing a mortgage are preempted under 12 U.S.C. § 560.2(b)(10)." *Id.*

Plaintiff's final theory was based on Wells Fargo breaching the Deed of Trust by foreclosing when plaintiff was not in default, having allegedly obtained an agreement to stay the foreclosure pending loan modification. *Id.* After noting a lack of clarity in the Amended Complaint, it was determined that:

> If plaintiff's claim alleges that Wells Fargo breached the Deed of Trust because it foreclosed in the absence of a default, the claim is preempted because the claim is based on an alleged representation made by Wells Fargo in the course of servicing the loan and regarding its secured property. If plaintiff's claim alleges that Wells Fargo breached a subsequent oral modification to the Deed of Trust, the same result occurs: the claim is preempted because it based on an allegation that Wells Fargo made a particular representation in the course of servicing the loan and regarding its secured property.

*Id.* at *8. [8]

### 3. Application to OneWest

Plaintiffs acknowledge that OneWest Bank is subject to HOLA, as it is a federal savings bank. (Pl.'s Resp. at 6.) Plaintiffs nevertheless argue that their state law claims are not preempted because, unlike *Copeland–Turner,* the original lender in this case, Premier, is an Oregon corporation, not a federal savings bank "subject to the HOLA regulations at the time of the initial loan." (Pl.'s Resp. at 7.) Plaintiffs cite no authority that supports the proposition that this distinction warrants departure from *Copeland–Turner's* holding. This argument is therefore assigned little weight. I would likely find the distinction to be inconsequential, however, considering that "[o]n December 7, 2007, Premier transferred its interest in Ms. Stolz's loan to IndyMac, F.S .B.," *i.e.,* Premiere transferred its interest to a federal savings bank

subject to HOLA three days after Katherine Stolz refinanced her property. [9] (RJN Ex. A at 3–4.)

Plaintiffs claim that even if the court determined that HOLA may apply, their state law claims fall under § 560.2(c)'s "Real property law" exception, which "is specifically listed as a field of state law that is NOT preempted by HOLA." [10] (Pl.'s Resp. at 8.) I find this argument unavailing since, as discussed further below, I find *Copeland–Turner* controlling and Judge Hernandez clearly disposed of this argument by stating:

> [E]ven if none of plaintiff's claims are preempted under subsection 560.2(b), I conclude that they are still preempted under subsection 560.2(c) because each of plaintiff's theories of alleged wrongdoing implicates state laws which affect lending, creating a presumption of preemption, and which directly affect Wells Fargo's lending operations in a significant way, thus having more than an incidental affect on lending operations.

> **\*10** *Copeland–Turner*, 2011 WL 2650853, at \*9. Section 560.2(c) "is [also] intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption." *Silvas*, 514 F.3d at 1005.

In *Copeland–Turner*, as in this case, the plaintiff has sought rescission of the foreclosure and an injunction. (*Id.* ¶¶ 38–44; 03:11–cv–00037–HZ (dkt. # 13) ¶ 13.) However, unlike, *Copeland–Turner*, a claim for conversion is not at issue here. Nonetheless, the case law seems to focus on the theory underlying the claims at issue, rather than what the claim may conveniently be titled. *See Andrade v. Wachovia Mortg., FSB*, No. 09–CV–0377, 2009 WL 1111182, at \*3 (S.D. Cal. April 21, 2009) (indicating that the plaintiff "sought relief under state tort, contract, and real property laws of general applicability," but nonetheless finding the claims preempted because the state laws, as applied, would regulate lending activity contemplated by § 560.2(b)). Other district courts have made similar observations. *See Watkins v. Wells Fargo Home Mort.*, 631 F.Supp.2d 776, 782 (S.D.W.Va.2008) ("Whatever the claim, a court must look at the underlying allegations proffered in support of the claim and ask on which side of the [HOLA preemption] ledger they fall.")

With this in mind, I turn to Plaintiffs' allegations and Judge Hernandez's decision in *Copeland–Turner*. First, Plaintiffs claim ORS 86.735(1) was violated because the assignment from Premier was never recorded in the County records where the Property is situated. (Compl.¶ 32.) Similarly, in *Copeland–Turner*, the plaintiff claimed ORS

86.735(1) was violated due to the failure to record an assignment. *Copeland–Turner*, 2011 WL 2650853, at \*11 n. 1. "Under the OTS regulation, state laws purporting to impose requirements regarding security property, regarding disclosures made in credit-related statements, and regarding processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages are preempted." *Id.* at \*8 (citing 12 C.F.R. §§ 560.2(b)(7), (9), and (10)). HOLA therefore preempts such a claim.

