**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**ANA FARIA ET AL**

**VS** **CA 19-CV-427**

**OTORO, LLC**
**CITIZENS BANK, N.A.**

**MEMORANDUM OF LAW IN SUPPORT OF OBJECTION TO MOTION TO DISMISS OF CITIZENS BANK, N.A.**

This matter is before the Court on the Motion to Dismiss filed by Citizens Bank, N.A. This matter involves a Mortgage("Exhibit A") and a Promissory Note ("Exhibit B") executed by decedent, Apolonia Morais, who died intestate on June 10, 2014. A redacted copy of her death certificate is attached as Exhibit C. The Decedent at the time of her death had no spouse and four children, namely the Plaintiffs, Marta Faria, Ana Faria, Filipe Faria and Catarina Travassos. These four persons are the only heirs at law of Apolonia Morais. Pursuant to R.I.G.L 33-1-1, this property passed by operation of law to her children, at her death since she was intestate. This statute provides:

**RIGL 33-1-1. Real estate descending by intestacy to children or descendants, parents, or brothers and sisters.**

Whenever any person having title to any real estate of inheritance shall die intestate as to such estate, it shall descend and pass in equal portions to his or her kindred, in the following course:

(1) First to the intestate's children or their descendants, if there are any.

(2) Second, if there be no children nor their descendants, then to the intestate's parents in equal shares, or to the surviving parent.

(3) Third, if there is no parent, then to the intestate's brothers and sisters, and their descendants.

This statute is the basis for the assertion that the property in question passed to the Plaintiffs on their mother's death. In an abundance of caution, the Plaintiffs filed for Administration of their mother's estate. To the extent that this is deemed necessary, they are prepared to file an amended complaint to include the Estate.

There is no dispute that the property passed at their mother's death to them by the Rules of Descent as the only children of an unmarried mother. On April 13, 2014, the decedent executed a mortgage to Citizens Bank of Rhode Island, attached as Exhibit D. On that date, she along with Jose Faria, her companion, but not her spouse, also executed a promissory note to Citizens Bank of Rhode Island, attached as Exhibit E. Mr. Faria did not execute the mortgage, nor did he own the property. Pursuant to the terms of the mortgage, particularly paragraph 10, the heirs at law of the decedent obtained the benefits and incurred the obligations of the mortgage. This section states:

**The covenants and agreement herein contained shall bind, and the rights hereunder shall inure to the respective successors and assigns of Lender and Mortgagor, subject to the provisions of Paragraph 15 hereof.**

Thus the heirs at law of the decedent, as her successors, were bound by the terms of the mortgage signed by their mother and received the rights granted to their mother by the mortgage as her successors. This was a property in which the value of the property is approximately $273,000.00, and the mortgage obligation as of December 27, 2017 was less than $43,000.00. Thus the Plaintiffs possessed a valid property interest in the real estate, subject to the mortgage. Under the terms of the mortgage, they received the rights of the mortgage, specifically the right to be provided default notices pursuant to paragraph 16 and 17 of the mortgage. The Rhode Island Supreme Court has not had to interpret this statute of descent on many occasions due to its clear language.

In *Jerome v. Probate Court of Barrington*, 922 A.2d 119 (2007) the Supreme Court recited the law of intestacy and the distribution of real property in an intestate situation, such as this case:

Under the law of this state, when an owner of real property dies intestate, his or her surviving spouse is entitled to a life estate in the property, and the remainder interest passes to his or her heirs at law — in this case, Jerome's sisters and nieces.[2] However, in accordance with G.L. 1956 § 33-25-5, a surviving spouse may petition the Probate Court to fix the present value of the life estate and order it sold, with payment of the present value to the surviving spouse and the difference to the remaindermen.

The Court did not state that the property may pass or may pass after proceeding to Probate Court. Instead the widow, if any, receives a life estate by operation of law and the children receive an interest in the property at the intestate's death. Thus under this clear and succinct statute, the Plaintiffs obtained the real estate when their mother died.

In *Fleet National Bank v. Hunt*, 944 A.2d 846, 854 (2008), the Supreme Court analyzed a trust with limiting provisions and stated:

Heirs are those upon whom the law casts the descent immediately upon the death of the ancestor. In the eyes of the law only such are or can be heirs." *Id.* at 20, 30 A.2d at 842-43.

In *Cahill v Antonelli*, 380 A. 2d 936 (1978), the Supreme Court in reviewing the facts of the case noted that when the decedent, Pasquale Antonelli died intestate:

Upon the death of Pasquale Antonelli, Sr., the father of plaintiff and grandfather of defendants, title to nine lots of real estate, including the family homestead, passed by intestacy to his three children.

Subsequently these children conveyed the property to their mother and litigation subsequently ensued. The Supreme Court noted that the ownership of the property passed by intestacy to the children.

Likewise in *Votolato v. McCaul*, 96 A. 2d 329 (1953) the Court noted the status of real estate formerly belonging to the complainant's wife:

Apparently Patrick McCaull had no property except an undivided one-half interest and a life estate by the curtesy in certain real estate in Providence which he and his wife held as tenants in common. Since his wife had died

intestate, her half interest, subject to her husband's curtesy, had descended to respondent and his sister Mary Agnes McCaull as her sole heirs at law. On July 9, 1942 respondent received from his father a quitclaim deed of all his right, title and interest in and to such real estate. The respondent did not record the deed at that time but left it with the attorney who had drawn it.

In all these cases, the clear and concise language of the statute by the Supreme Court was that property passes by operation of law and the rules of descent when there is no will. Only when there is a will, is it necessary to proceed to probate court to facilitate the testate's bequeathing of property by will, which is contrary to the Rules of Descent, which apply solely in the event of intestacy.

All the heirs did not receive notices of the default, which was sent to their father and to the Estate of their mother. Thus the failure to notify the heirs who were not living in the property and who were known by Citizens as children resulted in noncompliance with their property rights acquired at their mother's death.

