UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| Ana Faria, Philipe Faria, Marta Faria, Catarina Travasso as successors in interest and heirs at law of Apolonia Morais Marta Faria in her capacity as administratrix of the Estate of Apolonia Morais <br><br> Plaintiffs <br><br> v. <br><br> Citizens Bank, N.A, Citizens Bank, N.A. d/b/a Citizens One Home Loans Otoro, LLC <br><br> Defendants | Case No.: 1:19-cv-00427-MSM-LDA |

## **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**

Plaintiffs, individually, as the heirs at law of Apolonia Morais, filed a complaint in the

seeking to enforce certain provisions of a mortgage contract, invalidate an otherwise valid

foreclosure sale and claim relief for alleged violations of the Real Estate Settlement Procedures

Act ("RESPA").  Defendants, Citizens Bank, N.A. and Citizens Bank, N.A. d/b/a Citizens One

Home Loans ("Citizens"), filed a motion to dismiss Plaintiffs' Complaint pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure on the ground that the Complaint failed to

state a claim upon which relief can be granted.  Pursuant to an Order of the Court, Plaintiffs were directed to file a Motion to Amend their Complaint.  In derogation of the Court Order, Plaintiffs filed an Amended Complaint without filing a motion to amend.  The Court subsequently granted Plaintiff's motion to amend/correct.  Citizens now renews its motion to dismiss as the Amended Complaint fails to state a claim upon which relief at law may be granted.

**STANDARD**

This Court must determine whether the Amended Complaint states any claim upon which relief may be granted.  Fed.R.Civ.P. 12(b)(6).  Plaintiffs' claims must allege plausible entitlement to relief.  Cook v. Gates, 528 F.3d 42, 48 (1st Cir. 2008).  To meet that burden, the Amended Complaint must contain sufficient factual matters, which support a claim that is plausible on its face.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell A. Corp. v. Twombly, 550 US. 544, 570 (2007)).  While the Court must accept as true the factual assertions set forth in the Amended Complaint, there must be more than "mere conclusory statements" to survive a motion to dismiss.  Twombly at 555.  Threadbare recitals of the elements of a cause of action or mere conclusory statements are not sufficient to satisfy the pleading requirements. Ashcroft at 678.  Therefore, bald assertions and conclusory allegations must be discarded by the Court.  Morales v. Chadbourne, 996 F.Supp.2d 19, 26 (DCRI 2014).

The standard is more than probability of success, but rather whether the claim is plausible.  Twombly at 570.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of

'entitlement to relief." <u>Mayale-Eke v. Merrill Lynch</u>, 754 F.Supp.2d 372, 375 (DCRI 2010) (citing <u>Twombly</u> at 557).

Allegations that are linked and dependent upon documents, such documents may be considered by the Court in reviewing a motion to dismiss. <u>Diva's Inc. v City of Bangor</u>, 411 F. 3d 30, 38 (1st Cir. 2005).  This would include a review of the documents annexed to the Amended Complaint.

## ARGUMENT

### I.    Plaintiffs lack standing to raise the claims set forth in the Amended Complaint

Citizens challenged the standing of the Plaintiffs to file the original Complaint.  In consideration of Citizens' motion, the Court denied the motion to dismiss without prejudice and directed the Plaintiffs to file a motion to amend the Complaint, with a copy of a proposed Amended Complaint to address the issue of standing.  Plaintiffs appear to have addressed the issue of standing by stating that Marta Faria was appointed as administratrix of the Estate of Apolonia Morais.  No facts were plead as to when the probate was filed or when the alleged administratrix was appointed.   No exhibits were annexed to the Amended Complaint to support any of the broad allegations claimed therein.  It is also interesting to note that the documents annexed to the Amended Complaint in support of Counts IV-VIII do not mention that Marta Faria was appointed as administratrix of the Estate of Apolonia Morais. See Exhibits E-J of the Amended Complaint.

The federal court is bound to act within its statutory grant of subject matter jurisdiction. Therefore, since standing is jurisdictional, the court must ensure that it has proper subject

matter jurisdiction before proceeding to adjudicate the claims set forth in a complaint.  Smith v.
GTE Corp, 236 F.3d 1292, 1299 (11th Cir. 2011); Osediacz v. Cranston, 414 F.3d 136, 139 (1st
Cir. 2005) (standing is an indispensable component of the federal court jurisdiction).  Prior to
considering the merits of a case, a litigant must have standing.  Rogers v. Mulholland, 858
F.Supp.2d 213, 221 (D.R.I. 2012).  A plaintiff is required to demonstrate that his or her claim is
based on their own rights and not on the rights of any third party.  Cosajay v. Mortgage
Electronic Registration Systems, Inc., 980 F.Supp.2d 238, 241 (D.R.I. 2013).  The burden is on
the plaintiff to establish standing to bring an action.  Correa v. BAC Home Loans Servicing,
LP, 853 F.Supp.2d 1203, 1206 (S.D.FL 2012).  To meet this burden, the plaintiff must show
that (1) he or she suffered an injury in fact; (2) there is a causal connection between the injury
and the defendant's alleged conduct; and (3) it is likely (more than speculative) that the injury
can be redressed by the Court.  Lujan v. Defenders of Wildlife, 504 US 555, 561 (1992).

 Plaintiffs cannot meet their burden demonstrating standing to bring the claims in any of
the eight Counts set forth in their Amended Complaint.  None of the Plaintiffs, in their
individual capacity as heirs of Apolonia Morais have standing to pursue claims made on behalf
of themselves or Apolonia Morais.  Taking the facts within the four corners of the Amended
Complaint as true, Apolonia Morais executed a note and mortgage to Citizens Bank of Rhode
Island on April 13, 2004.  See paragraph 5 of Plaintiffs' Amended Complaint.  There is no
allegation that any of the Plaintiffs, as heirs, were a signatory to the note or mortgage or were
otherwise in privity of contract with the Defendant, Citizens Bank of Rhode Island.   To the
contrary, the Amended Complaint affirmatively states that only Apolonia Morais and Jose Faria

were signatories on the note.  See paragraph 5 of Plaintiffs' Amended Complaint.  While the
Plaintiffs aver that they are heirs off Apolonia Morais, the Amended Complaint fails to state a
claim that Plaintiffs are legally entitled to relief at law.

