**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**ANA FARIA ET AL**

**VS**                                        **CA 19-CV-427**

**OTORO, LLC**
**CITIZENS BANK, N.A.**

**MEMORANDUM OF LAW IN SUPPORT OF OBJECTION TO MOTION TO DISMISS OF CITIZENS BANK, N.A. AND OTORO, LLC**

This matter is before the Court on the Motion to Dismiss the Amended filed by Citizens Bank, N.A. ("Citizens"). and Otoro, LLC, which answered the original complaint has not joined in this motion. This matter involves a Mortgage("Exhibit A") and a Promissory Note ("Exhibit B") executed by decedent, Apolonia Morais, who died intestate on June 10, 2014. A redacted copy of her death certificate was attached as Exhibit C. The Decedent at the time of her death had no spouse and four children, namely the Plaintiffs, Marta Faria, Ana Faria, Philipe Faria and Catarina Travassos. These four persons are the only  heirs at law of Apolonia Morais. Pursuant to R.I.G.L 33-1-1, this property passed by operation of law to her children, at her death since she was intestate. This statute provides:

**RIGL 33-1-1. Real estate descending by intestacy to children or descendants, parents, or brothers and sisters.**

Whenever any person having title to any real estate of inheritance shall die

1

intestate as to such estate, it shall descend and pass in equal portions to his or her kindred, in the following course:

(1) First to the intestate's children or their descendants, if there are any.

(2) Second, if there be no children nor their descendants, then to the intestate's parents in equal shares, or to the surviving parent.

(3) Third, if there is no parent, then to the intestate's brothers and sisters, and their descendants.

This statute needs little interpretation, although the Supreme Court notes the mandatory nature of the distribution. In *Kershaw v. Kershaw,*125 A. 2d 126, 130 (R.I., 1966) the Supreme Court made this clear:

Moreover the payment of taxes is not required on the ground that this property necessarily was within the true estate of the testator, that is, in the sense that such property **would descend directly from him by operation of law if there were no will**, or by virtue of the provisions of a will if he died testate. (emphasis added)

Since this language is mandatory, there is no dispute that on the death of their mother, the Plaintiffs became owners of this property and as successors in interest under the terms of the mortgage possessed standing to proceed in this action.

Marta Faria was appointed Administratrix of her decedent mother's estate on December 8, 2020 as indicated by attached Exhibit 1. Thus she certainly possesses authority to file this complaint on behalf of her deceased mother assuming that the complaint had to be filed by her.

The Defendants assert that none of the heirs at law have standing to file any of the claims against Citizens Bank in this case, contending that they lack standing. While Plaintiffs dispute that it was necessary for the Marta Faria to file a Petition for Administration, she did so on November 30, 2018 and was appointed Administratrix as indicated by Exhibit 1 by the East Providence Probate Court on December 8, 2020 prior to filing of the Amended Complaint. Since there are no statute of limitations in this case based on breach of contract, which is ten years in Rhode Island or claims under the Real Estate Settlement and Procedures Act, which is three years, this complaint alleges plausible facts in support of this action, Defendant recognized that the filing of the complaint by an Administratrix by conceding on page 3:

Plaintiffs appear to have addressed the issue of standing by stating that Marta Faria was appointed as administratrix of the Estate of Apolonia Morais

Citizens suggests that this allegation is not specific enough. However the allegations made are specific and must be accepted as true because they are not conclusory in nature. However Plaintiffs have filed the amended complaint which states the actual date of the appointment, December 8, 2020 and have included the power of appointment as Exhibit1. The Petition for

Administration was filed on November 30, 2018, which is also reflected in the Amended Complaint.

Defendants claim that the heirs at law lack standing to file a RESPA claim and that as a result this Court lacks jurisdiction.   However if this Court lacks jurisdiction under Article III to bring the RESPA claims, then the Court will have no supplemental jurisdiction over the breach of contract claims, since all the parties to the case are residents of Rhode Island. With these threshold issues aside, the Plaintiffs will address the merits of the Defendants' Motions.

## CITIZENS DID NOT STRICTLY COMPLY WITH THE NOTE OR MORTGAGE

On April 13, 2014, the decedent executed a mortgage to Citizens Bank of Rhode Island, attached as Exhibit A. On that date, she along with Jose Faria, her companion, but not her spouse, also executed a promissory note to Citizens Bank of Rhode Island, attached as Exhibit B. Mr. Faria did not execute the mortgage, nor did he own the property.  Pursuant to the terms of the mortgage, particularly paragraph 10, the heirs at law of the decedent obtained the benefits and incurred the obligations of the mortgage. This section states:

**The covenants and agreement herein contained shall bind, and the rights hereunder shall bind and the rights hereunder shall inure to the**

**respective successors and assigns of Lender and Mortgagor subject to the provisions of Paragraph 15 hereof.**

Thus the four Plaintiffs the sole children and  heirs at law of the decedent, as her successors and assigns,  were bound by the terms of the mortgage signed by  their mother and received the rights granted to their mother  by the mortgage as her successors and assigns.

After Apolonia Morais died, the mortgage went into arrears.  On December 27, 2017, the Law Firm of Shechtman Halperin Savage, LLP, (Shechtman) claiming to act on behalf of Citizens Bank, N.A, the successor to Citizens Bank of Rhode Island, mailed what it claimed was a default letter to the Estate of Apolonia M. Morais, attached as Exhibit F. This letter stated that the Note was in default and then stated:

Under the terms of the Loan Documents you may cure the default by paying the amounts set forth below on or before January 26, 2018 ("the cure date"). Please be advised only certified funds will be accepted.

| | |
|---|---|
| Monthly payments due and owing for January 2017 through December 2017 | $7897.68 |
| Late Charges | $140.00 |
| Escrow Advance | $10,287.94 |
| Mtg Rec Corp Adv | $399.99 |
| Legal Fees and Expenses | $786.16 |
| TOTAL DUE | $19,510.78 |

If the default is not cured by the Cure Date, the balance of the Note may be deemed accelerated without further demand, and the Lender may proceed with the foreclosure of the Mortgage. The Lender may also be  entitled to all reasonable costs, expenses and fees incurred by the Lender in pursuing its remedies including, but not limited to, reasonable attorney's fees.

As of the date of this letter, the Mortgage secures the amount of $42,768.84. Because of interest, late charge and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence if you pay the amount shown above, an adjustment may be necessary after we receive you check, in which event we will inform  before depositing the check for collection. At the present rate in effect, interest on the Note accrues at $4.29 per day. The rate of interest on the Note may vary under the terms thereof.