Plaintiffs claim MERS was not a beneficiary of the Deed of Trust and had no authority to assign the beneficial interest to IndyMac Federal. (Compl.¶ 33.) In *Parcay v. Shea Mortgage, Inc.*, No. CIV–F–09–1942 OWW/GSA, 2010 WL 1659369 (E.D.Cal. Apr.23, 2010), the court held that HOLA preempted the plaintiff's claim which included allegations that MERS was not a beneficiary under the trust deed and that the note was unenforceable by the loan servicer. *Id.* at \*4–8.

Plaintiffs claim that Regional, who issued the notice of default, was improperly appointed as successor trustee under Oregon's Trust Deed Act. (Compl.¶¶ 34, 35.) The plaintiff in *Copeland–Turner* also challenged the appointment and subsequent actions taken by a successor trustee in the foreclosure process. However, HOLA precludes such a claim because state laws regarding processing and servicing a mortgage are preempted under 12 U.S.C. § 560.2(b)(10).

**\*11** Next, it is alleged that OneWest "told Plaintiffs in writing that the foreclosure sale had been put on hold and there was no updated sale date. Notwithstanding such assertion and without further notice of any kind to Plaintiffs, One West" directed Regional to proceed and sell the Property. (Compl.¶ 34.) Similarly, in *Copeland–Turner*, the plaintiff's final theory was based on the bank foreclosing contrary to an agreement to postpone. Thus, as in *Copeland–Turner*, this claim is preempted because it based on an allegation that OneWest made a particular representation in the course of servicing the loan and regarding its secured property.

In sum, I agree with Defendants that HOLA preempts all of Plaintiffs' state law claims against OneWest. This decision is in accordance with several district courts who "have concluded that *HOLA preempts state law claims attacking various alleged deficiencies in the non judicial foreclosure process.*" *Copeland–Turner*, 2011 WL 2650853, at \*6 (emphasis added). Perhaps most notably, in *Guerrero v. Wells Fargo Bank N.A.*, No. CV–10–5095–VBF, 2010 U.S. Dist. LEXIS 96261 (C.D.Cal. Sept.14, 2010), the plaintiff's

brought the following state law causes of action: (1) to set aside trustee's sale; (2) to cancel trustee's deed; (3) to quiet title; (4) for accounting; (5) for estoppel; (6) breach of contract; (7) breach of the covenant of good faith and fair dealing; (8) fraud; (9) negligence; and (10) declaratory relief. *Id.* at \*7. Applying the Ninth Circuit's *Silvas* analysis, the *Guerrero* court concluded, "*[a]ll of Plaintiffs' state law claims fall within the purview of Section 560.2(b), as they attack Defendant's* disclosure and *initiation of the foreclosure process.*" *Id.* at \*9 (emphasis added).

#### 4. Application to Fannie Mae, Regional, and MERS

Defendants claim "all of plaintiffs' state law claims are preempted by federal law." (Defs.' Reply at 5.) I agree that Plaintiff's claims against OneWest are preempted. However, Plaintiffs have also brought state law claims against Fannie Mae, Regional, and MERS. There is no indication that any of these defendants are subject to HOLA. While the parties do not dispute whether OneWest is a federal savings bank,[11] their briefing does not address the impact my previous ruling would have on the state law claims against Fannie Mae, Regional, or MERS. *Compare Quintero,* 2010 WL 2618729, at \*7 (finding a claim not preempted because there was no indication whether a particular defendant qualified as a federal savings association for purposes of HOLA), *with Brown v. Wachovia Mortg. Corp.,* No. CV 11–05062 DDP, 2011 WL 4352524, at \*1–3 (C.D.Cal. Sept.16, 2011) (granting MERS and Wells Fargo's motion to dismiss after finding plaintiffs' state law claims brought against both defendants preempted under HOLA and § 560.2(b)(10)). Because the parties have not provided guidance on this issue, I will address the merits of the state law claims to the extent possible.

#### D. The Merits of Plaintiff's State Law Claims

**\*12** Even assuming, *arguendo,* Plaintiffs' state law claims against OneWest were not preempted, a majority of Plaintiffs' state law claims are fundamentally flawed.