The Defendant suggests that only the decedent was entitled to the contractual protections of the mortgage. They will if necessary file an amended complaint with Marta Faria as Administratrix if the Court regards that to be necessary. To suggest that they have no standing or rights however flies in the face of the statute and established Rhode Island law.

**THERE IS A PLAUSIBLE ALLEGATION THAT CITIZENS BREACHED THE COVENANT OF GOOD FAITH AND DEALING**

Prior to the July 11, 2018 recording of the foreclosure deed in this case, referenced as Exhibit H, Citizens Bank had been made aware of the defects in this purported foreclosure sale. It held the deed for two months and then decided to record this deed to the other defendant, Otoro, LLC despite the defects in the process. This conduct violates the Covenant of Good Faith and Dealings inherent in all contracts. *Dovenmuehle v. Antonelli,* 790 A. 2d 1113 (2002) The Plaintiffs were successors of the decedent as specified by the mortgage and possessed all rights under the mortgage. The decision of Citizens to record the foreclosure deed despite the minimum amount of the obligation contrasted with the value of the property establishes a plausible allegation of this breach of contract claim for punitive damages. It was made aware of the problems with the foreclosure and then proceeded to compound its wrong by recording .

**CITIZENS BANK DID NOT STRICTLY COMPLY WITH THE TERMS OF THE MORTGAGE**

After Apolonia Morais died, the mortgage went into arrears. On December 27, 2017, the Law Firm of Shectman Halperin Savage, LLP, claiming to act on behalf of Citizens Bank, N.A, the successor to Citizens Bank of Rhode Island, mailed what it claimed was a default letter to the

Estate of Apolonia M. Morais, attached as Exhibit F. This letter stated that the Note was in default and then stated:

Under the terms of the Loan Documents you may cure the default by paying the amounts set forth below on or before January 26, 2018 (“the cure date”). Please be advised only certified funds will be accepted.

| | |
|---|---|
| Monthly payments due and owing for January 2017 through December 2017 | $7897.68 |
| Late Charges | $140.00 |
| Escrow Advance | $10,287.94 |
| Mtg Rec Corp Adv | $399.99 |
| Legal Fees and Expenses | $786.16 |
| TOTAL DUE | $19,510.78 |

If the default is not cured by the Cure Date, the balance of the Note may be deemed accelerated without further demand, and the Lender may proceed with the foreclosure of the Mortgage. The Lender may also be entitled to all reasonable costs, expenses and fees incurred by the Lender in pursuing its remedies including, but not limited to, reasonable attorney’s fees.
As of the date of this letter, the Mortgage secures the amount of $42,768.84. Because of interest, late charge and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence if you pay the amount shown above, an adjustment may be necessary after we receive you check, in which event we will inform you before depositing the check for collection. At the present rate in effect, interest on the Note accrues at $4.29 per day. The rate of interest on the Note may vary under the terms thereof.

Notwithstanding any acceleration, pursuant to the terms of the Mortgage, You have the right to reinstate your loan by paying to us all sums which would then be due under your Mortgage had no acceleration occurred plus our attorneys’ fees and other reasonable costs of proceedings which have been incurred as of the date of such payment. You have the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and sale.

However this letter did not comply with the terms of the mortgage.

Paragraph 16 of the mortgage states:

Acceleration; Remedies. Upon Mortgagor's breach of any covenants or agreement of Mortgagor in this Mortgage, including the covenants to pay when due any such sums secured by this Mortgage, Lender prior to acceleration shall give notice to Mortgagor as provided in Paragraph 11 hereof specifying:

(1) the breach: (2) the action required to cure such breach;(**a date**, not less than 10 days from the date the notice is mailed to the Mortgagor, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage and sale of the property. The notice shall further inform Mortgagor of the right to reinstate after acceleration and the right to bring a Court action to assert the nonexistence of a default or any other defense of Mortgagor to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, **may declare** all of the sums secured by this Mortgage to be immediately due and payable without further demand and Lender may invoke the STATUTORY POWER OF SALE and any other remedies permitted by applicable law. (emphasis added).

It did not reference a specific date for the heirs at law of Apolonia Morais to cure the arrearage. Rather the letter stated that the arrearage had to be cured on or before the cure date or be deemed accelerated. Thus there was no specific date to cure as the phrase on or before includes every date from the date of the letter until January 26, 2018. The notice did not specify a particular date, by which the cure amount had to be paid or face possible acceleration by Citizens and sale of the mortgaged premises. No person could determine from the letter the actual date on which the cure had to occur. This letter was deceptive because it did not specify an exact date to cure, only a range of dates from the date of the letter until January 26, 2018. Thus there was not strict compliance with the terms of the mortgage as

required by Rhode Island as developed in regard to contracts and notices, which are conditions precedent to the exercise of certain contractual rights.

Rhode Island contract law is quite specific in this regard. There was not strict compliance with the terms of the contract, which was a condition precedent at indicated in the case of *Cinq-Mars v. Travelers Ins. Co.*, 218 A.2d 467, 471 (R.I. 1966). In that case, the Court interpreted an insurance contract and held:

It is, of course accepted law that compliance with such a policy condition is a condition precedent to an insurer's liability. Sherwood Ice Co. v. U.S. Casualty Co., 40 R.I. 268; 8 Appleman, Insurance Law & Practice, § 4732, p. 7.

In the case of *Commerce Park Village Green v. Vito Vitone*, KD-2-11-1029 (Superior Court, September 22, 2016), Justice Rubine reviewed a notice provision as a criterial for an eviction:

The Tenant claims that the Landlord was required to serve the Tenant with a "proper move out or vacate notice" before a complaint for eviction may commence, as well as before the holdover provision of the Lease may be invoked. Defective notice under the statute is jurisdictional, and this Court has no jurisdiction to consider a complaint absent strict compliance with the notice provisions of the statute. See, *Hedco Ltd. v. Blanchette*, 763 A.2d 639 (R.I. 2000); see also, *Abbenante v. Giampietro*, 75 R.I. 349, 66 A.2d 501 (1949). The purpose of notice is to advise the tenant of the reason for eviction, and provides an opportunity to cure prior to the commencement of an eviction action. Proper notice also affords the tenant a reasonable opportunity to secure alternative housing before an eviction action is commenced.