With respect to Marta Faria's claim of standing as the purported administratrix of the
Estate of Apolonia Morais, there are no allegations that any claim was filed on behalf of
Citizens against the Estate.  Once again, the Amended Complaint is missing significant facts
surrounding the probate estate and the purported appointment of Ms. Faria as administratrix.
The details of when the estate was filed and when a personal representative was appointed are
significant elements necessary for standing to raise claims before this Court.

In its original motion to dismiss, Citizens' questioned the standing of Marta Faria to
serve as a Plaintiff in the pending complaint.  In support of its response, Plaintiffs relied on a
document outside of the pleadings.  Plaintiffs annexed Ex 1 to their objection to Citizens'
motion to dismiss.  A copy of that document is annexed hereto.  This document is outside of the
pleadings.  While documents outside of the pleadings should not be considered by the Court as
part of a Rule 12(b) motion, there is a limited exception for documents which are factually
linked to and dependent upon a document and are not challenged.  Diva's Inc. v. City of
Bangor, 411 F.3d 30, 38 (1st Cir. 2005).  This document should have been provided as part of
the Amended Complaint.  Notwithstanding, it appears that the Plaintiffs sought an extension of
time to file their motion to amend the Complaint in an attempt to cure their lack of standing.  It
appears that the appointment of Marta Faria as administratrix of the Estate of Apolonia Morais
was obtained during this extension of time and only a few days prior to the filing of the

Amended Complaint.  In this case, Marta Faria was not the administratrix at the time the

original complaint was filed and she did not have standing to file the original complaint.  Even

though she may now have standing to file the Amended Complaint, she lacks standing to raise

the claims set forth therein that relate to the timing of the specific allegations.

Plaintiffs now assert that Marta Faria was appointed as administratrix of the Estate of

Apolonia Morais on December 9, 2020.  Based on this document, it would appear that Marta

Faria was not the administratrix at the time of the foreclosure, the mailing of the RESPA

requests or at the time the original complaint was filed.  See Exhibits E-J of the Amended

Complaint.  Not only was Marta Faria not the personal representative of the Estate of Apolonia

Morais at the time of the foreclosure, there appears to have been no Estate open as of that time

or any time related to the allegations set forth in the Amended Complaint.

Notwithstanding the recent appointment of Ms. Faria as administratrix, Plaintiffs lack

standing to contest the mortgage contract.  Plaintiffs failed to state a claim upon which relief

may be granted, they must establish that there was a binding and enforceable contact.  The

Rhode Island Supreme Court recently addressed the issue of whether an owner of property

through devise was entitled to notice of a foreclosure sale.  The Court held that only a

mortgagor is entitled to a notice of foreclosure.  Allegra v. Deutsche Bank National Trust

Company as trustee, 225 A.3d 244, 246 (RI 2020).  Plaintiffs attempt to bootstrap perceived

rights to challenge the foreclosure process with their alleged status as successor in interest.

This argument is misplaced.  In Allegra, the Court held that the trust listed as devisee in the

6

borrower's will was not a mortgagor and thus was not entitled to notice of the foreclosure sale[1].
Id.  Notice to the mortgagors (although deceased) at their last known address was sufficient.  In
this case, the mortgagors are also deceased, and no personal representative was appointed prior
to the foreclosure sale.  Now, Plaintiffs seek to claim standing by obtaining an appointment of
an administratrix post foreclosure sale.

### a.   There is no breach of contract

In order for the Plaintiffs to state a claim upon which relief may be granted, they must
establish that there was a binding and enforceable contact.  The elements for a breach of
contract claim in Rhode Island are: (1) that an agreement existed between the parties, (2) that
there was a breach of the agreement and (3) there was a causal connection between the breach
injury claimed and (4) the breach caused damages.  Barkan v. Dunkin' Donuts, Inc., 627 F.3d
34, 39 (1st Cir. 2010).  The allegations must contain sufficient facts to establish that there was
an express or implied contractual agreement between Citizens Bank of Rhode Island and
Plaintiffs.  Pickett v. Ditech Financial, LLC, 322 F.Supp.3d 287, 293 (D.R.I. 2018).  As
previously stated, the only parties to the note and mortgage contracts were Citizens Bank of
Rhode Island and Apolonia Morais.

Pursuant to the terms of the mortgage, the lender was contractually obligated to send a
notice of default to the Borrower, namely Apolonia Morais.  However, she was deceased as of
June 10, 2014.  See paragraph 1 of the Amended Complaint.  However, Plaintiffs concede that

---

[1] The Court looked to RIGL §34-27-4(b) which required notice to mortgagors not owners.  Plaintiffs allege in
paragraph 123-125 that the foreclosure sale is defective because the successors in interest were not given notice
of the foreclosure sale.  These allegations are in derogation and against the holding in Allegra.

a default notice dated December 27, 2017 was sent to the Estate of Apolonia M. Morais.  See paragraph 25 of the Amended Complaint.  According to the terms of the Mortgage, the only party entitled to a notice of default was the Mortgagor, which was Apolonia Morais.  See paragraph 21 of the Mortgage.  Plaintiffs fail to establish that the terms of the Mortgage entitled them to a notice to cure.  The lack of privity of contract and breach of any provision of the Mortgage contract are sufficient grounds to deny any relief based on contract.

While the Amended Complaint does not allege a cause of action on behalf of the heirs, it attempts to raise a claim on behalf of Apolonia Morais.  Plaintiffs referred to the December 27, 2017 default notice in the Amended Complaint and annexed same as Exhibit D.  Pursuant to the terms of the mortgage, the notice to cure shall specify:

1) The breach or default

2) The action required to cure the breach or default;

3) A date, not less than 10 days from the date of the notice, by which the breach or default must be cured;

4) A statement that the failure to cure the breach or default within the time proscribed may result in an acceleration of the debt and sale of the property;

5) The right to reinstate after acceleration; and

6) The right to bring court action to assert the non-existence of default or any other defense to acceleration or sale.