Notwithstanding any acceleration, pursuant to the terms of the Mortgage, You have the right to reinstate your loan by paying to us all sums which would then be due under your Mortgage had no acceleration occurred plus our attorneys' fees and other reasonable costs of proceedings which have been incurred as of the date of such payment. You have the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and sale.

However this letter did not comply with the terms of the mortgage.

Paragraph 16 of the mortgage states:

Acceleration; Remedies. Upon Mortgagor's breach of any covenants or agreement of Mortgagor in this Mortgage, including the covenants to pay when due any such sums secured by this Mortgage, Lender prior to acceleration shall give notice to Mortgagor as provided in Paragraph 11 hereof specifying:

(1) the breach: (2) the action required to cure such breach;(**a date**, not less than 10 days from the date the notice is mailed to the Mortgagor, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage and sale of the property. The notice shall further inform Mortgagor of the right to reinstate after acceleration and the right to bring a Court action to assert the nonexistence of a default or any other

defense of Mortgagor to acceleration and sale.  If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, **may declare** all of the sums secured by this Mortgage to be immediately due and payable without further demand and Lender may invoke the STATUTORY POWER OF SALE and any other remedies permitted by applicable law. (emphasis added).

It did not reference a specific date for the heirs at law of Apolonia Morais  to cure the arrearage. Rather the letter stated that the arrearage had to be cured on or before January 26, 2018. Thus there was no specific date to cure as the phrase on or before includes every date from the date of the letter until January 26, 2018.  The notice did not specify a particular date, by which the cure amount had to be paid or face possible acceleration by Citizens and sale of the mortgaged premises. No person could determine from the letter the actual date on which the cure had to occur. This letter was deceptive because it did not specify an exact date to cure, only a range of dates from the date of the letter until January 26, 2018.  Thus there was not strict compliance with the terms of the mortgage as required by Rhode Island as developed in regard to contracts and notices, which are conditions precedent to the exercise of certain contractual rights.

Rhode Island contract law is quite specific in this regard. There was

not strict compliance with the terms of the contract, which was a condition

precedent at indicated in the case of *Cinq-Mars v. Travelers Ins. Co.,* 218

A.2d 467, 471 (R.I. 1966). In that case, the Court interpreted an insurance

contract and held:

It is, of course accepted law that compliance with such a policy condition is a condition precedent to an insurer's liability. Sherwood Ice Co. v. U.S. Casualty Co., 40 R.I. 268; 8 Appleman, Insurance Law & Practice, § 4732, p. 7.

In the case of *Commerce Park Village Green v. Vito Vitone,* KD-2-

11-1029 (Superior Court, September 22, 2016), Justice Rubine reviewed a

notice provision as a criterial for an eviction:

  The Tenant claims that the Landlord was required to serve the Tenant with a "proper move out or vacate notice" before a complaint for eviction may commence, as well as before the holdover provision of the Lease may be invoked. Defective notice under the statute is jurisdictional, and this Court has no jurisdiction to consider a complaint absent strict compliance with the notice provisions of the statute. See, *Hedco Ltd. v. Blanchette,* 763 A.2d 639 (R.I. 2000); see also, *Abbenante v. Giampietro*, 75 R.I. 349, 66 A.2d 501 (1949). The purpose of notice is to advise the tenant of the reason for eviction, and provides an opportunity to cure prior to the commencement of an eviction action. Proper notice also affords the tenant a reasonable opportunity to secure alternative housing before an eviction action is commenced.

In the case of *Haviland v. Simmons,* 45 A.3d 1246 (R.I., 2012), the

Rhode Island Supreme Court decided that if there was any ambiguity in a

contract, that such issue had to be resolved at trial:

Where an ambiguity exists in a provision of a contractual 1259*1259 document, the construction of that provision is a question of fact."*Fryzel v. Domestic Credit Corp.,* 120 R.I. 92, 98, 385 A.2d 663, 666 (1978) (citing*Geary v. Hoffman,* 98 R.I. 413, 417, 204 A.2d 302, 305 (1964); *Russolino v. A. F. Rotelli & Sons,* 85 R.I. 160, 163, 128 A.2d 337, 340 (1957)). We are of the opinion that, although an express agreement was entered into, based on our review of the contract in its entirety, an ambiguity exists concerning the terms of the agreement relative to the standard under which Haviland's reappointment is to be evaluated. *Haviland*, at pp. 1258-1259

The language in the mortgage, which was a condition precedent was not complied with by the Plaintiff.

In the case of *Abbenante v. Giampietro,* 75 R.I. 349, 353, 66 A.2d 501, 503 (1949),  the Supreme Court review a notice case in which a specific date was not provided for a Notice to Quit. A question existed as whether the tenant had to quit on the next day after his tenancy terminated on February 29, 1949. The Court  held:

We are unable to agree with this contention. If plaintiffs were demanding the premises freed of the existing tenancy at $25 a month defendant was entitled to an **unequivocal** notice to quit on the day next succeeding the last day of such tenancy.

Thus the Court held that in a Notice case, for a notice to be effective it had to be unequivocal as to the time of compliance, which did not occur in this case.

In the case of *Hedco v. Blanchette*, 763 A. 2d 639 (R.I., 2000), the Rhode Island Supreme Court upheld this principle when it held:

In considering the sufficiency of a termination notice, we have repeatedly stated [**8] that "the important factor is whether the statute has been complied with and not whether the tenant has been misled by the notice given." *Tate v. Peter Charles Reynolds, Inc.,* 622 A.2d 449, 450 (R.I. 1993) (per curiam) (citing *De Luca v. Cinima,* 72 R.I. 346, 350, 51 A.2d 369, 370-71 (1947)). Although a tenant may be clearly apprised of the termination of his lease, we have determined a notice to be fatally defective when it ordered the tenant to quit on the last day of his term instead of the first day following it, *Industrial Trade Unions of America v. Metayer,* 69 R.I. 199, 203, 32 A.2d 789, 790-91 (1943), or when it did not clearly indicate that an agent was acting on behalf of the landlord. *Tate,* 622 A.2d at 450.