#### 1. Plaintiffs' MERS–Related Claims

Resolution of Plaintiffs' MERS-related claims requires this court to decide an issue that has divided this district court, that is, whether MERS meets the Oregon statutory definition of "beneficiary," *i.e.,* if MERS and/or its successors have standing to foreclose. Defendants understandably direct the court to Judge Mosman's decision in *Beyer v. Bank of Am.,* No. CV 10–523–MO, 2011 WL 3359938 (D.Or. Aug.2, 2011)

and Judge Stewart's decision in *James v. Recontrust Co.,* 2011 WL 3841558 (D.Or. Aug.26, 2011). Conversely, Plaintiffs direct the court to Judge Panner's decision in *Hooker v. Nw. Tr. Servs.,* No. 10–3111, 2011 WL 2119103 (D.Or. May 25, 2011) and Bankruptcy Judge Alley's decision in *McCoy v. BNC Mortg., Inc.,* 446 B.R. 453 (Bankr.D.Or.2011).

Plaintiffs' claim that, "[f]or every *Beyer v. Bank of Am.* there is a *Hooker v. NW Trustee Services.*" (Pl.'s Resp. at 8.) While I cannot fault Plaintiffs for relying on *Hooker,* there are four additional judges in the District of Oregon who have definitively ruled that MERS is a proper beneficiary under Oregon law. *See Burgett v. Mortg. Elec. Registration Sys., Inc.,* No. 09–6244–HO, 2010 WL 4282105, at \*2–3 (D.Oran. Oct.20, 2010) (Hogan, J.)[12]; *see also Bertrand v. Sun Trust Mortg., Inc.,* No. 09–857–JO, 2011 WL 1113421, at \*4–5 (D.Or. Mar.3, 2011) (Jones, J.); *see also Richard v. Deutsche Bank Nat. Trust Co.,* 2011 WL 2650735, at \*2–3 (D.Or. July 6, 2011) (Acosta & Hernandez, JJ.). Moreover, "[t]he majority of Oregon trial courts similarly have concluded that because MERS is named in the trust deed as the beneficiary, it is a beneficiary under" Oregon's statutory definition. *James,* 2011 WL 3841558, at \*8 (collecting cases).

Here, the Deed of Trust names MERS as the beneficiary, "acting solely as nominee for Lender and Lender's successors and assigns." (Compl. Ex. 3 at 1.) In accordance with the weight of authority on this issue, I find Plaintiffs' claim that, "MERS was not a beneficiary of the DEED OF TRUST and had no authority to assign the beneficial interest in the DEED OF TRUST to IndyMac Federal" lacks merit under Oregon law. Accordingly, because the trust deed names MERS as the beneficiary and MERS has the right to receive the benefit of the trust deed, I find that MERS was a proper beneficiary under the trust deed.

Next, Plaintiffs argue that ORS 86.735(1) was violated because no assignment from Premier, the original lender, to its successor, IndyMac, was recorded. (Pl.'s Resp. at 8–9; Compl. ¶¶ 10, 32; RJN Ex. A at 3–4.) I reject this argument. Judge Stewart thoroughly analyzed and disposed of the same argument in *James,* explaining:

> **Nothing in Oregon law requires recording each assignment of the trust deed when the underlying note is transferred.** The only recording requirement is found in **ORS 86.735(1)** for all "assignments of the trust deed by the trustee or the beneficiary" before a non judicial foreclosure by advertisement and sale. However, this

statute **by its express terms only requires the recording of assignments by the parties who have a recorded interest in the real property providing security, that is, 'the trustee or the beneficiary.'**

**\*13** Although a transfer or assignment of the note transfers the security interest for the protection of the beneficiary, it is not the same act as 'an assignment of the trust deed by the trustee or the beneficiary' contemplated by **ORS 86.735(1).** That statute **makes no mention of recording a transfer of the promissory note, [as] opposed to the deed of trust.** A promissory note is not a conveyance of real property and is not recorded or even susceptible to recordation. ORS 93.610, 93.630, 205.130. Recording interests in a promissory note would not serve the purpose of the recording statutes because the promissory note does not contain a description of the property, does not transfer title to real property, and does not affect title.

Plaintiffs do not allege that either the Trustee (Fidelity National) or the Beneficiary (MERS) made any assignment of the Deed of Trust prior to the assignment by MERS to BACHLS [the lender's successor]. Until that point in time, **MERS remained the Beneficiary to act for the Lender (NWNG) and its successors and assigns, even if the note was sold to an assignee or acquired by a successor. By recording the assignment of the Deed of Trust from MERS to BACHLS, BACHLS then acquired the power to act as the Beneficiary, rendering valid its subsequent appointment of RTC as the successor trustee.**

*James,* 2011 WL 3841558, at *11 (emphasis added).