In the case of *Haviland v. Simmons*, 45 A.3d 1246 (R.I., 2012), the Rhode Island Supreme Court decided that if there was any ambiguity in a contract, that such issue had to be resolved at trial:

Where an ambiguity exists in a provision of a contractual 1259*1259 document, the construction of that provision is a question of fact."*Fryzel v. Domestic Credit Corp.*, 120 R.I. 92, 98, 385 A.2d 663, 666 (1978) (citing*Geary v. Hoffman*, 98 R.I. 413, 417, 204 A.2d 302, 305 (1964); *Russolino v. A. F. Rotelli & Sons*, 85 R.I. 160, 163, 128 A.2d 337, 340 (1957)). We are of the opinion that, although an express agreement was entered into, based on our review of the contract in its entirety, an ambiguity exists concerning the terms of the agreement relative to the standard under which Haviland's reappointment is to be evaluated. *Haviland*, at pp. 1258-1259

The language in the mortgage, which was a condition precedent was not complied with by the Plaintiff.

In the case of *Abbenante v. Giampietro*, 75 R.I. 349, 353, 66 A.2d 501, 503 (1949), the Supreme Court review a notice case in which a specific date was not provided for a Notice to Quit. A question existed as whether the tenant had to quit on the next day after his tenancy terminated on February 29, 1949. The Court held:

We are unable to agree with this contention. If plaintiffs were demanding the premises freed of the existing tenancy at $25 a month defendant was entitled to an **unequivocal** notice to quit on the day next succeeding the last day of such tenancy.

Thus the Court held that in a Notice case, for a notice to be effective it had to be unequivocal as to the time of compliance, which did not occur in this case.

In the case of *Hedco v. Blanchette*, 763 A. 2d 639 (R.I., 2000), the Rhode Island Supreme Court upheld this principle when it held:

In considering the sufficiency of a termination notice, we have repeatedly stated [**8] that "the important factor is whether the statute has been complied with and not whether the tenant has been misled by the notice given." *Tate v. Peter Charles Reynolds, Inc.*, 622 A.2d 449, 450 (R.I. 1993) (per curiam) (citing *De Luca v. Cinima*, 72 R.I. 346, 350, 51 A.2d 369, 370-71 (1947)). Although a tenant may be clearly apprised of the termination of his lease, we have determined a notice to be fatally defective when it ordered the tenant to quit on the last day of his term instead of the first day following it, *Industrial Trade Unions of America v. Metayer*, 69 R.I. 199, 203, 32 A.2d 789, 790-91 (1943), or when it did not clearly indicate that an agent was acting on behalf of the landlord. *Tate*, 622 A.2d at 450.

The Court held:

Because service of a valid and proper notice to quit is a condition precedent to maintaining a trespass and ejectment action, plaintiff failed to properly invoke the jurisdiction of the court. *See Abbenante v. Giampietro*, 75 R.I. 349, 353, 66 A.2d 501, 503 (1949) (holding that [*HN8*] tenancy is not terminated without proper notice, regardless of landlord's intention).

Thus the Court held that in a Notice case, for a notice to be effective it had to be unequivocal as to the time of compliance, which did not occur in this case. After all the use of on or before January 26, 2018 is not an unequivocal date for paragraph 16(2) purposes.

Judge McConnell in *Martins v. Federal Housing Finance Agency*, No. 15-cv-235-M-LDA followed established Rhode Island law and held that strict compliance was required for paragraph 22 notices just like any other contracts. *Martins* involved a Judicial Foreclosure in Federal Court. The Court held:

In Rhode Island, if a contract contains a notice requirement, then a court construes that notice requirement as a condition precedent, which requires strict compliance. *Cinq-Mars v. Travelers Ins. Co.*, 218 A.2d 467, 471 (R.I. 1966) (requirement of written notice for a claim by the insured is a "condition precedent to the insurer's liability."); *Ins. Co. of N. Am. v. Kayser-Roth Corp.*, No. C.A. PC 92-5248, 1999 WL 81366, at *22 (R.I. Super. July 29, 1999) (stating that notice requirements are a condition precedent in insurance contracts); *Dyer v. Ryder Student Transp. Servs., Inc.*, No. 98-4489, 1999 WL 395417, at *2 (R.I. Super. June 7, 1999) ("If notice by a tenant is not given to a landlord in accordance with the terms of the lease, the right to renew has been lost or has lapsed. . . .").

Furthermore, Paragraph 22 of the Mortgage is a condition precedent, which requires strict compliance, when a mortgagee seeks acceleration and foreclosure. *In re Demers*,511 B.R. 233, 238, 239 (Bankr. D.R.I. 2014) (holding that a notice omitting a borrower's right to go to court to contest acceleration was fatal, and that even if notice to go to court was ambiguously provided, that ambiguity must be construed against the drafter).

*Martins* was quite specific:

Defendants now seek to foreclose on the Property through an order from this Court, instead of non-judicially. The change of process for the foreclosure, however, does not alleviate compliance with the agreement they made in the Mortgage, including the Paragraph 22 notice requirements. Despite the fact that the judicial foreclosure statute, R.I. GEN. LAWS § 34-11-22, does not expressly require compliance with the Mortgage document, the Rhode Island Supreme Court has stated that "the right to exercise the power of sale in a mortgage is derived from contract, not statute," and that the power of sale "does not exist independently" from the mortgage agreement. *Bucci v.*

*Lehman Bros. Bank, FSB*, 68 A.3d 1069, 1084, 1085 (R.I. 2013). Simply put, if a mortgagee agrees to give a certain notice before a foreclosure, it does not matter whether it is a judicial or non-judicial foreclosure. The mortgagee must do that which it agreed. Thus, this Court must review compliance with Paragraph 22 of the Mortgage as a matter of contract law, irrespective of whether Defendants are seeking judicial or non-judicial foreclosure.