The notice to cure in this matter complies with all requirements. The default notice advised the Estate of Apolonia Morais that (1) the loan was in default; (2) the amount due to cure the default was $19,510.78; (3) the default could be cured on or before the cure date of January 26, 2018; (4) if the default is not cured by the cure date, the balance of the Note may be

deemed accelerated without demand; (5) notwithstanding acceleration, there is a right to

reinstate the loan by paying the sums due and owing as if no acceleration had occurred and (6)

there is a right to bring a court action to  assert the non-existence of a default or any other

defense to acceleration and sale.  Thus, the default notice complies with the terms of the

mortgage.  The Amended Complaint fails to support any of the claims of a breach of contract

claimed by the Plaintiffs. <u>See</u> <u>Viera v. Bank of N.Y. Mellon</u>, 2018 WL 4964545 (D.R.I. 2018).

The only specific deficiency specified in the Amended Complaint is that the date to cure

was not a specific date certain.  Plaintiffs allege that because the notice to cure permits the

borrower to cure the default on or before January 26, 2018, that the notice is deficient.  This

argument must fail.  The notice strictly complies with paragraph 16 of the Mortgage, which

states that the breach notice include a date to cure no less than 10 days from the date the notice

is mailed.  See paragraph 16(3) of the Mortgage.  In addition, this provision states that the

"failure to cure such breach **on or before the date specified in the notice** may result in

acceleration…**".**  <u>Id</u>. See paragraph 16(4) of the Mortgage Such arguments have been rejected

by this Court.  <u>See</u> <u>Bradbury v. Deutsche Bank National Trust Company as Trustee for GSAMP</u>

<u>Trust 2005-WMC1</u>, 2020 WL 1815897 *6 (D.C. RI 2020).

In <u>Viera</u>, Plaintiffs' attorney[2] raised substantially all the same objections to the default

notice in a breach of contract claim.  The complaint filed in <u>Viera</u> included a Count

substantially similar to Count I.  The Vieras alleged that there was a breach of contract for

failure of the foreclosing entity to send a default notice as well as a notice of acceleration prior

---

[2] Coincidently is the same attorney representing the Plaintiffs herein.

to commencing foreclosure proceedings.  Id. at *2.  Upon review by the US Court, the
Plaintiff's arguments related to paragraph 22[3] of the mortgage were rejected.  Id.  The Viera
Court determined that the default notice complied with the terms of paragraph 22, based on the
same facts alleged in the Plaintiffs' Amended Complaint.

### b.  Rhode Island does not recognize the claim of Breach of Duty of Good Fair and Fair Dealing

The Amended Complaint also alleges that Citizens breached a duty of good faith and
fair dealing.  This claim is not recognized as a cause of action in the State of Rhode Island.
While parties to a contact have an implied obligation to deal fairly with one another, there is no
independent cause of action for a breach of an implied covenant of fair dealing.  AAA Pool
Services and Supply, Inc. v. Aetna Cas. & Sur. Co, 395 A.2d 724, 725 (RI 1978); Viera at *3.
Although not framed as such, Plaintiffs' claims appear to derive from contract.  In order for the
Plaintiff to prevail on a breach of contract, there must be an offer, acceptance and consideration
for a binding contract.  Only then the burden is on Plaintiff to prove that there was a breach of
that agreement and damages suffered.  In this instance, there was no valid contract between the
parties and thus no ensuing breach thereof.  See Culley v. Bank of Am., N.A., 2019 U.S. Dist.
LEXIS 53709 *33.

### c.  No acceleration of the loan is necessary

Plaintiffs also allege a breach of contract for failure to send a notice of acceleration.
While Citizens contends that the loan was accelerated, that notice is outside of the pleadings

---

[3] This would relate to paragraph 16 of the Mortgage signed by Apolonia M. Morais.

and may not be considered by this Court.  However, it is not necessary for the Court to consider whether or not such acceleration was sent as it is not a condition precedent to the foreclosure. Paragraph 16 does not require the lender to give notice of acceleration prior to such acceleration.  Viera at *2.   No separate notice is required.  Id. at *3.  Therefore, Plaintiff's claim that there was a breach of contract for failure to send a notice of acceleration to the Plaintiff is flawed.

II.     **The RESPA claims in Counts III-Count VIII are limited to Borrowers**

    a.  **The Plaintiffs are not confirmed successors in interest**

Plaintiffs are seeking claims for RESPA violations as heirs at law of Apolonia Morais. RESPA in their individual capacity as successors to Apolonia Morais.  The federal statutes relied upon by the Plaintiffs are consumer statutes for the protection of borrowers.  The individual plaintiffs lack standing to pursue RESPA violations since they did not sign the note. See Lackie v PHH Mortgage Corporation, 2018 WL 4409799 *2 (N.D.TX 2018).

The Amended Complaint makes broad ambiguous claims that Marta Faria is the personal representative of Apolonia Morais.  However, the Amended Complaint is devoid of any allegations as to when such a determination was made and upon what order she was appointed a personal representative.  It only appears that she was appointed as a personal representative long after the foreclosure sale occurred.  There are no allegations before this Court that allege that Marta Faria was a successor to Apolonia Moarais at the time her RESPA and TILA requests were made.  While Marta Faria may claim that as the personal

representative of the Estate of Apolonia Morais she is entitled to bring the claims on behalf of the Estate she lacked authority to do so on the dates claimed in the Amended Complaint.  At the time the RESPA requests were allegedly tendered, the right of redemption of Apolonia Morais and her heirs were foreclosed and title transferred at the foreclosure sale.  See In re Medaglia, 402 B.R. 530, 533 (Bkrtcy,D.R.I. 2009).  All of the RESPA requests are dated after the April 24, 2018 foreclosure sale.  The acts questioned by the RESPA requests occurred prior to the April 19, 2018 effective date of the amendments to Regulation X and Regulation Z.  The Amendments to Regulation X and Regulation Z were not retroactive and do not create a liability for acts of the lender prior to the effective date of the regulations.  See Spaulding v. Citifinancial Servicing, LLC,, 2018 WL 1698263 *4 (D.MA 2018).  The Amended Complaint fails to make any claims or state any facts that support that Marta Faria was a "confirmed" successor in interest. Amendments to the 2013 Mortgage Rules Under the Real Estate Settlement Procedures Act (Regulation X) and the Truth in Lending Act (Regulation Z), 81 FR 72160-012016 WL 6083237 *72367, *72370-72371 (October 19, 2016).