The Court held:

Because service of a valid and proper notice to quit is a condition precedent to maintaining a trespass and ejectment action, plaintiff failed to properly invoke the jurisdiction of the court. *See Abbenante v. Giampietro,* 75 R.I. 349, 353, 66 A.2d 501, 503 (1949) (holding that *HN8* tenancy is not terminated without proper notice, regardless of landlord's intention).

Thus the Court held that in a Notice case, for a notice to be effective it had to be unequivocal as to the time of compliance, which did not occur in this case. After all the use of on or before January 26, 2018 is not an unequivocal date for paragraph 16(2) purposes.

Judge McConnell in *Martins v. Federal Housing Finance Agency*, No. 15-cv-235-M-LDA followed established Rhode Island law and held that strict compliance was required for paragraph 22 notices just like any other contracts. *Martins* involved a Judicial Foreclosure in Federal Court. The Court held:

In Rhode Island, if a contract contains a notice requirement, then a court construes that notice requirement as a condition precedent, which requires strict compliance. *Cinq-Mars v. Travelers Ins. Co.,* 218 A.2d 467, 471 (R.I. 1966) (requirement of written notice for a claim by the insured is a "condition precedent to the insurer's liability."); *Ins. Co. of N. Am. v. Kayser-Roth Corp.,* No. C.A. PC 92-5248, 1999 WL 81366, at *22 (R.I. Super. July 29, 1999) (stating that notice requirements are a condition precedent in insurance contracts); *Dyer v. Ryder Student Transp. Servs., Inc.,* No. 98-4489, 1999 WL 395417, at *2 (R.I. Super. June 7, 1999) ("If notice by a tenant is not given to a landlord in accordance with the terms of the lease, the right to renew has been lost or has lapsed. . . .").

Furthermore, Paragraph 22 of the Mortgage is a condition precedent, which requires strict compliance, when a mortgagee seeks acceleration and foreclosure. *In re Demers,*511 B.R. 233, 238, 239 (Bankr. D.R.I. 2014) (holding that a notice omitting a borrower's right to go to court to contest acceleration was fatal, and that even if notice to go to court was ambiguously provided, that ambiguity must be construed against the drafter).

*Martins* was quite specific:

Defendants now seek to foreclose on the Property through an order from this Court, instead of non-judicially. The change of process for the foreclosure, however, does not alleviate compliance with the agreement they made in the Mortgage, including the Paragraph 22 notice requirements. Despite the fact that the judicial foreclosure statute, R.I. GEN. LAWS § 34-11-22, does not expressly require compliance with the Mortgage document, the Rhode Island Supreme Court has stated that "the right to exercise the power of sale in a mortgage is derived from contract, not statute," and that the power of sale "does not exist independently" from the mortgage agreement. *Bucci v. Lehman Bros. Bank, FSB,* 68 A.3d 1069, 1084, 1085 (R.I. 2013). Simply put, if a mortgagee agrees to give a certain notice before a foreclosure, it does not matter whether it is a judicial or non-judicial foreclosure. The mortgagee must do that which it agreed. Thus, this Court must review compliance with Paragraph 22 of the Mortgage as a matter of contract law, irrespective of whether Defendants are seeking judicial or non-judicial foreclosure.

The Court granted Summary Judgment to the homeowner stating:

11

There is no genuine issue as to any material fact concerning whether Fannie Mae complied with the Mortgage Agreement. It did not. At the least, the notices failed, on their face, to specify an exact date by which Ms. Martins could cure default, that she could reinstate the loan after acceleration, and that she has a right to bring court action. With respect to these elements of the notice, there is no plausible way that a jury could find for Defendants, and the notice is indeed material, as it determines whether Defendants have complied with the Mortgage Agreement.

Defendant makes the same argument in this case as in *Martins,* particularly as to

the date of the cure.  .

Judge Finkle of the Rhode Island Bankruptcy Court in the case of *In Re Demers*, 511 B.R. 233 (Bankr R.I., 2014) analyzed Rhode Island law and found that strict compliance with paragraph 22 of a mortgage was a condition precedent to acceleration and sale. In *Demers,* the Court considered a Proof of Claim filed by Wells Fargo through its servicing name of America's Servicing Company.  A notice  was sent to the Debtor/mortgagor prior to a foreclosure, which was stopped by the Debtor's Chapter 13 bankruptcy filing.  The Court found that strict compliance with Paragraph 22 of the mortgage was a condition precedent to acceleration and exercise of the statutory power of sale under Rhode Island law.  The Court held:

> Reading the Note and Mortgage as an integrated contract, I find the loan agreement between Ms. Demers and ASC is unambiguous and ASC's compliance with Mtg. Paragraph 22 is a condition precedent to its right to accelerate the Note and pursue its remedy of foreclosure

12

against the Property. That paragraph, in plain and ordinary terms, states that prior to accelerating the Note ASC is required to give Ms. Demers notice of "the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale." The Notice without question did not inform Ms. Demers that she had a right to bring an action in court. Quite clearly the Notice did not comply with this prerequisite.

Even so, if I were to determine that the loan agreement read as a whole is "reasonably and clearly susceptible of more than one interpretation" and potentially ambiguous based upon an arguable inconsistency among Note Paragraph 7 and Mtg. Paragraphs 14 and 22, I would still conclude that under the loan agreement ASC is not entitled to recover the Disputed Charges. Any ambiguity in a contract "must be construed against the drafter of the document," in this case ASC (or its predecessor-in-interest). *Haviland,* 45 A.3d at 1260 ( *quoting Fryzel,* 385 A.2d at 666-67). Furthermore, "virtually every contract contains an implied covenant of good faith and fair dealing between the parties." *Dovenmuehle Mortg., Inc. v. Antonelli,* 790 A.2d 1113, 1115 (R.I.2002). I see no reason this loan transaction should be exempted from this general rule. Indeed, in a transaction such as this between an individual homebuyer and a mortgage lender, there is an imbalance of power such that the more powerful and sophisticated party, ASC, must be held to this standard of good faith and fair dealing.

The Court analyzed the purpose of the provision as a condition and held that:

Notice provisions in mortgage documents usually require default notices to contain specific information, which serves a very clear and specific purpose; it informs mortgagors of their rights so that they may act to protect them. Therefore, when the terms of the note and mortgage require notice of default, proper notice is a condition precedent to an action for foreclosure. For unexplained reasons, the Notice sent by ASC upon Ms. Demers' 2012 default deviated from these prior notices and omitted this contractually mandated notice provision. This defect resulted in the invalidity of the foreclosure process ASC pursued and precludes recovery of its associated costs.