Similarly, in this case, as in *James,* the Assignment of the Deed of Trust from MERS to the lender's (Premier) successor (IndyMac Federal) was recorded. (Compl. ¶ 20; RJN Ex. B at 1–2.) In *James,* the lender had transferred the note to Countrywide Bank, who was actually the predecessor in interest to BACHLS. *Id.* at *2. In this case, Premier transferred its interest to IndyMac, who was succeeded by IndyMac Federal. MERS then recorded its assignment to IndyMac Federal, just as MERS recorded its assignment to BACHLS in *James.* Moreover, Plaintiffs do not claim that the Trustee (Transnation Title)[13] or the Beneficiary (MERS) made any assignment of the Deed of Trust prior to the recording. Thus, *James* is dispositive and Premier was not required to record its assignment to IndyMac.

## 2. The Validity of Regional's Appointment as Successor Trustee

Plaintiffs next contend that on February 10, 2009, IndyMac Federal signed a document appointing Regional as successor trustee. (Compl ¶ 21; RJN Ex. C at 1–2.) However, Plaintiffs claim that on February 10, 2009, IndyMac Federal had no authority to appoint a successor trustee because the assignment of the Deed of Trust from MERS to IndyMac Federal did not occur until February 11, 2009. (Compl. (120; RJN Ex. B at 1–2.)

Although signed on February 10, 2009, the Appointment of Successor Trustee has a notation stating, " *Effective 2/11/2009." (RJN Ex. C at 2.) Both the Appointment of Successor Trustee and Assignment of Deed of Trust were recorded in Clackamas County on February 20, 2009. (Compl ¶¶ 20–21; RJN Ex. B, C.) Plaintiffs claim Defendants' motion to dismiss should be denied because this "break[ ] in the chain ... require[s] further investigation and evidence", but cite no authority in support of this proposition. (Pl.'s Resp. at 9.)

**\*14** Defendants, on the other hand, claim "Oregon law has long recognized the enforceability of documents executed on one day but made effective as of a later day." (Pl.'s Reply at 7.) Plaintiffs cite a bevy of cases which found this to be true in other contexts. (Pl.'s Reply at 7.)

The United States District Court for the District of Idaho recently addressed this very issue in *Russell v. OneWest Bank FSB,* No. 1:11–cv–00222–BLW, 2011 5025236 (D.Idaho Oct. 20, 2011) (B. Lynn Winmill, C.J.). There, IndyMac Federal signed a document appointing Pioneer Lender Trustee Services, LLC ("Pioneer") as successor trustee on August 4, 2010. *Id.* at *1. On August 5, 2010, MERS assigned its beneficial interest to IndyMac Federal. *Id.* Both documents were recorded on August 8, 2010. *Id.* Plaintiffs alleged that IndyMac Federal appointed the successor trustee, Pioneer, "the day *before* MERS assigned its interest in the Deed of Trust to IndyMac Federal." *Id.* at *5. "Plaintiffs therefore allege[d] that IndyMac Federal *had no authority to appoint a successor trustee on the day they attempted to do so.*" *Id.* (emphasis added). *Russell* held "the legally relevant date for determining the validity of IndyMac Federal's appointment of a successor trustee is the date on which the appointment was recorded[,]" because under Idaho Code § 45–1504(2),

> [upon] the election of the beneficiary to replace the trustee, the beneficiary shall appoint a trustee or a successor trustee. **Upon recording the appointment of a successor trustee** in each county in which the deed of trust is recorded, **the successor trustee shall be vested with all powers of an original trustee.**

*Id.* at *6 (emphasis added). Based on this language, Russell made the pertinent observation that "the beneficiary vests the authority of trusteeship through the act of recording." *Id.* "By August 8, 2010, the date on which IndyMac Federal recorded the appointment of successor trustee, MERS had assigned its interest as beneficiary back to IndyMac Federal." *Id. Russell* therefore concluded there was "no doubt" IndyMac Federal was the proper party to vest Pioneer with trustee powers on the date they actually assumed trusteeship. *Id.* Further, *Russell* appropriately observed "that a successor trustee is only a nominee without any legal authority until the beneficiary records the appointment of the successor." *Id.* at n. 2.