The Court granted Summary Judgment to the homeowner stating:

There is no genuine issue as to any material fact concerning whether Fannie Mae complied with the Mortgage Agreement. It did not. At the least, the notices failed, on their face, to specify an exact date by which Ms. Martins could cure default, that she could reinstate the loan after acceleration, and that she has a right to bring court action. With respect to these elements of the notice, there is no plausible way that a jury could find for Defendants, and the notice is indeed material, as it determines whether Defendants have complied with the Mortgage Agreement.

Defendant makes the same argument in this case as in *Martins*, particularly as to

the date of the cure. .

Judge Finkle of the Rhode Island Bankruptcy Court in the case of *In Re Demers*, 511 B.R. 233 (Bankr R.I., 2014) analyzed Rhode Island law and found that strict compliance with paragraph 22 of a mortgage was a condition precedent to acceleration and sale. In *Demers*, the Court considered a Proof of Claim filed by Wells Fargo through its servicing name of America's Servicing Company. A notice was sent to the Debtor/mortgagor prior to a foreclosure, which was stopped by the Debtor's Chapter 13 bankruptcy filing. The Court found that strict compliance with

Paragraph 22 of the mortgage was a condition precedent to acceleration and exercise of the statutory power of sale under Rhode Island law. The Court held:

> Reading the Note and Mortgage as an integrated contract, I find the loan agreement between Ms. Demers and ASC is unambiguous and ASC's compliance with Mtg. Paragraph 22 is a condition precedent to its right to accelerate the Note and pursue its remedy of foreclosure against the Property. That paragraph, in plain and ordinary terms, states that prior to accelerating the Note ASC is required to give Ms. Demers notice of "the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale." The Notice without question did not inform Ms. Demers that she had a right to bring an action in court. Quite clearly the Notice did not comply with this prerequisite.
>
> Even so, if I were to determine that the loan agreement read as a whole is "reasonably and clearly susceptible of more than one interpretation" and potentially ambiguous based upon an arguable inconsistency among Note Paragraph 7 and Mtg. Paragraphs 14 and 22, I would still conclude that under the loan agreement ASC is not entitled to recover the Disputed Charges. Any ambiguity in a contract "must be construed against the drafter of the document," in this case ASC (or its predecessor-in-interest). *Haviland*, 45 A.3d at 1260 ( *quoting* *Fryzel*, 385 A.2d at 666-67). Furthermore, "virtually every contract contains an implied covenant of good faith and fair dealing between the parties." *Dovenmuehle Mortg., Inc. v. Antonelli*, 790 A.2d 1113, 1115 (R.I.2002). I see no reason this loan transaction should be exempted from this general rule. Indeed, in a transaction such as this between an individual homebuyer and a mortgage lender, there is an imbalance of power such that the more powerful and sophisticated party, ASC, must be held to this standard of good faith and fair dealing.

The Court analyzed the purpose of the provision as a condition and held that:

Notice provisions in mortgage documents usually require default notices to contain specific information, which serves a very clear and specific purpose; it informs mortgagors of their rights so that they may act to protect them. Therefore, when the terms of the note and mortgage require notice of default, proper notice is a condition precedent to an action for foreclosure. For unexplained reasons, the Notice sent by ASC upon Ms. Demers' 2012 default deviated from these prior notices and omitted this contractually mandated notice provision. This defect resulted in the invalidity of the foreclosure process ASC pursued and precludes recovery of its associated costs.

The Massachusetts Supreme Judicial Court analyzed this type of notice in exactly the same manner. In the case of *Pinti v. Emigrant Mortgage Company*, No. SJC-11742 (Ma., July 17, 2015), the Court invalidated a foreclosure where there was not strict compliance with the provisions of paragraph 22. The Court commenced by viewing the extraordinary power that a mortgagee possessed when non-judicial foreclosure commenced with no judicial intervention:

This court has recently reemphasized the point that in light of "the substantial power that the statutory scheme affords to a [mortgagee] to foreclose without immediate judicial oversight, we adhere to the familiar rule that `one who sells under a power [of sale] must follow strictly its terms'"; the failure to do so results in "no valid execution of the power, and the sale is wholly void." Ibanez, 458 Mass. at 646, quoting Moore v. Dick, 187 Mass. 207, 211 (1905). See Pryor v. Baker, 133 Mass. 459, 460 (1882)("The exercise of a power to sell by a mortgagee is always carefully watched, and is to be exercised with careful regard to the interests of the mortgagor"). This is true with respect to terms that are connected to the power of sale contained in the mortgage instrument itself, [10] and to terms contained in § 21, the statutory power of sale, or in one of "the statutes relating to the foreclosure of mortgages by the exercise of a power of sale" to which § 21 refers.

It then proceeded to analyze the nature of the Paragraph 22 notice:
Insofar as the plaintiffs' mortgage is concerned, paragraph 22 begins by requiring notice of default to be given prior to any acceleration of the sums secured by the mortgage; then specifically prescribes the contents of the notice of default; and then provides that, if the default is not cured before the date specified in the notice, the mortgagee may invoke the statutory power of sale (as well as pursue other remedies). As the paragraph is written, therefore, the sending of the prescribed notice of default is essentially a prerequisite to use of the mortgage's power of sale, because the power of sale may be invoked only if the default is not cured within the time specified in the notice of default. In this regard, we agree with the plaintiffs that the "terms of the mortgage" with which strict compliance is required — both as a matter of common law under this court's decisions and under § 21 [15] — include not only the provisions in paragraph 22 relating to the foreclosure sale itself, but also the provisions requiring and prescribing the preforeclosure notice of default. See Foster, Hall & Adams Co., 213 Mass. at 322-324.