   The documents annexed to the Amended Complaint fail to disclose that Marta Faria was a personal representative of the Estate of Apolonia Morais or that she was otherwise a confirmed successor, at the time such letters were sent.  Even if Marta Faria was a duly appointed personal representative of the Estate of Apolonia Morais prior to the RESPA requests, successors in interest do not have a private right of action for claims made for non-compliance with 12 U.S.C. § 1024.36(i).  See Dougherty v. US Bank and Trust National

<u>Association</u>, 2020 WL 6372973 *3 (S.D.TX 2020) (citing 81 Fed. Reg. 72160, 72175); <u>See also</u> <u>Lackie v PHH Mortgage Corporation</u>, 2018 WL 4409799 *2 (N.D.TX 2018).

While the Plaintiffs may refer to themselves as successor in interest in several paragraphs, they never allege that they were **confirmed successors in interest**.  <u>See</u> Amended Complaint Paragraphs 125, 158, 188, 216, 247, 276, and 306.  Not one time in the 333 paragraphs of the Amended Complaint do the Plaintiffs allege that they are or were "confirmed successors in interest".  While Plaintiffs may make arguments related to their alleged status as confirmed successors in interest, on a motion to dismiss, the test is whether the pleading is sufficient to state a claim.  Perhaps the reason that the Plaintiffs did not allege that they were confirmed successors in interest is because they were never confirmed as such.  Plaintiff attached self-serving exhibits E-J to their Amended Complaint where they demand information claiming to be confirmed successors in interest.  However, Plaintiffs failed and neglected to include responses by Citizens to those exhibits.

The July 12, 2018 response to Plaintiff's request for information is factually linked to and dependent upon Exhibits E-J and should have been provided as part of the Amended Complaint.  That direct relationship and nexus to the Amended Complaint Exhibits permits this Court to review same as part of the Motion to Dismiss. <u>See</u> <u>Diva's Inc. v. City of Bangor</u>, 411 F.3d 30, 38 (1st Cir. 2005).  In the July 12, 2018 response, an attorney for Citizens advised Plaintiffs' counsel that the request for information was improper.  <u>See</u> Exhibit D1 attached hereto.  Counsel was advised that a successor in interest does not assume a borrower's obligation by simply obtaining title to property, rather the assumption must be made in writing

and approved by the lender.  Id. at Page 2.  Counsel was advised that while the Plaintiffs may

purport to be confirmed successors in interest, they were not so confirmed.  A copy of the

regulations was provided with the response.

  Plaintiffs continue to use the terms "successor in interest" and "confirmed successor in

interest" interchangeably.  A "confirmed successor in interest" is a "successor in interest" once

the identity and ownership interest in the property is confirmed by the servicer.  Albra v. Selene

Finance, 2018 WL 6603645 *4 (D.Nev. 2018) affirmed Albra v. Selene Finance, 798 Fed.Apx

139 (9th Cir. 2020); Hoover v. Quality Loan Service Corporation of Washington, 2021 WL

471437 FN 5 (W.D.Wash. 2021).  Plaintiffs offer no allegations in their Amended Complaint

that their status as a successor in interest was ever confirmed by Citizens.  It is only when a

potential successor in interest is confirmed by the servicer that he or she is treated the same as a

borrower.  Dougherty v. US Bank and Trust NA, 2020 WL 6372973 *4 (S.D.TX 2020).  A

successor in interest, while he or she may be protected under RESPA regulations, has no

private cause of action under the regulations and is not considered a borrower.  Sharp v.

Deutsche Bank Nat. Trust Co., 2015 WL 4771291 *7 (D.NH 2015).

  Plaintiffs also rely on the terms of the Mortgage to entitle themselves to proclaim their

interest in the Mortgage.  Their reliance on the contract is misplaced.  Paragraph 10 of the

Mortgage does bind the successors and assigns of the Lender and Mortgagor.  However, that

provision is subject to the provisions of Paragraph 15 of the Mortgage.  Paragraph 15 provides

that any subsequent interest is subject to the **Lender' written consent**.  Plaintiffs cannot simply

rely on their status as potential successors in interest to cloak them as borrowers as they have

not assumed the debt nor was any attempt to assume the debt approved by the Lender.

Spraggins. V. Caliber Home Loans, Inc., 2020 WL 8366645 *9 (N.D.TX 2020).

### b. Plaintiffs are not the borrowers

A lender's liability for violations of RESPA is limited to borrowers.  12 U.S.C. §

2605(f).  See Correa v. BAC Home Loans Servicing, LP, 853 F.Supp.2d 1203, 1207 (M.D. Fla.

2012).  Plaintiffs are not the borrowers, only Apolonia Morais executed the Note and Mortgage

and was otherwise in privity of contract with the lender.  Thus, "a nonparty to the loan cannot

bring an action for violations of TILA or RESPA.  Id. at 1208 (citing Henry v. Guaranteed

Rates,Inc., 415 Fed.Appx 985, 985086 (11th Cir 2011)); Mashburn v. Wells Fargo Bank, N.A.,

2011 WL 2940363 *3 (W.D.WA 2011); Wilson v. Bank of America, N.A., 48 F.Supp.3d 787,

796 (E.D.PA. 2014); Stolz v. OneWest Bank, 2012 WL 135424 *4 (D.OR 2012); Aldana v.