The Massachusetts Supreme Judicial Court  analyzed this type of notice in exactly the same manner.  In the case of *Pinti v. Emigrant Mortgage Company*, No. SJC-11742 (Ma., July 17, 2015), the Court invalidated a foreclosure where there was not strict compliance with the provisions of paragraph 22.  The Court commenced by viewing the extraordinary power that a mortgagee possessed when non-judicial foreclosure commenced with no judicial intervention:

This court has recently reemphasized the point that in light of "the substantial power that the statutory scheme affords to a [mortgagee] to foreclose without immediate judicial oversight, we adhere to the familiar rule that `one who sells under a power [of sale] must follow strictly its terms'"; the failure to do so results in "no valid execution of the power, and the sale is wholly void." Ibanez, 458 Mass. at 646, quoting  Moore v. Dick, 187 Mass. 207, 211 (1905). See  Pryor v. Baker, 133 Mass. 459, 460 (1882)("The exercise of a power to sell by a mortgagee is always carefully watched, and is to be exercised with careful regard to the interests of the mortgagor"). This is true with respect to terms that are connected to the power of sale contained in the mortgage instrument itself, [10] and to terms contained in § 21, the statutory power of sale, or in one of "the statutes relating to the foreclosure of mortgages by the exercise of a power of sale" to which § 21 refers.

It then proceeded to analyze the nature of the Paragraph 22 notice:

Insofar as the plaintiffs' mortgage is concerned, paragraph 22 begins by requiring notice of default to be given prior to any acceleration of the sums secured by the mortgage; then specifically prescribes the contents of the notice of default; and then provides that, if the default is not cured before the date specified in the notice, the mortgagee may invoke the statutory power of sale (as well as pursue other remedies). As the paragraph is written, therefore, the sending of the prescribed notice of default is essentially a prerequisite to use of the mortgage's power of sale, because the power of sale may be invoked only if the default is not cured within the time specified in the notice of default. In this regard, we agree with the plaintiffs that the "terms of the mortgage" with which strict compliance is required — both as

a matter of common law under this court's decisions and under § 21 [15] — include not only the provisions in paragraph 22 relating to the foreclosure sale itself, but also the provisions requiring and prescribing the preforeclosure notice of default. See Foster, Hall & Adams Co., 213 Mass. at 322-324.

The Court then concluded by holding:

> this court's decisions about mortgage terms indicate that by structure and content, the notice of default required to be given under paragraph 22 is integrally connected, and operates as a prerequisite, to the proper exercise of the mortgage instrument's power of sale. Emigrant's strict compliance with the notice of default required by paragraph 22 was necessary in order for the foreclosure sale to be valid; Emigrant's failure to strictly comply rendered the sale void.

Rhode Island law accepted the position of Judge McConnell in *Martins* and the Massachusetts Supreme Court in *Pinti*in in the case of Woel v, Christiana Trust. *Woel v. Christiana Trust,*228 A. 3rd 339 (R.I., 2020), which was decided June 2, 2020. *Woel* extensively discusses Rhode Island contract and foreclosure  law and specifically holds that strict compliance without a demonstration of prejudice applies to any mortgage foreclosure cases.

This memorandum will address the issues referenced in *Woel*, namely that there is a distinction between curing a default and reinstate **after acceleration**.  The decedent's note  specified that the default letter could only incorporate the amount due for principal and interest up to the cure date certain specified in the default letter. However this language was not

15

complied with because the   purported default letter also included charges

for escrow and fees and costs which were not authorized by the Note.  The

other charges are more appropriately included in an acceleration notice, not

a default notice.

*Woel's* mandate of strict compliance requires that all aspects of the

notices mailed to the Plaintiff must strictly comply with the terms of the

mortgage and cannot be deceptive:

As a matter of contract law, strict compliance with the requirements contained in paragraph 22 is a condition precedent to acceleration and a valid foreclosure sale.

*Woel* indicated that strict compliance with all aspects of the mortgage

was required, which includes an accurate amount of default. In *Woel* at page

11, the Court indicated its concern that the homeowner not be misled by the

mortgagee:

Because mortgagees in Rhode Island may accelerate the mortgage and conduct a foreclosure sale without immediate judicial oversight, a strict compliance standard concerning the notice requirements prevents mortgagees from accelerating and foreclosing without first providing a notice of default that adequately informs the mortgagor of his or her rights under the mortgage contract. Strict compliance with paragraph 22 is essential to ensuring that mortgagors are fully informed of their rights and **will not be misled** by a default notice provided by a mortgagee.

The heirs at law of the decedent and the decedent's Administratrix in this case were misled as to the amount of the obligation and as a result this purported default letter was defective. *Woel* distinguished between cure and reinstate:

The language in paragraphs 19 and 22 illustrates the distinction between curing the default after acceleration and reinstating the mortgage after acceleration. Paragraph 22 explains that "the right to cure" is the mortgagor's right to pay the pre-acceleration default amount owed and thus be protected from acceleration. If the mortgagor fails to cure, then the mortgagee may accelerate the note, with the entire amount of the note immediately due and owing-not just the pre-acceleration default amount. The mortgagor may reinstate the mortgage-which would return the mortgage to its pre-acceleration status with monthly payments-by satisfying the four conditions set out in paragraph 19. Under paragraph 19, to reinstate the mortgage after acceleration, the mortgagor must: (1) cure the default; (2) cure any default of any other covenant or agreement in the mortgage; (3) **pay any expenses incurred in enforcing the security instrument, including, for example, reasonable attorneys' fees and property inspection and valuation fees** ; and (4) take any action as reasonably required by the mortgagee to protect its interest in the mortgage.

Thus in *Woel,* the Court noted that expenses charged to the mortgage loan account are not the proper subject of a Default Notice, pursuant to paragraph 22. Only the principal and interest due on the note are appropriate subjects of a default notice. Other fees and expenses are the subject of an acceleration notice.

The Supreme Court in *Woel* recognized this established provision of mortgage law by noting the difference between cure the default and reinstate

17

after acceleration. The mortgage is the security instrument, which provides collateral for a note. However the obligation arises from the Note, not the mortgage and the Note specifically requires that after acceleration, the mortgagor has an additional thirty days prior to invoking any remedy under the Security Instrument, which these defendants claim was the exercise of the statutory power of sale. The Court made it clear that acceleration had to be followed by a demand for all sums secured by the Security Instrument, the Court stated:

Paragraph 22 of the mortgage contract clearly and unambiguously required that, "prior to acceleration[, ]" the mortgagee must provide notice of default to the mortgagor and include certain information within that notice, including informing the mortgagor of "the right to reinstate after acceleration[.]" As a matter of contract law, strict compliance with the requirements contained in paragraph 22 is a condition precedent to acceleration and a valid foreclosure sale.