Not only are the facts in *Russell* identical to this case, but Oregon also has a provision similar to that of Idaho Code § 45–1504(2). Specifically, ORS 86.790(3) provides, in pertinent part, that,

> [a]t any time after the trust deed is executed the beneficiary may appoint in writing another qualified trustee. **If the appointment of the successor trustee is recorded** in the mortgage records of the county or counties in which the trust deed is recorded, **the successor trustee shall be vested with all the powers of the original trustee.**

**\*15** OR.REV.STAT. § 86.790(3) (2009) (emphasis added). Under this language, the beneficiary vests the authority of trusteeship through the act of recording. By February 20, 2009, the date on which IndyMac Federal recorded the appointment of a successor trustee, MERS assigned

its interest as beneficiary back to IndyMac Federal. Thus, IndyMac Federal was the proper party to vest Regional with trustee powers on the date Regional actually assumed trusteeship. The premature nomination of Regional on February 10, 2011, does not defeat validity of the recorded transfer of authority on February 20, 2011.

Accordingly, this portion of the Complaint should be dismissed because it fails under the *Twombly–Iqbal* standard.

### 3. Whether Defendants Were Barred From Holding the June 14th Foreclosure Sale

Plaintiffs' final contention revolves around OneWest's representation that "the foreclosure sale scheduled for May 13, 2011 is currently on hold. There is no updated sale date, but the foreclosure is on hold until your inquiries have been responded to." (Compl. Ex. 4 at 1; Compl. ¶¶ 25, 34–35, 39.) According to Defendants, such a claim fails because the foreclosure was originally set for April 13, 2011. "On that date, however, OneWest decided to postpone the sale for a month by public proclamation, setting a new sale date of May 13." (Def.'s Mem. at 13.) Defendants rely on ORS 86.755(2), which states, "[t]he trustee ... may postpone the sale for one or more periods totaling not more than 180 days from the original sale date, giving notice of each adjournment by public proclamation made at the time and place set for sale."

Plaintiffs counter by arguing, "[c]onspicuously absent from the statute is an authorization under Oregon law for a trustee to provide false and misleading information to a borrower and then hide beyond the 'public proclamation' shield. Such a defense is improper, immoral and assaults the senses of justice." (Pl.'s Resp. at 9.) According to Plaintiffs, "Defendants were not silent regarding whether or not a sale would be held, Defendants affirmatively stated that the sale was 'on hold until your inquiries have been responded to.' " (Pl.'s Resp. at 9–10.)

Plaintiffs also argue that, even if this court did not find a violation of ORS 86.755(2), "the act of holding [a] sale was a violation of RESPA. As stated above, RESPA requires that a servicer provide a substantive response to a qualified written request within sixty days and 'before taking any action with respect to the inquiry of the borrower.' " (Pl.'s Resp. at 10) (quoting 12 U.S.C. § 2605(e)(2)). Plaintiffs' RESPA claim, however, does not provide a basis to invalidate a foreclosure or render a foreclosure wrongful. *See Falcocchia v. Saxon Mortg., Inc.,* 709 F.Supp.2d 860, 871 (E.D.Cal.2010) ( "[A]lthough the court finds that plaintiffs have stated a

claim under section 5 of RESPA, 12 U.S.C. § 2605, this claim does not provide a basis for injunctive relief. 12 U.S.C. § 2605(f)(1). The RESPA claim therefore cannot invalidate a foreclosure or render the foreclosure wrongful." (citing *Amodo v. Homeq Servicing Corp.,* No. CIV. S–10–177, 2010 WL 347730, *2 (E.D.Cal. Jan.22, 2010))).

**\*16** As to any alleged violation of ORS 86.775(2), I find *Sawyer v. ReconTrust Co., N.A.,* No. CV–11–292–ST, 2011 WL 2619517 (D.Or. May 27, 2011), instructive. There, a foreclosure was originally scheduled for January 20, 2010. *Id.* at \*2. The borrower contacted Bank of America Home Loans regarding loan modification and was assured that "there would be no foreclosure sale while her loan modification application was pending." *Id.* The January 20, 2010 foreclosure sale was postponed and on March 17, 2010, the property was sold. *Id.* The borrower sued claiming, amongst other things, that the required foreclosure notices were inadequate because the sale date listed was January 20, 2010, but the actual sale occurred March 17, 2010. *Id.* at \*3. Judge Stewart held that,

> the sale was postponed until March 17, 2010, but this did not require an additional written notice. Oregon law allows the trustee to 'postpone the sale for one or more periods totaling not more than 180 days from the original sale date, giving notice of each adjournment by public proclamation made at the time and place set for sale.' ORS 86.755(2). **Absent an allegation that no such public proclamation was made, the sale could be postponed and held later than the initial date set in the Notice of Sale.**

*Id.* at \*4 (emphasis added).