The Court then concluded by holding:

> this court's decisions about mortgage terms indicate that by structure and content, the notice of default required to be given under paragraph 22 is integrally connected, and operates as a prerequisite, to the proper exercise of the mortgage instrument's power of sale. Emigrant's strict compliance with the notice of default required by paragraph 22 was necessary in order for the foreclosure sale to be valid; Emigrant's failure to strictly comply rendered the sale void.

All these cases support Plaintiffs' position that the notice was void and defective because it did not strictly comply with the terms of the mortgage. The language of the purported default notice is defective on its face. There are two relevant portions of paragraph 16. The first is 16(2) which requires language which indicates: **a date,** not less than 10 days from the date the notice is given to Borrower, by which the default must be cured. The second

is 16(3) which states that failure to cure the default **on or before the date specified** in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. This notice used the paragraph 16(3) provision instead of the paragraph 16(2) provision. As a result, there was no specific date as required by paragraph 16(2) and the on or before provision of 16(2) had no specific date to reference from paragraph 16(2). On or before January 26, 2018 is not a specific date to cure which could be referenced in 16(3). Effectively this notice stated that the Plaintiffs had to cure at any date before January 26, 2018, which included nine different dates within ten days of the letter. Thus this letter was defective on those grounds alone, rendering this notice void. This letter could not satisfy the strict compliance standard of *Martin* and the existing Rhode Island case law. Citizens Bank in this letter deceptively told the Plaintiffs that if the mortgage were not cured that the loan would be deemed accelerated. There is no such provision in the mortgage. Thus acceleration and sale pursuant to the statutory power of sale could not occur because the precondition to utilize the statutory power of sale was not me.

A similar notice was sent to a homeowner in *Federal National Mortgage Association v. Deschaine*, 70 A.3d 230, 2 (Me., 2017). In *Deschaine*, the Maine Supreme Court reviewed a notice sent by the same

law firm which sent this notice, Shechtman Halperin Savage, LLP. The notice in *Deschaine* stated if the default were not cured :

within 35 days of receipt of this notice, the balance of the [n]ote may be deemed accelerated without further demand, and the [l]ender may proceed with foreclosure of the [m]ortgage."

Federal National Mortgage Association, to avoid Res Judicata, argued that this this letter did not constitute acceleration because the mortgage merely provided this option to the lender. The Maine Supreme Court held:

When, as here, a note contains an optional acceleration clause, some affirmative action is required by the note holder to provide notice to the borrower 239*239 that the holder has exercised that option. *See, e.g.*, *Hassler v. Account Brokers of Larimer Cty., Inc.*, 274 P.3d 547, 553-54 (Colo. 2012); *Reano v. U.S. Bank, Nat'l Ass'n*, 191 So.3d 959, 961 (Fla. Dist. Ct. App. 2016); *Bischoff v. Cook*, 118 Hawai'i 154, 185 P.3d 902, 911 n.8 (App. 2008); *First Fed. Say. & Loan Ass'n of Gary v. Stone*, 467 N.E.2d 1226, 1232 (Ind. Ct. App. 1984).

In *Hasler* The Colorado Supreme Court also held that acceleration was an optional procedure which required an additional notice. The Court held:

In the case of an acceleration provision exercisable at the option of the [creditor], the [creditor] must perform some clear, unequivocal affirmative act evidencing his intention to take advantage of the accelerating provision." *Moss v. McDonald*, 772 P.2d 626, 628 (Colo.App.1988). Colorado appellate courts have only considered this issue on two prior occasions, and in each instance the actions of the creditor were held not to amount to an unequivocal act of acceleration. In *Moss v. McDonald*, a panel of the court of appeals held that, despite the fact that that case involved an acceleration provision that by its own terms allowed for the debt to be accelerated "without demand or notice," some affirmative act was still

required on the part of the creditor to put the debtor on 554*554 notice that the debt had been accelerated. 772 P.2d at 628. Following the same reasoning, another panel of the court of appeals held in *Bauer Development Co. v. Nu-West, Inc.* that this unequivocal notice requirement was not satisfied by two letters sent by a creditor threatening foreclosure if the debtor did not make payment on the outstanding balance of the installments that had already become due. 757 P.2d 1149, 1150 (Colo.App. 1988). *Hassler* at p. 554.

Similarly, the Colorado Court of Appeals in *Moss v McDonald*, 772 P.2d 626 (Co. App., 1988)in a foreclosure case held that acceleration required specific language to advise the mortgagor of the acceleration of the note stating:

In the case of an acceleration provision exercisable at the option of the obligee, the obligee must perform some clear, unequivocal affirmative act evidencing his intention to take advantage of the accelerating provision. *Bauer Development Co. v. Nu-West, Inc.*, 757 P.2d 1149 (Colo.App.1988). The McDonalds do not contest this principle. They take the position that they did not need to take any action to exercise the option to accelerate because the note provides: "[I]t shall not be necessary for the holders to declare the same due, but they may proceed to collect the same as if the whole was due and payable by its terms." We disagree. Some positive action is essential, even though the amount is to become due at the option of the holder "without demand or notice." *Moresi v. Far West Services, Inc.*, 291 F.Supp. 586 (D.Hawaii 1968); *Carmichael v. Rice*, 49 N.M. 114, 158 P.2d 290 (1945).