Bank of America, N.A., 2014 WL 12577145 *2 (C.D.CA. 2014).  For this reason, Courts have

dismissed RESPA allegations brought by nonborrowers.  Green v. Central Mortgage Company,

2015 WL 5157479 *5 (N.D.CA. 2015) (heirs claim that she inherited the property and became

a borrower was rejected by the Court).

Although the Plaintiffs claim an interest in the property through inheritance and may

have an interest in the property, such interest does not provide them standing to raise RESPA

claims as they are not borrowers.  Bascom v. JPMorgan Chase Bank National Association,

2018 WL 1804347 *4 (Report and Recommendation N.D.GA. 2018) (Affirmed by Court 2018

WL 1804386 (N.D.GA. 2018)).  See Covino v. Wells Fargo Bank, 2018 WL 4616071 *5

(D.NJ. 2018) (only a borrower could send a QWR or NOE).  For these reasons, Counts III-

Count VIII should be dismissed as they all raise RESPA claims by nonborrowers.

**III.     Conclusion**

For the reasons set forth herein, Counts I, II, II, IV, V, VI, VI and VIII must be dismissed

for failure to state a claim upon which relief can be granted.

Respectfully Submitted

/s/   *Michael R. Hagopian*

_____
Michael R. Hagopian, Esq (3448)
Brock & Scott, PLLC
Dated: September 9, 2021                  1080 Main Street, Suite 200
Pawtucket, Rhode Island 02860
(401) 217-8701 x2453
michael.hagopian@brockandscott.com

CERTIFICATE OF SERVICE

I hereby certify that, on the   9   day of  September  , 2021 I filed and served this document
through the electronic filing system and electronically served John Ennis.  The document
electronically filed and served is available for viewing and/or downloading from the Court's
ECF Filing System.

/s/  *Michael R. Hagopian*

__ _____ __ _____
Michael R. Hagopian

*Exhibit D-1*

**SHECHTMAN HALPERIN SAVAGE, LLP**

*A Limited Liability Partnership*

**Christopher J. Fragomeni, Esq.**
*cfragomeni@shslawfirm.com*

July 12, 2018

**VIA CERTIFIED MAIL / RETURN RECEIPT REQUESTED
AND FIRST-CLASS MAIL**

John B. Ennis, Esq.
1200 Reservoir Avenue
Cranston, RI 02920

9414 8149 0113 5940 8393 06

> Re: Borrower: Apolonia Morais
> Property address: 120 Lena Street, East Providence, RI
> **Response to mortgagor's "Request for Information" pursuant to 12 C.F.R.
> § 1024.36.**

Dear Attorney Ennis:

This firm represents Citizens Bank, N.A. ("Citizens") in connection with claims asserted by you on behalf of Apolonia Morais' heirs in your letter dated June 8, 2018, which purports to be a "Request for Information" pursuant to § 1024.36 of Regulation X of the Real Estate Settlement Procedures Act, codified as Section 2605(e)(1)(A) of Title 12 of the United States Code ("RESPA"). This letter shall constitute a response to your purported Request for Information, and is sent to you on behalf of our client, Citizens, solely in response to the claims that you made against it in your letter relative to the above-referenced property (the "Property")

A servicer's obligation to answer a Request for Information made pursuant to RESPA extends only to "any written request for information from a *borrower* . . ." *See* 12 C.F.R. § 1024.36(a) (emphasis added). While the term "borrower" is not defined in RESPA, courts have continuously and consistently rejected RESPA claims by plaintiffs who either did not sign the mortgage documents or otherwise obligate themselves under the mortgage documents. *See Green v. Cent. Mortg. Co*, 2015 U.S. Dist. LEXIS 117241, *14 (N.D. Cal. Sept. 2, 2015) ("only 'borrowers' have standing to assert the RESPA claims"); *see also Correa v. BAC Home Loan Servicing, LP*, 853 F. Supp. 2d 1203, 1207 (M.D. Fla. 2012) ("[A] defendant's liability in a civil action under RESPA is limited to borrowers").

For instance, in *Johnson v. Ocwen Loan Servicing*, the Eleventh Circuit upheld a district court's dismissal of a complaint alleging RESPA violations because the plaintiff was not a

**1080 Main Street
Pawtucket, Rhode Island 02860**
*p* **401.272.1400** *f* **401.272.1403**

**w w w . s h s l a w f i r m . c o m**

borrower or otherwise obligated on the loan. *See* 374 Fed. Appx. 868, 873 (11th Cir. 2010). Furthermore, in *Green*, a federal district court found that a plaintiff did not have standing under RESPA despite her allegations that "[b]y virtue of her parent[s'] death[s], [she] received title to the [P]roperty and assumed the [L]oan and therefore became the 'borrower.'" 2015 U.S. Dist. LEXIS 117241, at 16. The Court explained that for purposes of RESPA, a successor in interest to title in property that was the subject of a loan "does not assume a borrower's obligations simply upon obtaining title to property when the deed of trust requires an assumption be made in writing and approved by the lender." *Id.* Similarly, in *Aldana v. Bank of Am., N.A*, a federal district court dismissed a plaintiff's complaint that alleged RESPA violations where the plaintiff was not a borrower, did not assume obligations under the loan, and was not a third-party beneficiary under the deed of trust when the borrower executed it. 2014 U.S. Dist. LEXIS 166460, at *3 (C.D. Cal. Nov. 26, 2014); *see also Stolz v. OneWest Bank,* 2012 U.S. Dist. LEXIS 8141, at *5 (D. Or. Jan. 13, 2012) (dismissing RESPA claims because, as non-borrowers, the plaintiffs "lack[ed] standing to bring a RESPA claim because they were not entitled to receive any disclosures or responses under RESPA"); *Mashburn v Wells Fargo Bank, NA,* 2011 U.S. Dist. LEXIS 78287, at *3 (W.D. Wash. July 19, 2011) ("Plaintiff [] also does not have standing to bring the RESPA . . . claims since he was not a borrower and did not apply for a loan").