What is more, strict compliance with the notice requirements in a mortgage is especially important given that Rhode Island is a nonjudicial foreclosure state. Because mortgagees in Rhode Island may accelerate the mortgage and conduct a foreclosure sale without immediate judicial oversight, a strict compliance standard concerning the notice requirements prevents mortgagees from accelerating and foreclosing without first providing a notice of default that adequately informs the mortgagor of his or her rights under the mortgage contract. Strict compliance with paragraph 22 is essential to ensuring that mortgagors are fully informed of their rights and will not be misled by a default notice provided by a mortgagee.[11]

Thus in addition to the requirements to cure the arrearage, before a mortgagee could send a Notice of Sale on behalf of the mortgagee, the

Supreme Court has held that strict compliance with the mortgage and the note required the following:

1.   A default letter to the borrower or her successors as required by paragraph 10 of the mortgage, with a specific amount of principal and interest due along with a certain date to cure and other specific language in the mortgage which was not deceptive. This mortgage allowed ten days to cure the default, not to reinstate after acceleration.

2. A notice accelerating the mortgage loan, pursuant to paragraph 10 of the note providing the borrower thirty days from the date the notice is given pursuant to paragraph 15 of the mortgage to the successors of the decedent borrower pursuant to paragraph 10 of the mortgage to pay all sums secured by the mortgage. After this period of time had passed and after acceleration, the lender could collect legal fees in costs as indicated in paragraph 16 of the mortgage.

3. This   period provided the borrower and her successors the opportunity to cure the default of principal and interest which the default letter was limited to cure, but not the other components of the sums secured by the mortgage.

4.  Only after this acceleration notice was mailed pursuant to paragraph

10 of the note and paragraph and thirty days had passed could the note

holder exercise the statutory power of sale.

The  Supreme Court in *Woel* clearly recognized these numerous steps

prior to mailing a Notice of Sale or any other action permitted by the

mortgage,  when it stated:

In this case, the default notice failed to inform plaintiff of the right to reinstate the mortgage after acceleration. Paragraph 22 provides that the default notice "shall" inform plaintiff "of the *right to reinstate* after acceleration[.]" (Emphasis added.) The default notice in this case, however, provided: "You have the *right to cure* the default after acceleration[.]" (Emphasis added.) These terms are not synonyms; yet a fair reading of the default notice suggests that, if plaintiff cured the default after acceleration, the mortgage would be reinstated. This is misleading, inaccurate, and, at best, incomplete.

The Defendant has not denied that an acceleration notice was not

mailed. Thus Plaintiff raised this issue in the complaint as a defect in the

foreclosure process and Defendants never provided an acceleration but instead

in its Motion to Dismiss cites the case *Viera v. Bank of New York Mellon*, CA.

No 17-cv-523 for the proposition that no secondary notice of acceleration is

required to foreclose. However the Rhode Island Supreme Court in *Woel*

emphasized that a separate notice of acceleration, as to which the Plaintiff has

thirty days to reinstate under the terms of the note and paragraph 19 of the

mortgage, is required in order exercise the statutory power of sale under Rhode Island law. Since the Court in diversity must follow Rhode Island law, *Woel* supports the Plaintiff's position on this issue.

All these cases support Plaintiffs' position that the notice was void and defective because it did not strictly comply with the terms of the mortgage.

The language of the purported default notice is defective on its face. There are two relevant portions of paragraph 16.  The first is 16(2) which requires language which indicates:   **a date,** not less than 10 days from the date the notice is given to Borrower, by which the default must be cured. The second is 16(3) which states that failure to cure the default **on or before the date specified** in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. This notice used the paragraph 16(3) provision instead of the  paragraph 16(2) provision. As a result, there was no specific date as required by paragraph 16(2) and the on or before provision of 16(2) had no specific date to reference from paragraph 16(2). On or before January 26, 2018 is not a specific date to cure which could be referenced in 16(3 and confused the heirs of the decedent. Effectively this notice stated that the Plaintiffs  had to cure at any date before January 26, 2018, which included  nine different  dates within ten days of the letter. Thus

21

this letter was defective on those grounds alone, rendering this notice void.

This letter could not satisfy the strict compliance standard of *Woel.* Citizens

Bank in this letter deceptively told the decedent  that if the mortgage were

not cured that the loan **would be deemed accelerated**. There is no such

provision in the mortgage. Thus acceleration and sale pursuant to the

statutory power of sale could not occur because the precondition to utilize

the statutory power of sale was not complied with by Citizens.

A similar notice was sent to a homeowner in *Federal National*

*Mortgage Association v. Dechaine*, 70 A.3d 230, 2 (Me., 2017). In

*Dechaine,* the Maine Supreme Court reviewed a notice sent by the same law

firm which sent this notice, Shechtman Halperin Savage, LLP. The notice in

Dechaine stated if the default were not cured :

within 35 days of receipt of this notice, the balance of the [n]ote may be
deemed accelerated without further demand, and the [l]ender may proceed
with foreclosure of the [m]ortgage."

Fannie Mae contended that this letter did not constitute acceleration because

the mortgage merely provided this option to the lender. The Maine Supreme

Court held:

When, as here, a note contains an optional acceleration clause, some
affirmative action is required by the note holder to provide notice to the
borrower 239*239 that the holder has exercised that option. *See,
e.g., Hassler v. Account Brokers of Larimer Cty., Inc.,* 274 P.3d 547, 553-54
(Colo. 2012); *Reano v. U.S. Bank, Nat'l Ass'n,* 191 So.3d 959, 961 (Fla. Dist.
Ct. App. 2016); *Bischoff v. Cook,* 118 Hawai'i 154, 185 P.3d 902, 911 n.8

*(App. 2008); First Fed. Say. & Loan Ass'n of Gary v. Stone, 467 N.E.2d 1226, 1232 (Ind. Ct. App. 1984).*

This letter did not strictly comply with the terms of the mortgage and did not state that failure to cure such breach on or before a specific date referenced in the notice may result in acceleration of the sums secured by this Mortgage and sale of the property. Instead this letter stated:

If the default is not cured by the Cure Date, the balance of the Note may be deemed accelerated without further demand, and the Lender may proceed with the foreclosure of the mortgage.