Here, as in *Sawyer,* postponing the foreclosure sale did not require an additional written notice to Plaintiffs. Plaintiffs claim that they did not receive notice of when the postponed sale would occur, however, this does not negate the possibility that Defendants gave notice of the adjournment by public proclamation on April 13, 2011, "at the time and place set for sale." Nor do Plaintiffs claim otherwise. Accordingly,

although I construe the allegations in the light most favorable to the non-moving party, Plaintiffs have not sufficiently pled a violation of ORS 86.755(2).

Taking Plaintiffs' allegation as true as we must on a motion to dismiss, it is troubling to have the law allow a lender to allegedly tell a borrower a foreclosure sale is postponed and won't happen without further notice to the borrower and then have the lender allegedly deliver that notice solely by announcing the new sale date by proclamation at the time of original sale when the borrower is not present in reliance on the advice from the lender that the sale will not occur then. While it appears this situation may be tolerated by existing law, it begs for a correction from the legislature. That being said, on the existing state of the law and these allegations, I hold my nose while I recommend that I can see no currently viable claim that Defendants violated the provisions of Oregon law governing trust deed foreclosure sales.

### Conclusion

For the foregoing reasons, Defendants' motion (dkt.# 10) to dismiss Plaintiffs' complaint in its entirety should be GRANTED in part and DENIED in part.

### Scheduling Order

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due February 1, 2012. If no objections are filed, then the Findings and Recommendation will go under advisement on that date. If objections are filed, then a response is due February 20, 2012. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

### All Citations

Not Reported in F.Supp.2d, 2012 WL 135424

---

Footnotes

1    Regional joined, in its entirety, OneWest, MERS, and Fannie Mae's motion to dismiss (Doc. # 16)

2    Unless otherwise indicated, the following facts are taken from Plaintiffs' complaint filed on June 23, 2011.

3    The Deed of Trust "purports to allow the Promissory Note, together with the Security Instrument, to be sold in whole or in part one or more times without prior notice to Plaintiffs." (Compl .¶ 15.)

4    "In July 2008, IndyMac failed, and the [Federal Deposit Insurance Corporation ("FDIC") ] transferred IndyMac's assets, including [Katherine] Stolz's loan, to a newly created entity run by the FDIC: IndyMac Federal[.]" (Defs.' Mem. at 2.)

5    John Cockrell also informed Plaintiff's attorney that he had updated Katherine Stolz's "file to add you as an authorized party." (Compl. Ex. 4 at 1.)

6    Presumably, the QWR was sent from Plaintiffs' lawyers. (*See* Defs.' Mem. at 3) (noting that Plaintiffs' assert a claim under RESPA based on OneWest's failure to acknowledge a QWR sent "from plaintiffs' lawyer.")

7    Edward Stolz is the son of Katherine Stolz, who lives in the Property with his wife, Terrea Stolz. (Compl.¶ 7.)

8    Judge Hernandez also rejected any argument that "preemption of Oregon's trust deed statutes" implicates the Tenth Amendment. *Id.* at *10. In this case, aside from the RESPA claim, Plaintiffs' claims are based solely on alleged violations of Oregon's Trust Deed Act. (Compl.¶¶ 30–44.)

9    In *Quintero Family Trust v. OneWest Bank, F.S.B.,* 2010 WL 2618729 (S.D.Cal. June 25, 2010), the plaintiffs obtained a loan from Clarion Mortgage Capital, Inc., a Colorado Corporation. *Id.* at *1. The loan was immediately assigned to MERS and two years later the loan was assigned from MERS to IndyMac Federal. *Id.* The court nevertheless determined that the plaintiffs' state law claims brought against OneWest were preempted under HOLA. *Id.* at *6–7.

10    Section 560.2(c) provides that the types of state laws "not preempted to the extent that they only incidently affect the lending operations of Federal savings associations" include, contract, commercial, real property and tort law.

11    (Pl.'s Resp. at 6.)

12    *See also McDaniel v. BAC Home Loans Servicing, LP,* No. 10–6143–HO, 2011 WL 1261387, at *3 (D.Or. Mar. 31, 2011) (Hogan, J.) (noting that in *Burgett* this court found that MERS may be designated as a beneficiary on a Deed of Trust, therefore, "plaintiff's signature on the Deed of Trust explicitly authorizes MERS to act as a beneficiary with the right to foreclose.")

13    (Compl. Ex. 3 at 1.)

---

**End of Document**                                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.