In *Bank of Hawaii v. Kunimoto*, 984 P. 2d 1253(Ha App, 1999), the Hawaii Court of Appeals also indicated that an optional acceleration provision in a promissory note required additional action by the holder of the note if the provision was optional rather than automatic:

The provision in the First and Fifth Notes quoted above is an "optional" as opposed to an "automatic" acceleration clause. Under an automatic

acceleration clause, "the entire principal becomes automatically due without the necessity of a declaration of the right or an election on the part of the holder [of the note]." Annotation, *What is Essential to Exercise of Option to Accelerate Maturity of Bill or Note,* 5 A.L.R.2d 968 [hereinafter Annot. *Exercise of Option to Accelerate,* 5 A.L.R.2d], § 1, at 969 (1949). In contrast, under an optional acceleration clause, the holder is given a choice of whether or not to accelerate the maturity date of the note. Therefore, as a general rule, a party exercising its option to accelerate must communicate its election to accelerate:

[A] provision in a bill or note accelerating the maturity thereof on nonpayment of interest or instalments, or other default, at the option of the holder, requires some affirmative action on the part of the holder, evidencing his [or her] election to take advantage of the accelerating provision, and ... until such action has been taken the provision has no operation. *In other words, some positive action on the part of the holder is an essential condition for the exercise of his [or her] option and a mere mental intention to declare the full amount due is not sufficient.*

The Texas Supreme Court undertook the same analysis in the Holy Cross of Church of God v. Wolf, 44 S.W.3d 562 (Tx, 2001). In Wolf, the Court again indicated that two letters were required, a Notice of Intent to Accelerate and a Notice of Acceleration:

If a note or deed of trust secured by real property contains an optional acceleration clause, default does not ipso facto start limitations running on the note. Rather, the action accrues only when the holder actually exercises its option to accelerate. *Hammann v. H.J. McMullen & Co.*, 122 Tex. 476, 62 S.W.2d 59, 61 (1933); *Curtis v. Speck*, 130 S.W.2d 348, 351 (Tex. Civ.App.-Galveston 1939, writ ref'd). Effective acceleration requires two acts: (1) notice of intent to accelerate, and (2) notice of acceleration. *See* *Shumway v. Horizon Credit Corp.*, 801 S.W.2d 890, 892 (Tex. 1991); *Ogden v. Gibraltar Sav. Ass'n*, 640 S.W.2d 232, 233 (Tex.1982). Both notices must be "clear and unequivocal." *Shumway*, 801 S.W.2d at 893. Even when a noteholder has accelerated a note upon default, the holder can abandon acceleration if the holder continues to accept payments 567*567 without exacting any remedies available to it upon declared maturity. *Wolf*, pp. 566-7.

These cases have been cited to demonstrate that the default letter's assertion that failure to cure would result in automatic acceleration deceived the Plaintiffs into thinking that the loan would be automatically accelerated by this letter and that they could not make any payments on this loan after this letter. This deceptive language thus did not strictly comply with the terms of the mortgage and rendered this letter void.

It also did not state that failure to cure on or before the date may result in acceleration and sale. Instead, it stated that "the balance of the Note may be deemed accelerated without further demand, **and the Lender may proceed with the foreclosure of the Mortgage**". This language did not mention sale of the property by the exercise of the statutory power of sale. Since foreclosure appears nowhere in paragraph 16, the failure to reference acceleration and sale as an option, constituted deceptive language which suggested to Plaintiffs that a foreclosure action would occur, not the exercise of the statutory power of sale. Since the letter did not strictly comply with the mortgage, then the statutory power of sale could not be exercised.

This provision was analyzed by Magistrate Judge Sullivan in *Aube v. Selene Finance, LP* CA 1-37WES (December 27, 2019). In this case, the Court found the default notice to be sufficiently compliant with paragraph

22, because of the inclusion of the following language relating to the failure to cure:

> Failure to cure the default on or before the date specified may result in acceleration of the sums secured by the Security Instrument, sale of the property and/or foreclosure by judicial proceeding and sale of the property.

The language in Aube is quite different from the language in this case and thus the Aube analysis provides support for the position of the Plaintiff regarding this notice. Since this portion of the letter did not strictly comply with the terms of the mortgage the subsequent exercise of the statutory power of sale and the foreclosure deed must also be set aside.

**THE NOTICE DID NOT STRICTLY COMPLY WITH THE MORTGAGE BY STATING AN INACCURATE AMOUNT OF THE ARREARAGE**

This notice also did not state a specific amount due to be cured by a particular date. Instead it stated:

> If the default is not cured by December 31, 2017, the January 2018 loan payment must also be included.

.

The letter also did not strictly comply with the terms of the mortgage since it did not state the exact amount of the arrearage. The calculation by Citizens that the default consisted of monthly payments due for January 1, 2017 through December, 2017 in the total amount of $7897.68 or $650.14 per month along with late charges of $140.00. However this letter included

inaccurate charges of $19,287.94 for a disputed escrow advance, which was never identified. This letter conflicts with the letter dated February 21, 2017, attached as Exhibit F, which stated that as of February 21, 2014, the total past due was $1141.40. The Plaintiffs never received any notification of the basis for the escrow advance nor for the Mtgr Rec Corp Adv of $399.00 nor the charge for Legal Fees and Expenses of $786.16, despite the fact that the letter dated December 27, 2017 was the first communication from an attorney. Thus the total amount of charges of $19,510.78 were not accurate and in fact the letter confirmed that the letter was not a fixed amount and that

"if you pay the amount shown above, an adjustment may be necessary after we received your check, in which event we will inform you before depositing the check for collection".

Thus this letter acknowledged that it was not accurate and could not be relied on by the Plaintiffs. It did not comply *Martins*, *Dan Harry* or *Thompson*. The addition of other charges for charges assessed after the date of the letter, under the terms of the mortgage could not be a component of the default letter. Such subsequent charges could not be added on to the original arrearage, since they were not specified with an actual amount and they were not subject to the ten day right to cure and could not be the basis of an acceleration of the note. The notice stated that the mortgagor had to

rely on the law firm to obtain the exact amount due. None of these requirements were included in the terms of the mortgage and as a result there was no strict compliance. Under *Martins*, no prejudice needed to be demonstrated by mortgagor and thus the purported default notice was defective.