Your Request for Information purports to be on behalf of Marta Faria, Ana Faria, and Filipe Faria, all who claim to be "confirmed successors in interest" of Ms. Morais. However, Marta Faira, Ana Faria, and Filipe Faria are not borrowers inasmuch as they did not execute the Note or Mortgage and did not obligate themselves under the Note or Mortgage; therefore, they have no standing to submit the instant Request for Information, and Citizens is under no obligation to respond to same.

This letter is offered in response to your purported Request for Information, and nothing contained herein should be considered as an admission of liability by Citizens with respect to any of your allegations, or as a waiver of any defenses thereto. Citizens denies that you have articulated any legitimate claim for relief against it, or that you have identified any act or omission on its part that warrants any award of damages against Citizens under RESPA or otherwise.

If you have any additional information you wish Citizens to consider with regard to this matter, please provide it to me at our Rhode Island office and I will be happy to review it with our client.

Very truly yours,

Christopher J. Fragomeni, Esq.

cc: Steven M. Autieri

# 1024.36—Requests for information.*

**This section has pending amendments noted in blue text for changes effective April 19, 2018.**

(a) *Information request* A servicer shall comply with the requirements of this section for any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan A request on a payment coupon or other payment form supplied by the servicer need not be treated by the servicer as a request for information A request for a payoff balance need not be treated by the servicer as a request for information A qualified written request that requests information relating to the servicing of the mortgage loan is a request for information for purposes of this section, and a servicer must comply with all requirements applicable to a request for information with respect to such qualified written request

**Official Interpretation**

## 36(a) Information request.

1 *Borrower's representative* An information request is submitted by a borrower if the information request is submitted by an agent of the borrower A servicer may undertake reasonable procedures to determine if a person that claims to be an agent of a borrower has authority from the borrower to act on the borrower's behalf, for example, by requiring that a person that claims to be an agent of the borrower provide documentation from the borrower stating that the purported agent is acting on the borrower's behalf Upon receipt of such documentation, the servicer shall treat the request for information as having been submitted by the borrower

2 *Owner or assignee of a mortgage loan* i When a loan is not held in a trust for which an appointed trustee receives payments on behalf of the trust, a servicer complies with § 1024 36(d) by responding to a request for information regarding the owner or assignee of a mortgage loan by identifying the person on whose behalf the servicer receives payments from the borrower A servicer is not the owner or assignee for purposes of § 1024 36(d) if the servicer holds title to the loan, or title is assigned to the servicer, solely for the administrative convenience of the servicer in servicing the mortgage loan obligation The Government National Mortgage Association is not the owner or assignee for purposes of such requests for information solely as a result of its role as the guarantor of the security in which the loan serves as the collateral

ii When the loan is held in a trust for which an appointed trustee receives payments on behalf of the trust, a servicer complies with § 1024 36(d) by responding to a borrower's request for information regarding the owner, assignee, or trust of the mortgage loan with the following information, as applicable.

A For any request for information where the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation is not the owner of the loan or the trustee of the securitization trust in which the loan is held the name of the trust, and the name, address, and appropriate contact information for the trustee Assume, for example, a mortgage loan is owned by Mortgage Loan Trust, Series ABC-1, for which XYZ Trust Company is the trustee The servicer complies with § 1024 36(d) by identifying the owner as Mortgage Loan Trust, Series ABC-1, and providing the name, address, and appropriate contact information for XYZ Trust Company as the trustee

B If the request for information did not expressly request the name or number of the trust or pool and the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation is the owner of the loan or the trustee of the securitization trust in which the loan is held the name and contact information for the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation, as applicable, without also providing the name of the trust

C If the request for information did expressly request the name or number of the trust or pool and the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation is the owner of the loan or the trustee of the securitization trust in which the loan is held the name of the trust, and the name, address, and appropriate contact information for the trustee, as in comment 36(a)-2 ii A above

(b) *Contact information for borrowers to request information*  A servicer may, by written notice provided to a borrower, establish an address that a borrower must use to request information in accordance with the procedures in this section  The notice shall include a statement that the borrower must use the established address to request information  If a servicer designates a specific address for receiving information requests, a servicer shall designate the same address for receiving notices of error pursuant to § 1024 35(c)  A servicer shall provide a written notice to a borrower before any change in the address used for receiving an information request  A servicer that designates an address for receipt of information requests must post the designated address on any website maintained by the servicer if the website lists any contact address for the servicer

**Official Interpretation**

## 36(b) Contact information for borrowers to request information.

1 *Exclusive address not required*  A servicer is not required to designate a specific address that a borrower must use to request information  If a servicer does not designate a specific address that a borrower must use to request information, a servicer must respond to an information request received by any office of the servicer

2 *Notice of an exclusive address*  A notice establishing an address that a borrower must use to request information may be included with a different disclosure, such as a notice of transfer  The notice is subject to the clear and conspicuous requirement in § 1024 32(a)(1)  If a servicer establishes an address that a borrower must use to request information, a servicer must provide that address to the borrower in the following contexts

i  The written notice designating the specific address, required pursuant to § 1024 35(c) and § 1024 36(b)

ii  Any periodic statement or coupon book required pursuant to 12 CFR 1026 41

iii  Any website the servicer maintains in connection with the servicing of the loan

iv  Any notice required pursuant to §§ 1024 39 or 41 that includes contact information for assistance

3 *Multiple offices*  A servicer may designate multiple office addresses for receiving information requests  However, a servicer is required to comply with the requirements of § 1024 36 with respect to an information request received at any such address regardless of whether that specific address was provided to a specific borrower requesting information  For example, a servicer may designate an address to receive information requests for borrowers located in California and a separate address to receive information requests for borrowers located in Texas  If a borrower located in California requests information through the address used by the servicer for borrowers located in Texas, the servicer is still considered to have received an information request and must comply with the requirements of § 1024 36