This notice also did not state a specific amount due to be cured by a

particular date. Instead it stated:

If the default is not cured by December 31, 2017, the January 2018 loan payment must also be included.

This notice  also limited the rights of the Plaintiffs in this notice by stating:

Unless you notify Shechtman Halperin Savage LLP within thirty days after receiving this notice that you dispute the validity of this debt or any portion thereof, we will assume this debt is valid.

Contrary to the terms of the integrated note and mortgage, this note

has not been accelerated by Citizens or Citizens One. After the purported

default letter was mailed, Citizens One mailed to the decedent's address and

Jose Faria, who was not a property owner and was not a mortgagor,

statements dated December 27, 2017, January 29, 2018, February 27, 2018

and March 27, 2018. In none of these statements did Citizens One or Citizens indicate that the mortgage loan had been accelerated. The amount stated as due on the December 27, 2017 periodic statement was $10,587.78. The amount stated as due on the January 29, 2018 periodic statement was $12,762.88. The amount stated as due on the February 27, 2018 periodic statement was $14,937.98. The amount stated as due on the March 27, 2018 periodic statement was $14,937.98. As a result, the mortgage loan has never been accelerated as each of these statements indicated that the mortgage loan had not been accelerated by Citizens or Citizens One.

At no time after December 27, 2017 did Plaintiffs or any person or entity receive any letter which indicated that the mortgage loan was accelerated. In addition, since 2017, Citizens has charged the mortgage loan account a monthly fee of $14.00 for purported property preservation fees, despite the fact that the decedent's partner, Jose Faria and daughter live in the property. Citizens One was aware of this fact and was aware that the property is not vacant. Plaintiffs contend that these fees which were included in the purported default amount were neither reasonable nor necessary. Thus Citizens did not strictly comply with the terms of the note and the mortgage by stating an accurate amount to cure the default.

The inclusion of legal fees was also a deceptive assertion, which had not place in a default notice. Paragraph 17 of the mortgage specifically provided that such fees and expenses could only be the subject of reinstatement after acceleration, not to be included in the default notice. Like the mortgagee in *Woel*, Citizens confused and conflated reinstate after acceleration, which includes the obligation to pay fees and expenses and cure a default, which includes only payments of principal and interest. The Plaintiffs sought to make these payments of principal and interest, but Citizens deceptively demanded more in the default notice than it was entitled to demand, including $140.00 in late charges(which indicated no acceleration had occurred), $10,287.94 in unspecified escrow advances, $399.00 in Mortgagor Rec Corp Advances and Legal Fees and Expenses of $786.16 when the only legal fee incurred was mailing a letter and before acceleration.

The notice also deceptively did not tell the Plaintiffs that the right to reinstate after acceleration, (which never occurred) would expire five days before the sale. Defendants contend that no acceleration was required. However the clear language of the note and mortgage are quite specific, exercise of any remedies after acceleration to enforce the security instrument could be made without further demand 30 days after acceleration if the

25

borrower or her successors did not reinstate after acceleration by making all the payments pursuant to paragraph 17:

(a) Mortgagor pays Lender all sums which would be then due under the Mortgage and the Note had no acceleration occurred

(b) Mortgagor cures all breaches of any other covenants or agreements of Mortgagor contained in the mortgage(these would be taxes and insurance and late fees and any other fees charged)

(c) Mortgagor pays all reasonable expenses  incurred by Lender in eofnrcing the covenants and agreements of Mortgagor contained in the mortgage and in enforcing Lender's remedies as provided in Paragraph 16, hereof including but not limited to  reasonable attorney's fees.

(d) Mortgagor takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and Mortgagor's obligations secured by this Mortgage shall continue unimpaired.

This language follows the exact language of *Woel* and the distinction between cure and default. It also makes clear that an accurate acceleration notice which allows payment of reasonable fees and expenses must be transmitted to the borrower or her successors in order to know what is required to reinstate after acceleration to avoid the statutory power of sale.

Plaintiffs were never provided this information in an acceleration notice from the lender or from any entity. Shechtman, the law firm for Citizens deceptively included fees and expenses and did not provide the borrower's successors heirs the opportunity to reinstate after acceleration by stating that the loan would be deemed accelerated contrary to the terms of the note and mortgage.    The failure of the Defendant to strictly comply with the terms of the mortgage renders voided any attempt to commence the alleged foreclosure by Statutory Power of Sale, without having the statutory ability to conduct this foreclosure.

Finally the Rhode Island case cited by the Defendant,  *Allegra v. Deutsche Bank National Trust Company,* 225 A.3d 244 (2020), did not stand for the proposition that heirs at law and property owners had no standing to contest a foreclosure. The Court held that the beneficiaries of a trust did not have to receive specific notice of a Notice of Sale. However the suggestion that they could not dispute a foreclosure was not the holding in that case

**THE SUCCESSORS IN INTEREST TO THE DECEDENT HAVE STANDING TO BRING RESPA CLAIMS AS THEY STAND IN THE SHOES OF THE DECEDENT BORROWER**

Plaintiffs mailed  six Notices of Error to which Citizens refused to respond pursuant to the real Estate Settlement and Procedures Act. These Notices of Error are attached to the complaint as Exhibits E-J. Citizens

through its attorney, refused to correct the errors stating that the Plaintiffs

lacked standing because as heirs at law, they lacked standing to bring a

RESPA claim. Thus Plaintiffs filed the RESPA counts for  the failure to

correct these errors asserted.  Citizens and its attorneys have ignored the

amended version of Regulation X, 12 C.F.R. 1024.36(i), which was effective

April 19, 2018. This amended section provides:

 (i) Potential successors in interest.
(1) With respect to any written request from a person that indicates that the
person may be a successor in interest and that includes the name of the
transferor borrower from whom the person received an ownership interest
and information that enables the servicer to identify the mortgage loan
account, a servicer shall respond by providing the potential successor in
interest with a written description of the documents the servicer reasonably
requires to confirm the person's identity and ownership interest in the
property and contact information, including a telephone number, for further
assistance. With respect to the written request, a servicer shall treat the
potential successor in interest as a borrower for purposes of the requirements
of paragraphs (c) through (g) of this section.
(2) If a written request under paragraph (i)(1) of this section does not
provide sufficient information to enable the servicer to identify the
documents the servicer reasonably requires to confirm the person's identity
and ownership interest in the property, the servicer may provide a response
that includes examples of documents typically accepted to establish identity
and ownership interest in a property; indicates that the person may obtain a
more individualized description of required documents by providing
additional information; specifies what additional information is required to
enable the servicer to identify the required documents; and provides contact
information, including a telephone number, for further assistance. A
servicer's response under this paragraph (i)(2) must otherwise comply with
the requirements of paragraph (i)(1). Notwithstanding paragraph (f)(1)(i) of
this section, if a potential successor in interest subsequently provides orally
or in writing the required information specified by the servicer pursuant to
this paragraph (i)(2), the servicer must treat the new information, together
with the original request, as a new, non-duplicative request under paragraph

28

(i)(1), received as of the date the required information was received, and must respond accordingly.