As indicated by Exhibit H, on November 30, 2017 Citizens Bank returned a $700.00 check to Jose Faria asserting that the foreclosure action will continue and that the amount was insufficient to reinstate the loan. However no notice of default had been sent at this time. Thus the failure to accept the check resulted in another $10.00 late fee charged to the mortgage loan account. Thus the letter's assertion that the Defendant owed $19,510.78 was also not accurate and as a result there was no strict compliance with the terms of the mortgage. Failure to provide an accurate default notice renders a Default Notice defective since the condition precedent to acceleration and sale, judicial or nonjudicial is an accurate stating of the amount in default. Plaintiffs alleged that the purported arrearage included multiple charges not permitted by the terms of the mortgage and included multiple inaccurate charges, which were included in the purported default notice. This amount, claimed to be the arrearage, included multiple unreasonable and unnecessary charges, which were

charged by Citizens to the mortgage loan account contrary to the terms of the mortgage. They have also alleged that since 2017, Citizens has charged the mortgage loan account a monthly fee of $14.00 for purported property preservation fees, despite the fact that the decedent's partner and daughter live in the property. Citizens One is aware of this fact and is aware that the property is not vacant. They have alleged that these fees included in the purported default amount were neither reasonable nor necessary. These are plausible allegations which mitigate against a motion to dismiss. Plaintiffs request the opportunity to file an amended complaint to raise these issues more specifically.

The Defendants have cited the case of *Viera v. Bayview Loan Servicing*. However this case does not contain a similar default letter. In Viera, the letter stated that the mortgage arrearage had to be cured by September 7, 2017 as indicated in Exhibit I. That letter did state that failure to cure the arrearage by that date may result in acceleration and sale. Thus Viera has no applicability to this default letter which erroneously stated that the mortgage would be deemed accelerated.

**THE LOAN WAS NEVER ACCELERATED**

After the purported default letter was mailed, Citizens One mailed to the decedent's address and Jose Faria, who was not a property owner and

was not a mortgagor, statements dated December 27, 2017, January 29, 2018, February 27, 2018 and March 27, 2018. In none of these statements did Citizens One or Citizens indicate that the mortgage loan had been accelerated. The amount stated as due on the December 27, 2017 periodic statement was $10,587.78.The amount stated as due on the January 29, 2018 periodic statement was $12,762.88. The amount stated as due on the February 27, 2018 periodic statement was $14,937.98.The amount stated as due on the March 27, 2018 periodic statement was $14,937.98. Thus on the face of the mortgage statements, the mortgage loan was never accelerated as each of these statements indicated that the mortgage loan had not been accelerated by Citizens or Citizens One. Furthermore, at no time after December 27, 2017 did Plaintiffs or any person or entity receive any letter which indicated that the mortgage loan was accelerated. Without an acceleration, the statutory power of sale could not be exercised as indicated by paragraph 16. The mortgage had to be accelerated in order for the exercise of the statutory power of sale. Under paragraph 16 the letter had to be sent prior to acceleration notifying the Borrower or her successors in interest that the loan may be accelerated and the exercise of the statutory power of sale may be exercised. Paragraph 17 also indicated that reinstatement could occur, after acceleration, up to five days prior to the

sale. Thus acceleration was necessary for a sale to occur. Such did not occur in this case.

**THE NOTICE DID NOT STRICTLY COMPLY WITH PARAGRAPH 16 AND PARAGRAPH 17 UNDER *THOMPSON* AND DECEPTIVELY FAILED TO INDICATE THAT THE DEFENDANT HAD UNTIL FIVE DAYS BEFORE A SALE DATE TO CURE**

In view of the strict compliance requirement for all conditions precedent to foreclosure, *Thompson* is clearly applicable to Rhode Island Law. In *Thompson*, the First Circuit held:

The mortgage terms for which Massachusetts courts demand strict compliance include the provisions in paragraph 22 requiring and prescribing the pre-foreclosure default notice.

you can still avoid foreclosure by paying the total past-due amount before a foreclosure sale takes place"—could mislead the Thompsons into thinking that they could wait until a few days before the sale to tender the required payment.

Since Rhode Island law as established by case law in this District, also imposes strict compliance, any analysis in *Thompson*, applies to Rhode Island mortgage cases. Thus the Court's analysis of the interplay between paragraph 16 and paragraph 17 of the mortgage clearly apply to this case. Paragraph 17 clearly states that a borrower has up to five days prior to the sale date to reinstate the mortgage loan, which had been accelerated by curing the arrearage. In *Thompson*, the default letter had deceptively advised the mortgagee about the right to reinstate without providing the

mortgagee the information that this right ended five days before the sale. Here a similar notice, which omitted the paragraph 17 limitation was given to the Plaintiff. However this notice, despite offering the Plaintiffs the opportunity to reinstate after acceleration and providing a phone number of the law firm call to get the exact amount due to reinstate after acceleration, deceptively failed to tell the Plaintiffs that the right to reinstate would end five days before a sale. *Thompson* made it clear that when interpreting strict compliance with contractual condition precedents to acceleration and sale, the Court did not require a showing of prejudice on the part of the mortgagee. In *Thompson*, the First Circuit specifically held:

> Paragraph 22 demands strict compliance, regardless of the existence, or not, of prejudice to a particular mortgagor

It was not necessary for the mortgagor in *Thompson* to demonstrate that he was able to pay the arrearage, but only to allege that deception occurred in the default notice and that paragraph 22 was not strictly complied with by the mortgagee.

**THE RESPA COUNTS APPLY TO THE PLAINTIFFS**

Plaintiffs mailed three Notices of Error to which Citizens refused to respond pursuant to the real Estate Settlement and Procedures Act. These Notices of Error are attached to this Memorandum as Exhibit J. Citizens,

through its attorney, refused to correct the errors stating that the Plaintiffs lacked standing because as heirs at law, they lacked standing to bring a RESPA claim. Thus Plaintiffs filed Count III for the failure to provide the Life of the Loan Transactional History, Count IV for failure to correct an error by not responding to the Notice of Error for failure to provide the document requested and Count V for failure to correct an error by rescinding the foreclosure. However Citizens and its attorneys have ignored the amended version of Regulation X, 12 C.F.R. 1024.36(i), which was effective April 19, 2018. This amended section provides:

**(i)** ***Potential successors in interest.***

**(1)** With respect to any written request from a person that indicates that the person may be a successor in interest and that includes the name of the transferor borrower from whom the person received an ownership interest and information that enables the servicer to identify the mortgage loan account, a servicer shall respond by providing the potential successor in interest with a written description of the documents the servicer reasonably requires to confirm the person's identity and ownership interest in the property and contact information, including a telephone number, for further assistance. With respect to the written request, a servicer shall treat the potential successor in interest as a borrower for purposes of the requirements of paragraphs (c) through (g) of this section.