4 *Internet intake of information requests*  A servicer may, but need not, establish a process for receiving information requests through email, website form, or other online intake methods  Any such online intake process shall be in addition to, and not in lieu of, any process for receiving information requests by mail  The process or processes established by the servicer for receiving information requests through an online intake method shall be the exclusive online intake process or processes for receiving information requests  A servicer is not required to provide a separate notice to a borrower to establish a specific online intake process as an exclusive online process for receiving information requests

(c) *Acknowledgment of receipt*  Within five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving an information request from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the information request

(d) *Response to information request*  (1) *Investigation and response requirements*  Except as provided in paragraphs (e) and (f) of this section, a servicer must respond to an information request by either

(i) Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing, or

(ii) Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not

available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance

(2) *Time limits*  (i) *In general*  A servicer must comply with the requirements of paragraph (d)(1) of this section
(A) Not later than 10 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives an information request for the identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan, and

(B) For all other requests for information, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the information request

(ii) *Extension of time limit*  For requests for information governed by the time limit set forth in paragraph (d)(2)(i)(B) of this section, a servicer may extend the time period for responding by an additional 15 days (excluding legal public holidays, Saturdays, and Sundays) if, before the end of the 30-day period, the servicer notifies the borrower of the extension and the reasons for the extension in writing  A servicer may not extend the time period for requests for information governed by paragraph (d)(2)(i)(A) of this section
**Editor's Note:** Effective April 19, 2018, paragraph (d)(3) is added to read

(3) *Omissions in responses to requests*  In its response to a request for information, a servicer may omit location and contact information and personal financial information (other than information about the terms, status, and payment history of the mortgage loan) if
(i) The information pertains to a potential or confirmed successor in interest who is not the requester, or

(ii) The requester is a confirmed successor and the information pertains to any borrower who is not the requester

**Official Interpretation**

## 36(d) Response to information request.
**36(d)(1) Investigation and response requirements.**
**Paragraph 36(d)(1)(ii).**
1 *Information not available*  Information is not available if
i  The information is not in the servicer's control or possession, or

ii  The information cannot be retrieved in the ordinary course of business through reasonable efforts

2 *Examples*  The following examples illustrate when information is available (or not available) to a servicer under § 1024 36(d)(1)(ii)
i  A borrower requests a copy of a telephonic communication with a servicer  The servicer's personnel have access in the ordinary course of business to audio recording files with organized recordings of transcripts of borrower telephone calls and can identify the communication referred to by the borrower through reasonable business efforts  The information requested by the borrower is available to the servicer

ii  A borrower requests information stored on electronic back-up media  Information on electronic back-up media is not accessible in the ordinary course of business without undertaking extraordinary efforts to identify and restore the information from the electronic back-up media  The information requested by the borrower is not available to the servicer

iii  A borrower requests information stored at an offsite document storage facility  A servicer has a right to access documents at the offsite document storage facility and servicer personnel can access those documents through reasonable efforts in the ordinary course of business  The information requested by the borrower is available to the servicer assuming that the information can be found within the offsite documents with reasonable efforts

(e) *Alternative compliance* A servicer is not required to comply with paragraphs (c) and (d) of this section if the servicer provides the borrower with the information requested and contact information, including a telephone number, for further assistance in writing within five days (excluding legal public holidays, Saturdays, and Sundays) of receiving an information request

(f) *Requirements not applicable* (1) *In general* A servicer is not required to comply with the requirements of paragraphs (c) and (d) of this section if the servicer reasonably determines that any of the following apply

(i) *Duplicative information* The information requested is substantially the same as information previously requested by the borrower for which the servicer has previously complied with its obligation to respond pursuant to paragraphs (c) and (d) of this section

(ii) *Confidential, proprietary or privileged information* The information requested is confidential proprietary or privileged

(iii) *Irrelevant information* The information requested is not directly related to the borrower's mortgage loan account

(iv) *Overbroad or unduly burdensome information request* The information request is overbroad or unduly burdensome An information request is overbroad if a borrower requests that the servicer provide an unreasonable volume of documents or information to a borrower An information request is unduly burdensome if a diligent servicer could not respond to the information request without either exceeding the maximum time limit permitted by paragraph (d)(2) of this section or incurring costs (or dedicating resources) that would be unreasonable in light of the circumstances To the extent a servicer can reasonably identify a valid information request in a submission that is otherwise overbroad or unduly burdensome, the servicer shall comply with the requirements of paragraphs (c) and (d) of this section with respect to that requested information

(v) *Untimely information request* The information request is delivered to a servicer more than one year after

(A) Servicing for the mortgage loan that is the subject of the information request was transferred from the servicer receiving the request for information to a transferee servicer, or

(B) The mortgage loan is discharged

(2) *Notice to borrower* If a servicer determines that, pursuant to this paragraph (f), the servicer is not required to comply with the requirements of paragraphs (c) and (d) of this section, the servicer shall notify the borrower of its determination in writing not later than five days (excluding legal public holidays, Saturdays, and Sundays) after making such determination The notice to the borrower shall set forth the basis under paragraph (f)(1) of this section upon which the servicer has made such determination

**Official Interpretation**

## 36(f) Requirements not applicable.

**36(f)(1) In general.**

**Paragraph 36(f)(1)(i).**

1. A borrower's request for a type of information that can change over time is not substantially the same as a previous information request for the same type of information if the subsequent request covers a different time period than the prior request

**Paragraph 36(f)(1)(ii).**

1. *Confidential, proprietary or privileged information* A request for confidential, proprietary or privileged information of a servicer is not an information request for which the servicer is required to comply with the requirements of § 1024 36(c) and (d) Confidential, proprietary or privileged information may include information requests relating to, for example

i Information regarding management or profitability of a servicer, including information provided to investors in the servicer

ii Compensation, bonuses, or personnel actions relating to servicer personnel, including personnel responsible for servicing a borrower's mortgage loan account,

iii Records of examination reports, compliance audits, borrower complaints, and internal investigations or external investigations, or

iv Information protected by the attorney-client privilege

**Paragraph 36(f)(1)(iii).**

1 *Examples of irrelevant information* The following are examples of irrelevant information

i Information that relates to the servicing of mortgage loans other than a borrower's mortgage loan, including information reported to the owner of a mortgage loan regarding individual or aggregate collections for mortgage loans owned by that entity,

ii The servicer's training program for servicing personnel,

iii The servicer's servicing program guide, or

iv Investor instructions or requirements for servicers regarding criteria for negotiating or approving any program with a borrower, including any loss mitigation option