(3) In responding to a request under paragraph (i)(1) of this section prior to confirmation, the servicer is not required to provide any information other than the information specified in paragraphs (i)(1) and (2) of this section. In responding to a written request under paragraph (i)(1) that requests other information, the servicer must indicate that the potential successor in interest may resubmit any request for information once confirmed as a successor in interest.

 (4) If a servicer has established an address that a borrower must use to request information pursuant to paragraph (b) of this section, a servicer must comply with the requirements of paragraph (i)(1) of this section only for requests received at the established address.

Citizens did not comply with the amended regulation. It stated that the Plaintiffs were not borrowers, just as it does in its Memorandum of law. It did not provide the Plaintiffs' attorney a list of documents to confirm the identity of the Plaintiffs. It did not comply with its obligations under the regulation and did not treat the potential successor in interest as a borrower for purposes of the requirements of paragraphs (c) through (g) of 1024.36. The allegations of the Plaintiffs in the complaint regarding the RESPA Case Counts are deemed to be true for purposes of a Motion to Dismiss. Defendant does not dispute the facts relating to the failure to comply, but only states that they were not borrowers. However effective April 19, 2018, they were borrowers and were entitled to a response to the Notices of Error which alleged errors prior to that date, as if they were the decedent. They specifically alleged in the complaint that they were successor in interest to

the decedent mortgagor pursuant to the provisions of 12 C.F.R. 1024.36(i).

These allegations must be accepted as true since the Regulation in effect

after April 19, 2018 when the Requests for Information and Notices of Error

were mailed to Citizens allowed them to be treated as borrowers. The

official interpretation of this Regulation by the Consumer Financial

Protection Bureau indicates that Citizens was required to comply:

1. Requests that indicate that the person may be a successor in interest.

Section 1024.36(i) requires a servicer to respond to certain written requests

received from a person that indicate the person may be a successor in

interest. Examples of written requests that indicate that the person may be a

successor in interest include, without limitation, a written statement from a

person other than a borrower indicating that there has been a transfer of

ownership or of an ownership interest in the property to the person or that a

borrower has been divorced, legally separated, or died, or a written loss

mitigation application received from a person other than a borrower.


2. Time limits. A servicer must respond to a request under § 1024.36(i) not

later than the time limits set forth in § 1024.36(d)(2). Servicers subject to §

1024.38(b)(1)(vi)(B) must also maintain policies and procedures reasonably

designed to ensure that, upon receiving notice of the existence of a potential

successor in interest, the servicer can promptly determine the documents the servicer reasonably requires to confirm that person's identity and ownership interest in the property and promptly provide to the potential successor in interest a description of those documents and how the person may submit a written request under § 1024.36(i) (including the appropriate address). Depending on the facts and circumstances of the request, responding promptly may require a servicer to respond more quickly than the time limits established in § 1024.36(d)(2).

3. Potential successor in interest's representative. An information request pursuant to § 1024.36(i) is submitted by a potential successor in interest if the information request is submitted by an agent of the potential successor in interest. A servicer may undertake reasonable procedures to determine if a person that claims to be an agent of a potential successor in interest has authority from the potential successor in interest to act on the potential successor in interest's behalf, for example, by requiring that a person that claims to be an agent of the potential successor in interest provide documentation from the potential successor in interest stating that the purported agent is acting on the potential successor in interest's behalf. Upon receipt of such documentation, the servicer shall treat the request for information as having been submitted by the potential successor in interest.

Citizens was aware prior to the requests that the Plaintiffs were heirs at law as indicated by the notices of error, which indicate the Citizens mailed notices of sale to the Plaintiffs as heirs at law at their home addresses and in fact mailed them Notices of Mediation, as required by Rhode Island law. Thus there was no need for the Plaintiffs to provide proof of their relationship to the decedent because Citizens was already aware of this fact. And had confirnmed them as successors in interest by mailing them documents as heirs at law of the decedent.Thus there is a factual dispute as to whether the Plaintiffs were successor in interest to the decedent precluding the granting of the Motion to Dismiss. The cases cited by Defendant are not applicable because they were decided before Regulation X went into effect on January 10, 2014 and well before April 19, 2018. Thus their analysis is inapplicable to this case.

*Lackie v PHH Mortgage Corporation*, (3-17-cv-377, ND, TX, 2018 cited by Citizens can clearly be distinguished. In *Lackie*, the heir at law prior to April 19, 2018 sought to be considered as an heir at law or different sections of RESPA and prior to the regulations amendment. The Court noted the nature of the action and found that under 12 C.F.R. §1024.38 there was no private right of action and under 12 C.F.R. §1024.41 there was no right of action for a non-borrower.

Plaintiff asserts claims against Defendant for violations of 12 C.F.R. §§
1024.38 and 1024.41—regulations promulgated under the Real Estate
Settlement Practices Act ("RESPA"), 12 U.S.C. § 2605(f). Defendant moves
to dismiss arguing Plaintiff has failed to plead fact to show he has standing
to assert a claim for civil liability under RESPA. Def.'s Mot. 3.

*Correa v BAC Home Loan Servicing, LP*, 853 F. Supp 2d 1023(M.D. Fla.

2012), like the pre 2018 cases cited by Citizens was a case prior to the

adoption of Regulation X and well before the regulation was amended

effective April 19, 2018. Thus it can be distinguished from this case. *Covino*

*v Wells Fargo Bank*, (16-cv-2264, D.N.J., 2018) was a cases filed in 2016

and could not have been filed by the confirmed successors in interest to the

decedent because the regulation had not yet been amended.  Thus is also has

no applicability to this case. It held that under the former law a fiduciary for

the Estate could send a RESPA request but that an heir could not do so.