**(2)** If a written request under paragraph (i)(1) of this section does not provide sufficient information to enable the servicer to identify the documents the servicer reasonably requires to confirm the person's identity and ownership interest in the property, the servicer may provide a response that includes examples of documents typically accepted to establish identity and ownership interest in a property; indicates that the person may obtain a more individualized description of required

documents by providing additional information; specifies what additional information is required to enable the servicer to identify the required documents; and provides contact information, including a telephone number, for further assistance. A servicer's response under this paragraph (i)(2) must otherwise comply with the requirements of paragraph (i)(1). Notwithstanding paragraph (f)(1)(i) of this section, if a potential successor in interest subsequently provides orally or in writing the required information specified by the servicer pursuant to this paragraph (i)(2), the servicer must treat the new information, together with the original request, as a new, non-duplicative request under paragraph (i)(1), received as of the date the required information was received, and must respond accordingly.

**(3)** In responding to a request under paragraph (i)(1) of this section prior to confirmation, the servicer is not required to provide any information other than the information specified in paragraphs (i)(1) and (2) of this section. In responding to a written request under paragraph (i)(1) that requests other information, the servicer must indicate that the potential successor in interest may resubmit any request for information once confirmed as a successor in interest.

**(4)** If a servicer has established an address that a borrower must use to request information pursuant to paragraph (b) of this section, a servicer must comply with the requirements of paragraph (i)(1) of this section only for requests received at the established address.

Citizens did not comply with the amended regulation. It stated that the Plaintiffs were not borrowers, just as it does in its Memorandum of law. It did not provide the Plaintiffs' attorney a list of documents to confirm the identity of the Plaintiffs. It did not comply with its obligations under the regulation and did not treat the potential successor in interest as a borrower for purposes of the requirements of paragraphs (c) through (g) of 1024.36.

The allegations of the Plaintiffs in the complaint regarding the RESPA

Counts are deemed to be true for purposes of a Motion to Dismiss. Defendant does not dispute the facts relating to the failure to comply, but only states that they were not borrowers. However effective April 19, 2018, they were borrowers and were entitled to a response for the information requested as if they were the decedent. They specifically alleged in paragraphs 74, 96 and 120 that they were successor in interest to the decedent mortgagor pursuant to the provisions of 12 C.F.R. 1024.36(i). These allegations must be accepted as true since the Regulation in effect after April 19, 2018 when the Requests for Information and Notices of Error were mailed to Citizens allowed them to be treated as borrowers..

The official interpretation of this Regulation by the Consumer Financial Protection Bureau indicates that Citizens was required to comply:

1. **Requests that indicate that the person may be a successor in interest.** Section 1024.36(i) requires a servicer to respond to certain written requests received from a person that indicate the person may be a successor in interest. Examples of written requests that indicate that the person may be a successor in interest include, without limitation, a written statement from a person other than a borrower indicating that there has been a transfer of ownership or of an ownership interest in the property to the person or that a borrower has been divorced, legally separated, or died, or a written loss mitigation application received from a person other than a borrower.

2. **Time limits.** A servicer must respond to a request under § 1024.36(i) not later than the time limits set forth in § 1024.36(d)(2). Servicers subject to § 1024.38(b)(1)(vi)(B) must also maintain policies and procedures reasonably designed to ensure that, upon receiving notice of the existence of a potential successor in interest, the servicer can promptly determine the documents the servicer reasonably requires to confirm that person's identity and ownership interest in the property and promptly provide to the potential successor in interest a description of those documents and how the person may submit a written

request under § 1024.36(i) (including the appropriate address). Depending on the facts and circumstances of the request, responding promptly may require a servicer to respond more quickly than the time limits established in § 1024.36(d)(2).

3. **Potential successor in interest's representative.** An information request pursuant to § 1024.36(i) is submitted by a potential successor in interest if the information request is submitted by an agent of the potential successor in interest. A servicer may undertake reasonable procedures to determine if a person that claims to be an agent of a potential successor in interest has authority from the potential successor in interest to act on the potential successor in interest's behalf, for example, by requiring that a person that claims to be an agent of the potential successor in interest provide documentation from the potential successor in interest stating that the purported agent is acting on the potential successor in interest's behalf. Upon receipt of such documentation, the servicer shall treat the request for information as having been submitted by the potential successor in interest.

Citizens was aware prior to the requests that the Plaintiffs were heirs at law as indicated by the attached notices of error, which indicate the Citizens mailed notices of sale to the Plaintiffs as heirs at law. Thus there was no need for the Plaintiffs to provide proof of their relationship to the decedent because Citizens was already aware of this fact. Thus there is a factual dispute as to whether the Plaintiffs were successor in interest to the decedent precluding the granting of the Motion to Dismiss. The cases cited by Defendant are not applicable because they were decided before Regulation X went into effect on January 10, 2014 and well before April 19, 2018. Thus their analysis is inapplicable to this case.

For these reasons the Motion to Dismiss must be denied.

**ANA FARIA**
**PHILIPE FARIA**
**MARTA FARIA**
**CATARINA TRAVASSOS**

February 13, 2020

By their Attorney

/s/ John B. Ennis

JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
Jbelaw75@gmail.com

CERTIFICATION OF SERVICE

I certify that I emailed a copy of this Memorandum to Michael Hagopian and James Atchison on February 13, 2020

/s/ John B. Ennis