**Paragraph 36(f)(1)(iv).**

1 *Examples of overbroad or unduly burdensome requests for information* The following are examples of requests for information that are overbroad or unduly burdensome

i Requests for information that seek documents relating to substantially all aspects of mortgage origination, mortgage servicing, mortgage sale or securitization, and foreclosure, including, for example, requests for all mortgage loan file documents, recorded mortgage instruments, servicing information and documents, and sale or securitization information and documents,

ii Requests for information that are not reasonably understandable or are included with voluminous tangential discussion or assertions of errors,

iii Requests for information that purport to require servicers to provide information in specific formats, such as in a transcript, letter form in a columnar format, or spreadsheet, when such information is not ordinarily stored in such format, and

iv Requests for information that are not reasonably likely to assist a borrower with the borrower's account, including, for example, a request for copies of the front and back of all physical payment instruments (such as checks, drafts, or wire transfer confirmations) that show payments made by the borrower to the servicer and payments made by a servicer to an owner or assignee of a mortgage loan

(g) *Payment requirement limitations* (1) *Fees prohibited* Except as set forth in paragraph (g)(2) of this section, a servicer shall not charge a fee, or require a borrower to make any payment that may be owed on a borrower's account, as a condition of responding to an information request

(2) *Fee permitted* Nothing in this section shall prohibit a servicer from charging a fee for providing a beneficiary notice under applicable State law, if such a fee is not otherwise prohibited by applicable law

(h) *Servicer remedies* Nothing in this section shall prohibit a servicer from furnishing adverse information to any consumer reporting agency or pursuing any of its remedies, including initiating foreclosure or proceeding with a foreclosure sale, allowed by the underlying mortgage loan instruments, during the time period that response to an information request notice is outstanding

**Editor's Note:** Effective April 19, 2018, paragraph (i) is added to read

(i) *Potential successors in interest* (1) With respect to any written request from a person that indicates that the person may be a successor in interest and that includes the name of the transferor borrower from whom the person received an ownership interest and information that enables the servicer to identify the mortgage loan account, a servicer shall respond by providing the potential successor in interest with a written description of the documents the servicer reasonably requires to confirm the person's identity and

ownership interest in the property and contact information, including a telephone number, for further assistance  With respect to the written request, a servicer shall treat the potential successor in interest as a borrower for purposes of the requirements of paragraphs (c) through (g) of this section

(2) If a written request under paragraph (i)(1) of this section does not provide sufficient information to enable the servicer to identify the documents the servicer reasonably requires to confirm the person's identity and ownership interest in the property, the servicer may provide a response that includes examples of documents typically accepted to establish identity and ownership interest in a property, indicates that the person may obtain a more individualized description of required documents by providing additional information, specifies what additional information is required to enable the servicer to identify the required documents, and provides contact information, including a telephone number, for further assistance  A servicer's response under this paragraph must otherwise comply with the requirements of paragraph (i)(1)  Notwithstanding paragraph (f)(1)(i), if a potential successor in interest subsequently provides orally or in writing the required information specified by the servicer pursuant to this paragraph, the servicer must treat the new information, together with the original request, as a new, non-duplicative request under paragraph (i)(1), received as of the date the required information was received, and must respond accordingly

(3) In responding to a request under paragraph (i)(1) of this section prior to confirmation, the servicer is not required to provide any information other than the information specified in paragraphs (i)(1) and (2)  In responding to a written request under paragraph (i)(1) that requests other information, the servicer must indicate that the potential successor in interest may resubmit any request for information once confirmed as a successor in interest

(4) If a servicer has established an address that a borrower must use to request information pursuant to paragraph (b) of this section, a servicer must comply with the requirements of paragraph (i)(1) of this section only for requests received at the established address

**Official Interpretation**

**Editor's Note:** Effective April 19, 2018  the following text is added

## 36(i) Potential successors in interest.

1  *Requests that indicate that the person may be a successor in interest* Section 1024 36(i) requires a servicer to respond to certain written requests received from a person that indicate the person may be a successor in interest  Examples of written requests that indicate that the person may be a successor in interest include, without limitation, a written statement from a person other than a borrower indicating that there has been a transfer of ownership or of an ownership interest in the property to the person or that a borrower has been divorced, legally separated, or died, or a written loss mitigation application received from a person other than a borrower

2  *Time limits*  A servicer must respond to a request under § 1024 36(i) not later than the time limits set forth in § 1024 36(d)(2)  Servicers subject to § 1024 38(b)(1)(vi)(B) must also maintain policies and procedures reasonably designed to ensure that, upon receiving notice of the existence of a potential successor in interest, the servicer can promptly determine the documents the servicer reasonably requires to confirm that person's identity and ownership interest in the property and promptly provide to the potential successor in interest a description of those documents and how the person may submit a written request under § 1024 36(i) (including the appropriate address)  Depending on the facts and circumstances of the request, responding promptly may require a servicer to respond more quickly than the time limits established in § 1024 36(d)(2)

3  *Potential successor in interest's representative*  An information request pursuant to § 1024 36(i) is submitted by a potential successor in interest if the information request is submitted by an agent of the potential successor in interest  A servicer may undertake reasonable procedures to determine if a person that claims to be an agent of a potential successor in interest has authority from the potential successor in interest to act on the potential successor in interest's behalf, for example, by requiring that a person that claims to be an agent of the potential successor in interest provide documentation from the potential successor in interest stating that the purported agent is acting on the potential successor in interest's

behalf  Upon receipt of such documentation, the servicer shall treat the request for information as having been submitted by the potential successor in interest