    *Dougherty v US Bank and Trust National Association*, (4-19-cv-3408,

S.D. Tex., 2019) cited by Citizens involved a pro- se litigious Plaintiff who

was not the confirmed successor in interest in a case in which Summary

Judgment was entered against him. Citizens cited *Bascom V JPMorgan*

*Chase Bank National Association* (N.D., GA, 2018) for the proposition that

an inheriting party has no standing under RESPA as he is not a borrower.

However this is a false assertion, since Bascom involved a pro se Plaintiff

who did not file a complaint under RESPA and who did not respond to the

Motion to Dismiss and did not seek review after a Report and

Recommendation.  Thus it has no bearing on the issues in this case.

The Defendants contend that Marta Faria was not a confirmed

successor in interest. However she and her siblings were in fact confirmed

successors in interest  by Citizens, which mailed them Mediation Notices by

pursuant to R.I.G.L 34-27-3.2, which defines a mortgagor entitled to

mediation as:

(9) "Mortgagor" means the person who has signed a mortgage in order to secure a debt or other duty, or the heir or devisee of such person provided that:

(i) The heir or devisee occupies the property as his or her primary residence; and

(ii) The heir or devisee has record title to the property, or a representative of the estate of the mortgagor has been appointed with authority to participate in a mediation conference.

Plaintiff, heirs at law alleged that Citizens mailed each of the four Plaintiffs

mediation notices and copies of the Notice of Sale, although not the default

notices. Thus they also alleged that Citizens had recognized the heirs at law

as confirmed successors in interest and as a result they were defacto

successors in interest to their mother.It was aware that the decedent had

died.  It provided some but not all documents pursuant to the original

Requests for Information, but denied that Plaintiffs were entitled to

information because an estate had not been opened, based on the false

premise that under Rhode Island law it is necessary to open a Probate Court proceeding in order to be able to be able to send RESPA requests. As stated above the property passed to them as a matter of law, a fact recognized by Citizens which mailed them certain notices required under state law and thus they were de facto confirmed successors in interest.

RESPA defines a confirmed successor in interest as "a successor in interest once a servicer has confirmed the successor in interest's identity and ownership interest in a property that secures a mortgage loan subject to this subpart." 12 C.F.R. § 1024.31. A "successor in interest" is "a person to whom an ownership interest in a property securing a mortgage loan subject to this subpart is transferred from a borrower, provided that the transfer is:

(1) A transfer by devise, descent, or operation of law on the death of a joint tenant or tenant by the entirety;

(2) A transfer to a relative resulting from the death of a borrower;

(3) A transfer where the spouse or children of the borrower become an owner of the property;

In this case, Citizens confirmed their status prior to the Requests for Information and the Notices of Error because it knew that they were the sole heirs and under Rhode Island law they were entitled to actual notice of the

mediation and Notice of Sale. Thus when they mailed the Notices of Error and Requests for Information, they were confirmed successors in interest.

In *Washington v. Green Tree Servicing,* 15-cv-354 (S.D., Ohio, 2017) the District Court treated the decedent's mother as a confirmed successor in interest even though the regulation was not yet in effect. The Court quoted the rationale from the Regulation of the Consumer Financial Protection Bureau as its basis for finding the mother to be a borrower for purposes of RESPA:

In enacting these amendments, the CFPB explained its rationale for considering confirmed successors in interest to be borrowers:

Although a confirmed successor in interest will not necessarily have assumed the mortgage loan obligation under State law, the successor in interest, after the transfer of ownership of the property, will have stepped into the shoes of the transferor borrower for many purposes. . . . [T]he successor in interest will typically need to make payments on the loan in order to avoid foreclosure on the property. The successor in interest's ability to sell, encumber, or make improvements to the property will also be limited by the lien securing the loan. In other words, the property rights of the confirmed successor in interest, like those of the transferor borrower, are subject to the mortgage loan.

The same rationale applies to this case.

The Defendants assert that the Regulation was not retroactive. However the regulation references errors committed by the servicer prior to April 19, 2018 as a party could make a RESPA request regarding any error

regarding the servicing of the mortgage loan. The most significant Notice of Error was mailed to Citizens on May 14, 2018 before the purported foreclosure deed was recorded on July 11, 2018. The liability accrues due to the failure to correct an error, which can be asserted for any violation during the life of the loan. There is no legal basis asserted by Defendants for the assertion that a confirmed successor in interest to the decedent does not possess the same rights that the decedent had, effective April 19, 2018.

For these reasons the Motion to Dismiss of both Defendants should be denied. If the Court considers that the Pleading should reference the De Facto Confirmed Successor in interest, Plaintiffs will forthwith file the Motion to file a SecondAmended Complaint. It should be noted that in the event that the Plaintiffs lacked standing to file a RESPA claim due to lack of standing under Article III due to the lack of a controversy pursuant to a *Spokeo* standing defect, this Court would lack jurisdiction over the other counts of this case due to lack of diversity jurisdiction since all parties would be residents of Rhode Island and the Court would have to dismiss the complaint without prejudice due to lack of jurisdiction. While Plaintiffs do not agree with the assertion of the Defendants, they contend that any dismissal due to lack of standing would be solely based on Article III grounds. If that were the case, then the only basis for jurisdiction of this

Court, the RESPA claim, would be effectively removed and the Court could not consider the remainder of the case, due to the lack of diversity jurisdiction. This Court is thus urged to first decide the RESPA issue of standing. If the Plaintiffs lack standing then this Court lacks jurisdiction to hear any issue in this case due to the lack of jurisdiction. Any dismissal would be as to the RESPA count without prejudice as all dismissals for lack of jurisdiction must be without prejudice pursuant to FRCP 12(b)(1). Plaintiffs suggest this not because they believe that the position of defendants is legally accurate, but rather point out the effect of a dismissal for lack of jurisdiction.

For these reasons, the Motion to Dismiss should be denied.

.

**ANA FARIA**
**PHILIPE FARIA**
**MARTA FARIA**
**CATARINA TRAVASSOS**

October 15, 2021                      By their Attorney


/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
Jbelaw75@gmail.com

CERTIFICATION OF SERVICE

I certify that I emailed a copy of this Memorandum to Michael Hagopian and James Atchison  on October 15, 2021.

/s/ John B. Ennis